William Markham, State Bar No. 132970
MALDONADO & MARKHAM, LLP
402 West Broadway, 24th Floor
San Diego, CA 92101
Tel:        (619) 221-4400
Fax:       (619) 224-3974
E-mail:   wm@maldonadomarkham.com

William A. Kershaw, State Bar No. 57486
Lyle Cook, State Bar No. 148914
KERSHAW, CUTTER & RATINOFF, LLP
401 Watt Avenue, Sacramento California 95864
Sacramento, California 95814-2719
Tel:        (916) 448-9800
Fax:       (916) 669-4499
E-mail:   wkershaw@kcrlegal.com

Attorneys for Plaintiffs, COLLINA DAL LAGO, L.P. and BERNAU DEVELOPMENT CORPORATION.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| LA COLLINA DAL LAGO, L.P.; BERNAU DEVELOPMENT CORPORATION; and all similarly situated legal persons,<br><br>    Plaintiffs,<br><br>Vs.<br><br>PACIFIC BELL TELEPHONE COMPANY; NEVADA BELL TELEPHONE COMPANY; AT&T SERVICES, INC.; and OLDCASTLE PRECAST, INC.,<br><br>    Defendants. | Case No. 08 CV 02451 SI<br><br>PLAINTIFFS' MOTION FOR APPROVAL OF THEIR WAIVER OF POTENTIAL CONFLICTS OF INTEREST<br><br>Date:    June 27, 2008<br>Time:   9:00 a.m.<br>Place:   Courtroom 10, 19th Floor<br><br>Courtroom 10, 19th Floor<br><br>The Hon. Susan Illston<br><br>Complaint Filed:   May 13, 2008 |

Plaintiffs, La Collina dal Lago and Bernau Development Corporation, now bring the present motion, seeking the below relief. Defendants in this case are Oldcastle Precast, Inc. ("Oldcastle") as well as Defendants Pacific Bell Telephone Company, Nevada Bell Telephone Company, and AT&T Services, Inc. (collectively, "AT&T").

PLAINTIFFS' MOTION FOR APPROVAL OF THEIR WAIVER OF POTENTIAL CONFLICTS OF INTEREST

**TABLE OF CONTENTS**

MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Jensen's Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Developers' Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    M&M's Role In Both Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Opinion From Experts On Professional Responsibility. . . . . . . . . . . . . . . . . . . . . . . . 3
    If the Conflict Waiver Is Disapproved. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    M&M's Representation: Why It is Beneficial to the Proposed Class. . . . . . . . . . . . . . 5
        M&M's Prior Experience. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        Disclosure of Potential Conflicts and the Informed Waiver of Them. . . . . . . . . . . . 7
        The Two Sets of Claims Reinforce One Another.. . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        The Potential Conflicts Are Hypothetical, the Actual Benefits Significant. . . . . . . . 9
        Discovery Requests to Jensen in the Developers' Case. . . . . . . . . . . . . . . . . . . . . . 9

STANDARDS OF REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

M&M HAS PROPERLY OBTAINED A WAIVER OF POTENTIAL CONFLICTS OF INTEREST
    FROM JENSEN AND PLAINTIFFS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

M&M HAS PROPERLY ADDRESSED THE ISSUE OF DISCOVERY REQUESTS TO JENSEN
    AS WELL AS THE RELATED ISSUE OF TESTIMONY BY EACH CLIENT IN THE
    OTHER'S CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

PLAINTIFFS HAVE PROPERLY CONSENTED TO THE CONFLICT WAIVER ON BEHALF
    OF THE PROPOSED CLASS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    Impracticability of Having Each Member Personally Sign. . . . . . . . . . . . . . . . . . . . . 16
    Class Representatives Are Supposed to Make Decisions That Bind the Class. . . . . . . . . 16
    The Opt-Out Policy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    Weighing Actual Benefits to the Class Against Hypothetical Harm. . . . . . . . . . . . . . . . 17

CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

**CASES**

*Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* 52 Cal. App.4th 1 (Cal. App. 1997) . . . . . . . 15

*Howard Gunty Profit Sharing Plan v. Superior Court* 88 Cal. App.4th 572 (Cal. App., 2001) . . . . 15

*In re Wheatfield Business Park LLC*, 286 Bankr. R. 412 (C.D. Cal., Bankr., 2002) . . . . . . . . . . . 11

*Lockheed Martin Corp. v. Superior Court* 29 Cal.4th 1096 (Cal., 2003) . . . . . . . . . . . . . . . . . . . 15

*Richmond v. Dart Industries, Inc.* 29 Cal.3d 462 (Cal., 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sharp v. Next Entertainment, Inc.*, Cal. Rptr.3d, 2008 WL 2191209 (Cal. App. 2 Dist., May 28, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13-15

*Simons v. Horowitz* 151 Cal.App.3d 834 (Cal. App., 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**OTHER AUTHORITIES**

Local Rule 11 4 (a) (1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Rule 1.7(a) of the ABA Model Rules and at Comment [25] . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rule 23(b)(3) of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Rule 3-310 (C) (3) of the California Rules of Professional Conduct . . . . . . . . . . . . . . . . . . . . . 11

Rule 3-310 of the California Rules of Professional Conduct . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

## I. MOTION

Plaintiffs now request that this Court approve the sufficiency of a written conflict of interest waiver (the "Conflict Waiver"). This motion is joined by Jensen Enterprises, Inc. ("Jensen"), which is the plaintiff in the related case of *Jensen Enterprises, Inc. v. Oldcastle Precast, Inc. et al.*, Case No. C 06-0247 SI (JCS) (the "Jensen Case"). Defendants in the present case, AT&T and Oldcastle, are also Defendants in the Jensen Case.

By this Conflict Waiver, Plaintiffs and Jensen have authorized the law firm of Maldonado & Markham, LLP ("M&M") to undertake the following concurrent representation: (1) representation of Plaintiffs and the proposed class in the present case (the "Developers' Case"), and (2) representation of Jensen in the Jensen Case. Plaintiffs now ask that the Court approve of the Conflict Waiver, finding that it was properly made in accordance with the California Rules of Professional Conduct, and that Plaintiffs have properly consented to it on behalf of the proposed class in the Developers' Case.

## II. INTRODUCTION

Plaintiffs and Jensen have properly given their informed, written consent to counsel's concurrent representation of Plaintiffs in the Developers' Case and Jensen in the Jensen Case, doing so only after obtaining a comprehensive written disclosure of all possible reasonably foreseeable adverse consequences that can be envisioned. Plaintiffs and Jensen conferred about these disclosures and the Conflict Waiver with their own independent attorneys before consenting to the Conflict Waiver. There are no actual conflicts between Plaintiffs and Jensen, only potential and highly conjectural ones. The Conflict Waiver therefore satisfies the requirements imposed by the California Rules of Professional Conduct, which govern such matters in this Court.

In addition, Plaintiffs can properly consent to the Conflict Waiver on behalf of the proposed class. In a very recent decision[1], a California court of appeal held that the named plaintiffs in a putative class action, acting before they have been certified as class representatives, can properly consent to a conflicts-waiver in order to engage the attorneys who they believe can best advance the

---

[1] *Sharp v. Next Entertainment, Inc.*, Cal. Rptr.3d, 2008 WL 2191209, at 11-13 (Cal. App. 2 Dist., May 28, 2008).

PLAINTIFFS' MOTION FOR APPROVAL OF THEIR WAIVER OF POTENTIAL CONFLICTS OF INTEREST    -iii-

1  interests of the proposed class.  This is precisely what Plaintiffs have done in the present matter.

2  The Court should approve of the Conflict Waiver, ruling that (1) it satisfies the requirements
3  of the California Rules of Professional Conduct, (2) it properly authorizes M&M to act as attorneys
4  of record for Jensen in the Jensen Case and also for Plaintiffs in the Developers' Case, and (3)
5  Plaintiffs have properly consented to it on behalf of the proposed class, subject only to such
6  challenges as Defendants might later make to their suitability to act as class representatives.

### III. STATEMENT OF RELEVANT FACTS

**Jensen's Case**.  M&M has been the law firm of record for Jensen in the Jensen Case since it was filed on January 12, 2006.  The Jensen Case principally concerns a forced purchase-resale arrangement, by which AT&T and Oldcastle have required property developers in California and Nevada to purchase a line of products called "AT&T Vaults" from Oldcastle, but not from any of Oldcastle's competitors, the largest of whom is Jensen.  With Oldcastle's knowledge, AT&T has forced these property developers to re-sell the AT&T Vaults to itself at substantially lower prices – prices that AT&T justifies by referring to an Oldcastle price list that Oldcastle has allowed AT&T to use for this purpose.  Jensen, which used to sell AT&T Vaults, has suffered enormous lost profits because of this conduct.  It has also suffered other damages caused by related wrongs.[2]

**Developers' Case**.  Nearly two and one-half years later, on May 13, 2008, M&M filed the Developers' Case on behalf of Plaintiffs and a proposed class of property developers.  In the Developers' Case, Plaintiffs allege that AT&T and Oldcastle have harmed the proposed class of property developers by the above forced purchases-resales of AT&T Vaults.[3]

Of far greater consequence, however, Plaintiffs also allege that AT&T has under-reimbursed the proposed class of developers for various other items – conduit, trenching, and polymer vaults. The under-reimbursement for conduit and trenching has been massive and done on a far larger scale than the under-reimbursement for AT&T Vaults.  AT&T has under-reimbursed for these items by

---

[2] See generally Jensen's Complaint (Docket No. 1 in the Jensen Case ) and Jensen's Fourth Amended Complaint (Docket No. 117 in the Jensen Case).

[3] See generally Plaintiffs' Complaint (Docket No. 1 in the Developers' Case ).

using various different ploys.[4]

Both cases set forth claims against AT&T and Defendants. The Jensen Case principally concerns the forced purchase-resale of AT&T Vaults. The Developers' Case, which is a proposed class action, includes this matter but also concerns a wide range of other matters. In these matters, there is no apparent or actual conflict of interest between (1) Jensen and (2) Plaintiffs and the proposed class. On the contrary, the two sets of claims appear to support and reinforce one another.

**M&M's Role In Both Cases**. M&M has represented Jensen in the Jensen Case since it was filed on January 12, 2006. M&M also represents Plaintiffs in the Developers' Case, along with another law firm, Kershaw, Cutter & Ratinoff, LLP ("KCR").

Before the Developers' Case was filed, Plaintiffs and Jensen both signed consents to M&M's concurrent representation of (1) the Plaintiffs in the Developers' Case; and (2) Jensen in the Jensen Case.[5] Plaintiffs and Jensen did so after reviewing and approving a letter that M&M sent to them in which it fully disclosed and explained the potential risks, adverse consequences, and probable benefits of the concurrent representation (the "Conflict Waiver Letter").[6]

**Opinion From Experts On Professional Responsibility**. Before M&M sent the Conflict Waiver Letter, it sought legal consultation and advice regarding the propriety of its proposed concurrent legal representation from two specialists in the law of legal ethics and professional responsibility, Ellen Pansky, Esq. and James Ham, Esq. of Pansky & Markle.[7]

These two specialists reached the following conclusions:

(1) The applicable rules of ethics and professional conduct permit a lawyer to undertake concurrent representation of two sets of plaintiffs against the same defendants in related matters, so long as (a) the relevant circumstances and possible adverse consequences are disclosed in writing to the clients so far as possible; (b) the clients review these disclosures with their own independent

---

[4]    See id.

[5]    See Declaration of William Markham (the "Markham Declaration") at ¶¶ 14-15.

[6]    See id. at 12-13.

[7]    See id. at 11 See also Declaration of James Ham, Esq. ("Ham Declaration:) at ¶ 8; and Declaration of Ellen Pansky ("Pansky Declaration") at ¶ 4.

PLAINTIFFS' MOTION FOR APPROVAL OF THEIR WAIVER OF POTENTIAL CONFLICTS OF INTEREST      -v-

attorneys; and (c) the clients then give written consent to the concurrent representation.[8]

(2) Under California law, which governs standards of professional responsibility in this Court, the proposed class representatives can give written consent to the concurrent representation not only on their own behalf but also on behalf of the proposed class.[9]

(3) The potential conflicts associated with the proposed concurrent representation do not appear to be unusually complex or unique. Such potential conflicts are often waived by parties seeking concurrent representation by the same legal counsel.[10]

(4) The Conflict Waiver might be later challenged by Defendants. This challenge might be made long after M&M had invested substantial time litigating the case. M&M should therefore raise the issue itself at the earliest opportunity, asking the Court to find that (a) the Conflict Waiver has been properly made in accordance with the California Rules of Professional Conduct, and (b) the Conflict Waiver has been properly given by Plaintiffs on behalf of the proposed class.[11]

In reliance on these conclusions, M&M, Jensen and Plaintiffs have done the following:

(1) M&M informed Plaintiffs and Jensen of the relevant circumstances and possible adverse consequences of the proposed concurrent representation, doing so in accordance with Rule 3-310 (A) and (C) of the California Rules of Professional Conduct. M&M did so by sending to Plaintiffs and Jensen the Conflict Waiver Letter and Conflict Waiver, both of which it prepared with the expert assistance of James Ham, Esq. M&M also advised Plaintiffs and Jensen to confer with their own independent attorneys about the Conflict Waiver Letter and Conflict Waiver.[12]

(2) Plaintiffs and Jensen then conferred with their respective independent attorneys about these matters. These attorneys advised them about the Conflict Waiver Letter and Conflict Waiver.[13]

---

[8] See Ham Declaration at ¶¶ 9-22; and Pansky Declaration at ¶ 5.

[9] See Ham Declaration at ¶¶ 9-22; and Pansky Declaration at ¶ 5.

[10] See Ham Declaration at ¶¶ 9-22; and Pansky Declaration at ¶ 5.

[11] See Ham Declaration at ¶¶ 9-22; and Pansky Declaration at ¶ 5.

[12] See Markham at ¶¶ 12-13.

[13] See *id.* at ¶¶ 14-15.

(3)     After reviewing the Conflict Waiver Letter and Conflict Waiver, and after conferring about them with their own independent attorneys, Jensen and Plaintiffs signed the Conflict Waiver. By so doing, each gave informed, written consent to the concurrent representation and the waiver of potential conflicts of interest.[14]

(4)     M&M has now applied to this Court at the earliest possible date, seeking approval of the concurrent representation and a finding that Plaintiffs' consent to this concurrent representation has been properly made on behalf of themselves and the potential class members.

**If the Conflict Waiver Is Disapproved**.   If now or later M&M is not permitted to perform the concurrent representation, Plaintiffs and Jensen have agreed that M&M may withdraw as counsel for the Plaintiffs and continue to represent Jensen in Jensen's Case.  This matter is disclosed in the Conflict Waiver Letter.[15]  So as to spare Plaintiffs the burden of engaging replacement counsel after M&M has devoted substantial time and effort to the litigation of the Developers' Case, M&M requests an early ruling from the Court on this matter.

**M&M's Representation: Why It is Beneficial to the Proposed Class**: M&M should be permitted to represent Jensen in Jensen's Case as well as Plaintiffs and the proposed class in the Developers' Case.  Here is why:

1.     **M&M's Prior Experience**. M&M and attorney William Markham in particular have been the attorneys who have prosecuted the Jensen Case and compiled the proofs and legal theories that underlie the Developers' Case.[16]

2.     Attorney Markham, a graduate of Harvard Law School (J.D., 1987), is a practitioner with substantial experience in antitrust litigation.[17] This experience is relevant to both cases: The Jensen Case is a litigation of antitrust claims and related common-law torts.  The Developers' Case also entails the litigation of antitrust claims, even if the principal claims are for unfair business

---

[14]     See id.

[15]     See id. at ¶ 20.

[16]     See id. at ¶¶ 4-10.

[17]     See id. at ¶¶ 2-3.

practices and unjust enrichment.

3. M&M was engaged by Jensen in early 2005, nearly one year before the Jensen Case was filed. For more than three years, M&M and attorney Markham have become closely familiar with the legal theories, evidence, witnesses, defenses, contentions, and related matters that underlie the Jensen Case. This in turn has allowed M&M to grasp the significance of certain disclosures that AT&T recently made in the Jensen Case as well as the significance of certain findings that M&M obtained during its recent private investigation of AT&T's "reimbursement" of property developers for trenching and materials.[18]

4. By its efforts in the Jensen Case, M&M has learned how and to what extent AT&T keeps evidence for its reimbursement of property developers – not only for AT&T Vaults, but also for conduit, trenching, and polymer vaults. M&M has deposed fourteen AT&T witnesses on these reimbursement practices and two others on closely related matters. M&M has also deposed the Defendants' two respective expert economists and closely analyzed their antitrust theories and economic theories. M&M has also become intimately familiar with the evidence and legal contentions that concern the forced purchase-resale of AT&T Vaults – which is the principal subject-matter of the Jensen Case and one of the subject-matters of the Developers' Case.[19]

5. These disclosures and findings, along with other evidence and information that M&M has compiled and analyzed during its work in the Jensen Case, have allowed M&M and Plaintiffs to reach the following conclusion: Defendants and perhaps as many as three other companies have committed systematic legal wrongs against affected property developers, obliging them to install AT&T's infrastructure partly at their own expense, even though the governing law requires AT&T to bear this expense in full. The Developers' Case is substantially larger than the Jensen Case. Both cases, however, entail a litigation of the forced purchase-resale of AT&T Vaults.[20]

//

---

[18]   See id. at ¶¶ 4-10.

[19]   See id.

[20]   See generally Plaintiffs' Complaint (Docket No. 1 in the Developers' Case).

PLAINTIFFS' MOTION FOR APPROVAL OF THEIR WAIVER OF POTENTIAL CONFLICTS OF INTEREST   -viii-

6. To understand the claims in the Developers' Case and explain them properly, it is necessary to become fully versed in the evidence and theories that M&M has developed after years of work in the Jensen Case and as a result of its own investigation into these matters earlier this year.[21]

7. Owing to its experience and work in these matters, M&M is well-suited to prosecute the Developers' Case, and it has agreed to undertake this representation along with KCR. M&M's actual knowledge and familiarity with the underlying matters and legal theories have already conferred a demonstable benefit to Plaintiffs and their proposed class of affected property developers.[22]

8. KCR, which specializes in class action litigation and complex business litigation, will likewise provide demonstrable benefits to Plaintiffs and the proposed class because this firm has the resources and experience necessary and appropriate to the prosecution of the Developers' Case. KCR hopes to avail itself of M&M's understanding of the underlying evidence, contentions, and theories.[23]

9. M&M respectfully submits that it would be a disservice to Plaintiffs and the proposed class to deprive them of its knowledge of these matters and its ability to litigate them on their behalf. Plaintiffs and the proposed class have already benefitted from M&M's representation of them in the Developers' Case. They will continue to do so if M&M's proposed concurrent representation is approved by this Court.

10. **Disclosure of Potential Conflicts and the Informed Waiver of Them**. There are no actual conflicts between Plaintiffs/the proposed class and Jensen. On the contrary, their claims appear directly to reinforce one another. Each has been harmed by Defendants, and each has claims against the Defendants that arise in part from the same conduct. (Even so, the measure of damages is completely different in each case.)[24]

---

[21] See Markham Declaration at ¶¶ 4-10.

[22] See id.

[23] See Declaration of William Kershaw ("Kershaw Declaration") at ¶¶ 1-4.

[24] Compare Jensen's Fourth Amended Complaint (Docket No. 117 in the Jensen Case) with Plaintiffs' Complaint (Docket No. 1 in the Developers' Case).

11. As for potential conflicts, M&M has fully disclosed to Plaintiffs and Jensen all the relevant circumstances as well as the actual and reasonably foreseeable adverse consequences of the concurrent representation, sending the Conflict Waiver Letter and Conflict Waiver to them, and urging them to confer with independent legal counsel about these issues. Each has waived the potential conflicts and approved the concurrent legal representation by M&M after carefully considering the disclosures and after conferring with independent legal counsel about the advisability of consenting to the concurrent representation.[25]

12. Jensen's in-house counsel, Tyrus Cobb, Esq., reviewed and approved of the Conflict Waiver Letter and Conflict Waiver. Jensen then signed the Conflict Waiver on May 7, 2008.[26]

13. Plaintiffs showed the Conflict Waiver Letter and Conflict Waiver to their regular transactional attorney, Jeff Jones, Esq. of McDonough Holland & Allen. Attorney Jones raised certain concerns, which attorney Markham answered to Plaintiffs' satisfaction. Plaintiffs then signed the Conflict Waiver on May 8, 2008.[27]

14. In this manner, Plaintiffs and Jensen have had the potential conflicts of interest explained to them. Both have been advised about these matters by their own independent attorneys. Having been so informed and advised, both have agreed to the Conflict Waiver, which M&M now submits to this Court for its approval.

15. **The Two Sets of Claims Reinforce One Another**. The Jensen Case and the Developers' Case directly reinforce one another. Jensen's witnesses will agree to be examined by M&M or KCR in the Developers' Case. Their testimony will directly support Plaintiffs' claims in the Developers' Case. Plaintiffs and other developers might likewise be asked to agree to testify in Jensen's Case, subject to this Court's approval and limitations on such testimony. Their testimony, if allowed, would directly support Jensen's claims.

//

---

[25] See Markham Declaration at ¶¶ 12-13.

[26] See id. at ¶ 14.

[27] See id. at ¶ 15.

PLAINTIFFS' MOTION FOR APPROVAL OF THEIR WAIVER OF POTENTIAL CONFLICTS OF INTEREST   -x-

1 | 16. **The Potential Conflicts Are Hypothetical, the Actual Benefits Significant**. The potential conflicts of interest are not atypical of the potential conflicts that are found in many joint or concurrent representations where client consent is often given. They do not raise serious conflict-of-interest issues that would impair M&M's duty of loyalty to each client or M&M's ability to zealously represent the interests of both clients. In addition, the potential conflicts are not of the variety that have a serious risk of ripening to actual or serious conflicts of interests, and mechanisms have been established to address and resolve any issues that arise during the representation. The actual benefits of M&M's continued representation of Plaintiffs are significant and ongoing.[28]

17. **Discovery Requests to Jensen in the Developers' Case**. One of the mechanisms already in place and established by the parties to resolve any potential conflict issue relates to the discovery of evidence. Defendants in the Developers' Case will likely request evidence from Jensen. Plaintiffs and Jensen have agreed to the following arrangement to address such a request: If any such request is made, M&M will not participate in any negotiations regarding the request. Instead, the request will be addressed by KCR for Plaintiffs and by Jensen's in-house attorney for Jensen. This agreement is set forth in the Conflict Waiver Letter. Plaintiffs and Jensen, whose claims support one another, are confident that they can readily reach agreement as to how to address any such request. Moreover, Plaintiffs and Jensen have presented a companion motion to this Court, asking for a coordination of both cases, and specifically requesting that evidence made available in the Jensen Case be disclosed to the parties in the Developers' Case, so long as it remains subject to identical protective classifications. This would resolve the matter definitively, as Defendants in the Jensen Case have already obtained from Jensen everything that could conceivably bear upon any of the claims against them in either case.[29]

18. All other potential conflicts of interest are remote, hypothetical, and unlikely to arise at all.[30]

---

[28] See Ham Declaration at ¶¶ 8-22; Pansky Declaration at ¶ 5; Kershaw Declaration at ¶ 4; and Markham Declaration at ¶¶ 4-10.

[29] See id at ¶19 Ham Declaration at ¶ 17;

[30] See Ham Declaration at ¶¶ 8-22; and Pansky Declaration at ¶ 5.

PLAINTIFFS' MOTION FOR APPROVAL OF THEIR WAIVER OF POTENTIAL CONFLICTS OF INTEREST          -xi-

19. The actual, certain benefits of having M&M participate in the Developers' Case are demonstrable, ongoing, and arguably invaluable to Plaintiffs as well as the proposed class.[31]

M&M now seeks early intervention from this Court, requesting a ruling that it is not disqualified from representing Plaintiffs or the proposed class on account of any potential conflict of interest between Plaintiffs/the proposed class and Jensen.

### IV.  STANDARDS OF REVIEW

The present motion raises two distinct issues:

**Was the Conflict Waiver Properly Given**?  This matter concerns the professional conduct of attorneys practicing before this Court.  It is therefore governed by the California Rules of Professional Conduct and related case law.  See Local Rule 11 4 (a) (1) ("Every member of the bar of this Court and any attorney permitted to practice in this Court ... must: (1) Be familiar and comply with the standards of professional conduct required of members of the State Bar of California").

**Has the Conflict Waiver Been Given on Behalf of the Proposed Class?**  Can Plaintiffs consent to the Conflict Waiver on behalf of the proposed class?  This issue is governed by the below-cited case law.

### V.  M&M HAS PROPERLY OBTAINED A WAIVER OF POTENTIAL CONFLICTS OF INTEREST FROM JENSEN AND PLAINTIFFS

M&M has undertaken a concurrent representation by representing (1) Jensen in the Jensen Case; and (2) Plaintiffs and the proposed class in the Developers' Case.  Before doing so, M&M determined that there were no actual conflicts of interest, and so far as possible it disclosed and explained to Jensen and Plaintiffs the reasonable foreseeable adverse consequences that might arise between Jensen on the one hand and Plaintiffs and the proposed class on the other as a result of the proposed concurrent representation.  M&M made these disclosures to Jensen and Plaintiffs so far as it reasonably could.  Its Conflict Waiver Letter, which it prepared with the help of its ethics counsel, carefully addresses as many potential conflicts as M&M and its ethics attorneys could reasonably envision.

---

[31]  See Kershaw Declaration at ¶ 4; and Markham Declaration at ¶¶ 4-10.

1  Jensen and Plaintiffs each reviewed M&M's Conflict Waiver Letter and Conflict Waiver.
2  Each showed these documents to its own attorney (Jensen referred them to its in-house counsel,
3  while Plaintiffs used their regular transaction attorney).  After doing so, Jensen and Plaintiffs signed
4  the Conflict Waiver, authorizing M&M to undertake the dual representation.
5  In this manner, M&M fulfilled its obligations under the California Rules of Professional
6  Conduct, which govern the propriety and enforceability of the Conflict Waiver.
7  Under Rule 3-310(A) and (C) of the California Rules of Professional Conduct, an attorney
8  must provide written disclosure of the relevant circumstances and actual and reasonable foreseeable
9  adverse consequences to the client that might arise from a concurrent representation.  After making
10 such a disclosure, the attorney must obtain the "informed written consent" from the affected clients,
11 by which each client authorizes the attorney to represent both despite the actual or potential conflicts
12 that might exist between them.  See Rule 3-310 (C) (3) of the California Rules of Professional
13 Conduct.
14 In particular, an attorney must disclose actual or potential conflicts that have arisen or might
15 later arise between two clients if (1) the attorney represents one client in a pending matter, (2) the
16 attorney proposes to represent a second client in another matter, and (3) the attorney's representation
17 of the second client in the second matter might give rise to conflicts of interest between (a) the
18 attorney's duties to the first client in the first matter, and (b) the attorney's duties to the second client
19 in the second matter.  See Rule 3-310 (C) (3) of the California Rules of Professional Conduct.
20 Where this occurs, the attorney must make the disclosure to both clients, and both must then
21 give an "informed written consent" permitting  the attorney to concurrently represent both clients
22 despite the actual or potential conflicts of interest.  See id. ("A member shall not, without the
23 informed written consent of each client: (....) (3) Represent a client in a matter and at the same time in
24 a separate matter accept as a client a person or entity whose interest in the first matter is adverse to
25 the client in the first matter.").  See also In re Wheatfield Business Park LLC, 286 Bankr. R. 412, 420
26 (C.D. Cal., Bankr., 2002) ("In California, Rule 3-310 of the California Rules of Professional Conduct
27 prohibit counsel from representing adverse interests unless the client gives informed written consent.
28 Consent is required both for the representation of actual conflicting interests and potential conflicts of

interest.").

M&M properly followed these required procedures, taking care to do so as thoroughly as possible:

(1) M&M obtained specific guidance and legal advice on the matter from specialists in professional ethics and responsibility.

(2) M&M circulated the Conflict Wavier Letter to Jensen and Plaintiffs, carefully explaining all the reasonably foreseeable adverse consequences as fully as possible. M&M also urged each to confer with its own independent attorney about the disclosures, risks and benefits of consenting to the concurrent representation by M&M.

(3) Jensen proceeded to confer about these matters with its in-house counsel. It then approved of the Conflict Waiver. Plaintiffs conferred about these matters with their transactional attorney. They then approved of the Conflict Waiver.

(4) M&M then completed its preparation of the complaint in the Developers' Case, confirmed its co-association with KCR, and filed the Developers' Case.

In this manner, M&M properly obtained the Conflict Waiver in accordance with the California Rules, which set forth the applicable standards for this Court.

### VI. M&M HAS PROPERLY ADDRESSED THE ISSUE OF DISCOVERY REQUESTS TO JENSEN AS WELL AS THE RELATED ISSUE OF TESTIMONY BY EACH CLIENT IN THE OTHER'S CASE.

In addition to the foregoing, M&M has made special arrangements to address any discovery request that Defendants might propound to Jensen in the Developers' Case: If Defendants make such a request, M&M will not act in the matter. Rather, KCR will address any such request on behalf of Plaintiffs/the proposed class, and Jensen's in-house counsel will do the same on behalf of Jensen. Plaintiffs and Jensen, whose interests in these matters are aligned, are confident that they can successfully reach agreement on any such request. Even so, M&M will play no role in responding to any such discovery request.

In addition, Jensen and Plaintiffs have submitted a companion motion for coordination of their two cases, asking that this Court coordinate the two cases and then allow the parties in the

1  Developers' Case to use evidence obtained from the Jensen Case.  This evidence would remain
2  subject to the same protective classifications that have been imposed in the Jensen Case.  If this
3  request is granted, it will likely resolve this matter entirely.  Defendants in the Jensen Case have
4  already requested and obtained all evidence that Jensen could conceivably be asked to produce.
5  Moreover, Jensen is willing to provide witnesses to testify in the Developers' Case.  Plaintiffs have
6  likewise indicated that they will testify in Jensen's Case if the Court permits them to do so.  The
7  testimony from each will clearly help the other to establish its claims.

### VII.  PLAINTIFFS HAVE PROPERLY CONSENTED TO THE CONFLICT WAIVER ON BEHALF OF THE PROPOSED CLASS

10  Plaintiffs are the proposed representatives of a proposed class.  In this capacity, they have
11  properly consented to the Conflict Waiver on behalf of the proposed class.

12  If there is any deficiency in Plaintiffs' representation of the proposed class, the Court can
13  address the matter when during class certification proceedings it is asked to appoint Plaintiffs as the
14  class representatives.  Otherwise, Plaintiffs are putative class representatives who are expected to
15  make decisions that bind the entire proposed class.  One such decision that they may rightly make is
16  to consent to the Conflict Waiver on behalf of the proposed class.

17  This issue was squarely addressed in a very recent case, *Sharp v. Next Entertainment, Inc.*,
18  which was decided on May 28, 2008.  See *Sharp v. Next Entertainment, Inc.*, Cal. Rptr.3d, 2008 WL
19  2191209, at 11-13 (Cal. App. 2 Dist., May 28, 2008).  In this case, a California appellate court
20  approved of an informed written consent to concurrent representation made by (1) plaintiffs in a
21  proposed class action, and (2) plaintiff in another, related case.  This court reviewed the
22  consent/conflict waiver to determine whether it satisfied the California Rules of Professional Conduct
23  and whether it could be given by the class plaintiffs on behalf of the proposed class. The court held
24  that the consent/conflict waiver was validly made, and that it was properly made on behalf of the
25  proposed class.  See *id.* at 11-14.

26  The defendants in this case argued that the waiver was invalid unless every member of the
27  proposed class personally gave informed written consent to the waiver.  The *Sharp* court, finding that
28  this raised an issue of first impression, ruled that the plaintiffs had properly consented to the waiver

on behalf of the putative class.[32]  The *Sharp* court thus held that the named plaintiffs could properly waive potential conflicts of interest on behalf of the putative class, allowing the attorneys in the class action to maintain concurrent representation of (1) the proposed class in the class action, and (2) another client in a second matter that had substantial bearing upon the class action.  See *id.*

To reach this finding, the *Sharp* court first found that the named plaintiffs had given informed written consent to the conflict waiver after receiving a proper disclosure about potential conflicts. According to the court, the conflict waiver was properly given in accordance with Rule 3-310 of the California Rules of Professional Conduct.  See *id.* at 11-12.

This decided, the *Sharp* court then found that the proposed class representatives had properly acted on behalf of the proposed class when giving the waiver, and that the proposed class would be bound by the waiver, subject only to the court's subsequent evaluation of whether the proposed representatives and their counsel were otherwise qualified to represent the proposed class.  See *id.* at 11-14.

In an extended discussion of the matter, the *Sharp* court offered the following reasons in support of its holding.

1. **Impracticability of Having Each Member Personally Sign**.  Requiring each putative class member to sign the waiver would be impracticable.  See *id.* at 12.

2. **Class Representatives Are Supposed to Make Decisions That Bind the Class.**  By their very nature, class actions require that the proposed class representatives make decisions on behalf of the putative class.  There exist proper procedures for determining (1) whether the proposed representatives can assume this responsibility, and (2) whether their attorneys are competent to litigate the claims of the proposed class.  If the proposed representatives and their attorneys can later satisfy the court that they are otherwise fit to represent the class, it will be inferred that the representatives properly consented to the conflict waiver on behalf of the class.  In the meantime, the named plaintiff can properly execute a conflict waiver on behalf of the putative class.  See *id.* at 13.

//

---

[32]  See also Rule 1.7(a) of the ABA Model Rules and at Comment [25], which supports the position that class representatives may consent on behalf of the class.

On this point, the *Sharp* court stated the following:

> [C]lass action procedures already include a system by which the court determines if the named class representatives can adequately represent the class. These procedures ensure that if there are conflict of interest issues, the representative plaintiffs are capable of providing informed consent on behalf of the class. The plaintiffs seeking certification have the burden to show that they can adequately represent the class by vigorously and tenaciously protecting the class members' interests. As part of this analysis, the trial court assesses the competency of class counsel....

See *id*. at 13 (citing *Lockheed Martin Corp. v. Superior Court* 29 Cal.4th 1096, 1104 (Cal., 2003); *Simons v. Horowitz* 151 Cal.App.3d 834, 846 (Cal. App., 1984); *Richmond v. Dart Industries, Inc.* 29 Cal.3d 462, 471 (Cal., 1981); *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* 52 Cal. App.4th 1, 12-13 (Cal. App. 1997); *Howard Gunty Profit Sharing Plan v. Superior Court* 88 Cal. App.4th 572, 579-580 (Cal. App., 2001)).

  3. **The Opt-Out Policy Favors Allowing Such Waivers to Be Made.** It would be improper to require each putative member of the proposed class to assent to the conflict waiver. Dong so would effectually nullify the "opt-out" rule, allowing the defendants to whittle down the ultimate size of the class. Rather than join the class by passive inaction, members of the proposed class would be required to take the positive step of assenting to the waiver. This would have the effect of reversing the governing law on "opting out" of the proposed class, thereby diminishing the size of the class in a manner expressly rejected by California law. See *id*. at 13. These same opt-out provisions govern class actions, such as the Developers' Case, that are brought in federal district court under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

  4. **Weighing Actual Benefits to the Class Against Hypothetical Harm**. The *Sharp* court considered the practical repercussions of allowing or forbidding the attorneys to represent the putative class and another client in a related matter. The court considered the right of a party to choose its own attorney as well as the importance to society of having the interests and claims of the proposed class vigorously prosecuted. The court observed that the attorneys had already devoted substantial time and effort to reviewing the voluminous evidence and complicated issues that underlay the proposed class action. Allowing the attorneys to represent the proposed class would help to ensure that the class would receive vigorous representation. Barring these attorneys

from participating because they had not obtained actual consent from each putative member would cause actual harm to the proposed class. The court found no evidence that the attorneys had somehow favored their client in the other matter at the expense of the proposed class. See *id*. at 14.

For all these reasons, the court in *Sharp* ruled that (1) the conflict waiver was given in accordance with Rule 3-310 of the California Rules of Professional Conduct, and (2) the conflict waiver was properly given by the named plaintiffs on behalf of the proposed class. See *id*. at 11-14.

All of these reasons apply equally or with more force in the present matter:

1. **Impracticability of Having Each Member Personally Sign**. Plaintiffs cannot practically have each member of their proposed class give "informed written consent" to the Conflict Waiver. Obliging them to do so would impose an unfair if not impossible burden. The result is that Plaintiffs would be unfairly deprived of their preferred attorneys, and the putative class would be deprived of M&M's special ability to litigate the claims of the proposed class in the Developers' Case.

2. **Class Representatives Are Supposed to Make Decisions That Bind the Class.** In the Developers' Case, Plaintiffs are the proposed representatives of the putative class. In this capacity, they are expected to make decisions on behalf of the putative class. One such decision has been Plaintiffs' informed written consent to the Conflict Waiver, given on behalf of the proposed class. If this Court later finds that Plaintiffs or their attorneys are ill-suited to represent the class on grounds other than the Conflict Waiver, it can decline to appoint them. If Plaintiffs are found to be proper representatives, they will be expected to make many decisions that bind the class. Plaintiffs should be permitted to consent to the Conflict Waiver on behalf of the proposed class, subject only to the Court's subsequent evaluation of their suitability to act as the class representatives in this case.

3. **The Opt-Out Policy.** Requiring each member of the proposed class to give informed written consent to the Conflict Waiver would have the effect of reversing the opt-out policy that governs this proposed class action, which is brought under Rule 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs wish to have the benefit of M&M's knowledge and skills, which they expect will serve the interests of the proposed class. They should not be forced to choose between M&M's representation and the right to assemble a class in accordance with the opt-out rule.

4. **Weighing Actual Benefits to the Class Against Hypothetical Harm**. M&M has analyzed the Jensen matter since early 2005 and litigated the Jensen Case since early 2006. It has become intimately familiar with the arguments and evidence that underlie the Jensen Case. Along the way, M&M uncovered the evidence and developed the legal theories that support Plaintiff's claims in the Developers's Case. If M&M is not permitted to represent the proposed class, the interests of the proposed class will be directly and substantially harmed. At best, another law firm will have to undertake a costly effort to learn what M&M already knows. The Developers' Case will be large and difficult enough without imposing this unnecessary burden. M&M's representation of the proposed class does not appear to pose any actual problem or risk of harm to the proposed class. The potential conflicts are strictly hypothetical, save for the matter of discovery requests to Jensen in the Developers' Case – a matter that M&M has already resolved with the informed written consent of Jensen and Plaintiffs. The Court should therefore permit Plaintiffs to consent to the Conflict Waiver on behalf of the proposed class.

## VIII.  CONCLUSION

For all the foregoing reasons, the Court should grant the present motion, ruling that Jensen and Plaintiffs have given informed consent to the Conflict Waiver, and ruling that Plaintiffs have properly consented to this Conflict Waiver on behalf of the proposed class.

DATED:  June 6, 2008                        Respectfully submitted,


MALDONADO & MARKHAM, LLP

By:  /s/
William A. Markham,
Attorneys for COLLINA DAL LAGO, L.P. and BERNAU DEVELOPMENT CORPORATION