**MALDONADO & MARKHAM, LLP**
William Markham (SBN 132970)
402 West Broadway, 24th Floor
San Diego, CA 92101
Telephone: (619) 221-4400
Facsimile: (619) 224-3974
E-mail: wm@maldonadomarkham.com

**KERSHAW, CUTTER & RATINOFF, LLP**
William A. Kershaw (SBN 57486)
Lyle Cook (SBN 148914)
401 Watt Avenue
Sacramento, CA 95814-2719
Telephone: (916) 448-9800
Facsimile: (916) 669-4499
E-mail: wkershaw@kcrlegal.com

Attorneys for Plaintiffs
COLLINA DAL LAGO, L.P. and BERNAU DEVELOPMENT CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COLLINA DAL LAGO, L.P. and BERNAUE DEVELOPMENT CORPORATION; and all similarly situated legal persons,<br><br>  Plaintiffs<br>   v.<br><br>PACIFIC BELL TELEPHONE COMPANY; NEVADA BELL TELEPHONE COMPANY; AT&T SERVICES, INC.; and OLDCASTLE PRECAST, INC.,<br><br>  Defendants. | Case No. CV-08-2451<br><br>**DECLARATION OF JAMES I. HAM RE PLAINTIFF'S MOTION FOR APPROVAL OF THEIR CONFLICT WAIVER**<br><br>Date:   June 27, 2008<br>Court:  Courtroom 10, 19th Fl.<br>Judge:  Hon. Susan Illston<br><br>Complaint filed: May 13. 2008 |

---

1
DECLARATION OF JAMES I. HAM
CASE NO. CV-08-2451

I, James I. Ham, declare and state:

1. I am an attorney duly licensed to practice law in the State of California and in the United States District Court for the Northern District of California. In addition to having my own law office, I am Of Counsel to the law offices of Pansky & Markle, which was retained by William Markham of the law firm of Maldonado & Markham to provide legal ethics advice and consultation regarding the proposed concurrent representation by that law firm of plaintiff in the Jensen case and plaintiffs in a proposed class action case (the "Developers' Case"), and to assist in the preparation and drafting of appropriate disclosures and appropriate consents pursuant to Rule 3-310 of the California Rules of Professional Conduct.

2. I know all of the following to be true of my own personal knowledge and, if called and sworn as a witness, would testify competently thereto.

3. My qualifications in connection with the duties and responsibilities of practicing attorneys, as well as the standards of care and ethical rules applicable to practicing attorneys, are briefly set forth below. My complete curriculum vitae is also attached as Exhibit "A."

4. I am an attorney in private practice. I was admitted to the California Bar in 1981, and have remained a member in good standing continuously since that time. I represent attorneys before the State Bar of California, and in civil courts, and also represent both plaintiffs and defendants in civil litigation. I frequently consult with and advise lawyers regarding legal ethics and risk management issues, and have served as an expert witness on matters of lawyer professional conduct, legal ethics, and legal malpractice. Prior to opening my own law office in 2007, I was a partner for ten years in the law firm of Arnold & Porter, LLP, resident in its Los Angeles Office. While at Arnold & Porter, I was a member of the law firm's Ethics & Practice and Loss Prevention Committees. In that capacity, I provided legal ethics advice and consultation to Arnold & Porter lawyers located across the United States and internationally. Prior to joining Arnold & Porter, LLP, I was a partner at the litigation boutique of Quinn, Kully and Morrow, P.C., also located in Los Angeles. Among other things, my work involved

representing attorneys in professional negligence cases, and providing legal ethics compliance advice both in-house and to firm clients.

5. I have been a continuously active member of the Los Angeles County Bar Associations' Committee on Professional Responsibility and Conduct ("PREC") since 1985. I previously served as the Chair of PREC and am currently Secretary of that committee. PREC responds to ethics inquiries from attorneys, issues legal ethics opinions for the guidance of members of the bar, and evaluates and provides comment upon proposed professional standards and disciplinary rules. I also served a term on the California State Bar's Standing Committee on Professional Responsibility and Conduct ("COPRAC"). COPRAC is the State Bar's analog to the Los Angeles PREC. I have also been a Lecturer In Law at the University of Southern California's Gould School of Law, where I taught Legal Professions, a course focusing on professional responsibility and legal ethics.

6. In addition to providing legal ethics advice and opinions, I have had over 25 years of complex civil litigation experience in both state and federal courts on behalf of many different clients. Among other things, I have provided legal representation to defendants in federal and state class action litigation, including cases such as *In re Nucorp Energy Securities Litigation* and *In re American Continental Corporation Securities Litigation (Lincoln Savings & Loan),* as well as in multi-state litigation, including cases such as the Attorneys' General tobacco litigation, *The State of Minnesota, et al. v. Philip Morris Incorporated, et al.*.

7. Over the past 20 years, I have drafted, reviewed and edited hundreds of disclosure and conflict of interest waiver letters and have provided conflict of interest advice and consultation to hundreds of attorneys, both as an in-house ethics advisor to my law firms and to clients of my law firms.

8. Earlier this year, Pansky & Markle was retained by William Markham of the law firm of Maldonado & Markham. Among other things, Mr. Markham sought our advice concerning whether his law firm could ethically act as co-counsel for the plaintiff's in a proposed class action (the "Developers' Case") while concurrently representing in another case (the "Jensen Case") a plaintiff against the same defendants in circumstances where some claims of

1 the plaintiffs in the Developers' Case arose out of the same course of conduct and operative facts
2 as the claims in the Jensen Case.  It was explained to us the plaintiff in the Jensen Case is alleged
3 to be an excluded, harmed competitor in an antitrust lawsuit brought against Pacific Bell
4 Telephone Company, Nevada Bell Telephone Company, AT&T Services, Inc. and Oldcastle
5 Precast, Inc., and that the proposed class action case would involve antitrust claims on behalf of
6 harmed customers in the same market who had allegedly suffered injuries because of the
7 arrangement by which the Jensen Case plaintiffs and other competitors had been excluded from
8 competing for the business of customers such as the proposed class members by the defendants.

9     9. The California Rules of Professional Conduct expressly contemplate, and do not
10 prohibit, the concurrent representation of two plaintiffs having claims against the same
11 defendants and which arise out of identical or similar facts, provided that the requirements of
12 Rule 3-310 of the Rules are satisfied.  Specifically, Rule 3-310(A) and (C) require a lawyer to
13 obtain the clients' informed written consent following written disclosure of the relevant
14 circumstances and of the actual and reasonably foreseeable adverse consequences to the client of
15 a proposed concurrent representation.

16     10. In my experience, it is not uncommon for clients to give their consent to, and
17 waive, potential conflicts of interest that exist in cases of joint, or concurrent, representation.
18 *See, e.g.,* California Practice Guide, *Professional Responsibility*, ¶ 4:28, p. 4-11 (Rutter Group)
19 ("Clients often prefer to employ a single counsel on a matter for which they have apparently
20 similar interests … .")  Whenever a lawyer represents more than one client in a matter, potential
21 conflicts can exist.  In many of these cases, however, the conflicts are merely potential, are not
22 likely to ripen into significant, actual conflicts of interest.  In these situations, it can reasonably
23 be expected that the potential conflicts of interest will not interfere with or impair the lawyer's
24 duty of loyalty, or the lawyer's professional judgment and duty of zealous advocacy.

25     11. It is reasonable for clients to consent to a concurrent legal representation in
26 circumstances where the client is able to conclude, based on the relevant circumstances and after
27 considering the reasonably foreseeable adverse consequences to the client, that the benefits of the
28 proposed legal representation outweigh the potential risks.  Rule 3-310 of the California Rules of

Professional Conduct allow concurrent representations notwithstanding the existence of potential conflicts of interest because clients also have an interest in being represented by counsel of their choice, and the existence of potential conflicts of interest do <u>not</u>, of necessity, interfere with the ability of legal counsel to provide competent, zealous and effective legal representation. Moreover, clients also consider the advantages of a joint representation, which in a given case can include significant cost savings, access to unique legal expertise, experience and knowledge, and various benefits associated with or flowing from the coordination of litigation against the same or similar defendants.

12. California's Rules of Professional Conduct acknowledge the benefits of allowing counsel with experience in a particular area to make themselves available to represent similarly situated parties. Thus, for example, Rule 1-500 of the Rules of Professional Conduct provides that it is ethically improper to propose that a lawyer refrain from representing other clients in similar litigation as a condition of settlement with the lawyer's preexisting client. *See* Rule 1-500(A) and Official Discussion ("Paragraph (A) makes it clear that the practice, in connection with settlement agreements, of proposing that a member refrain from representing other clients in similar litigation, is prohibited. Neither counsel may demand or suggest such provisions nor may opposing counsel accede or agree to such provisions.") The Rules of Professional Conduct reflect a policy favoring client access to lawyers with knowledge, experience or expertise in particular matters, including the representation of multiple clients in separate but related legal actions.

13. Our work in this matter included the preparation of what is commonly known as a "conflict of interest waiver letter" or "conflict waiver letter." The purpose of the letter is to comply with the requirements of Rule 3-310, and in particular, the requirements of Rule 3-310(A) regarding "disclosure" of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client of entering into the proposed concurrent legal representation, as defined in Rule 3-310(A)(1), and to obtain the client's "informed written consent" as defined in Rule 3-310(A)(2).

14. In preparing the conflict waiver letter, we considered the nature and scope of the existing Jensen litigation and the proposed class action, known as the Developers' Case, and sought to identify all relevant circumstances that would be material to a client's decision to consent to the proposed concurrent representation. We sought to identify all actual or reasonably foreseeable adverse consequences to the clients that might arise from the proposed concurrent representation. The conflict waiver letters that were prepared and sent to Mr. Markham's clients identify all the reasonably foreseeable potential conflict issues and adverse consequences which we were able to identify.

15. Based on my experience in reviewing and drafting hundreds of conflict of interest waiver letters, the letters sent by Mr. Markham to his clients satisfy the requirements of Rule 3-310. In fact, the waiver letters contain considerably more disclosure, detail and explanation than is customarily found in waiver letters that are commonly used by California attorneys and law firms and which have been accepted by the Courts as sufficient. *Compare, e.g., Zador Corp., N.V. v. Kwan*, 31 Cal.App.4th 1285, 1301 (1995) (California law does not require that every possible consequence of a conflict be disclosed for a consent to be valid).

16. Based on my experience, the potential conflict issues and reasonably foreseeable adverse consequences identified in the conflict waiver letters sent to the clients in the Jensen Case and the Developers' Case are not unusually complex or unique, and are of the type that are often, even routinely, waived by parties seeking concurrent representation by the same lawyers. The conflicts are potential and in most cases remote, such as, for example, the theoretical possibility that the defendants in this case would be unable to satisfy fully any judgments in the two cases, thus raising the possibility that the interests of clients in the Jensen Case and the Developers' Case could diverge on the issue of judgment collection.

17. With respect to the question of potential conflicts that might arise as a result of one plaintiff requesting discovery from the other plaintiff, the conflict waiver letter sets forth a reasonable procedure for resolving such issues that does not require the Maldonado & Markham law firm to take a position against one of it's concurrently represented clients. In my opinion, the procedure for resolving such discovery issues contained in the conflict wavier letters is

effective to prevent a potential discovery issue from ripening into an actual conflict of interest. It is also my opinion that the procedures will not interfere with the lawyers' ability to exercise their professional judgment, and reasonably insure that legal counsel can effectively, competently and zealously fulfill the duties owed to each concurrently represented client.

18.     In preparing the conflict of interest waivers, I considered the question of whether proposed class representatives could effectively consent to a concurrent representation on behalf of a proposed class. I concluded that a proposed class representative can make a reasonable decision to waive potential conflicts of interest and approve a concurrent legal representation on behalf of himself or herself as well as the proposed class. I based my conclusion on the fact that one of the functions of a class representative is to represent the class and to make decisions regarding the conduct of the litigation. A reasonably acting class representative should, therefore, be able to consent to a potentially conflicting representation just as an individual client might reasonably decide to do. Furthermore, it would be impracticable and potentially impossible to require absent class members to consent. There are various circumstances in addition to conflicts of interest disclosure where the California Rules of Professional Conduct require communication, disclosure or consent. *See, e.g.,* Rule 3-500 (requiring a member to keep a client reasonably informed of significant developments); Rule 3-320 (relationship with another party's lawyer); Rule 4-100(B)(1) (requiring notification to client of the receipt of client funds or property); Rule 2-200 (consent to division of legal fee); 3-300 (acquiring an ownership, possessory, security or other pecuniary interest). Compliance with these rules would be practically impossible if the communications and disclosures must always be to every member of the proposed class. The factors identified in the recent California Court of Appeal decision in *Sharp v. Next Entertainment , Inc.* ___ Cal.App.4th ___, 2008 WL 2191209, 2008 Cal.App. Lexis 798 (Cal. Ct. Appeal, 2nd Dist., May 28, 2008) also support my conclusion.

19.     In addition, Comment [25] to the ABA's conflict of interest rule, Rule 1.7 of the Model Rules of Professional Conduct, states that unnamed members of a class are ordinarily not considered to be clients of the lawyer for purposes of applying the prohibition against representing concurrently conflicting interests. Comment [25] thus recognizes the unique

character of class action cases and the need to apply the rules of ethics in a reasonable and pragmatic manner to such cases.

20. A client is not required by the California Rules of Professional Conduct to seek the advice of independent counsel before consenting to a concurrent representation of potentially conflicting interests pursuant to Rule 3-310. Such a requirement exists only where the Rules expressly require that the client be informed to seek independent advice. *See, e.g.,* Rule 3-300(B)(requiring a member to advise a client in writing that the client may seek the advice of an independent lawyer of the client's choice before entering into a business transaction with a client.) Nonetheless, allowing clients the opportunity to consult with independent counsel before consenting to a concurrent representation helps insure that the client's decision to consent is fully informed and reasonable.

21. As a practical matter, class action counsel will typically invest significant time and effort prosecuting a putative class action case. It will typically be later in the proceedings, only after the expenditure of significant time and resources, before the issue of the adequacy of representation is determined by the Court in connection with class certification. At such time, counsel for the defense may seek to challenge the adequacy of the representation and may assert either that the class representatives cannot consent to a concurrent representation under Rule 3-310 or adequate representation does not exist where a client has consented to a concurrent representation. Because we were aware of no legal authority directly on point on the question of the ability of a class representative to give consent on behalf of absent class members, prior to the decision in *Sharp v. Next Entertainment, Inc.*, we recommended that Maldonado & Markham disclose the existence and substance of the conflict waiver letter to the Court at the earliest opportunity and seek a ruling regarding the effectiveness of the consent. This approach preserves the resources of both the court and the parties, and substantially reduces the costs and risks inherent in allowing the matter to proceed until class certification without a resolution of this issue.

22. In conclusion, it is my opinion that: (1) the applicable rules of ethics permit a lawyer to concurrently represent two sets of plaintiffs against the same defendants in related

matters so long as the relevant circumstances and the actual and reasonably foreseeable adverse consequences to the clients are fully disclosed in writing and the clients' consent to the concurrent representation is obtained; (2) that the proposed class representatives can effectively provide their written consent to a concurrent legal representation on behalf of themselves and the proposed class; (3) that the potential conflicts associated with the concurrent representation in the Jensen Case and the Developers' Case do not appear to be unusually complex or unique, and are of the type that are often waived by parties seeking concurrent representation by the same legal counsel; (4) because the existence of potential conflicts and the conflict of interest waivers could be challenged by other parties in the case at a later date, after parties and counsel had invested substantial time litigating the case, Maldonado & Markham should disclose to the Court the concurrent representation issue and the conflict waivers obtained from the parties at the earliest possible opportunity so the Court can determine that the disclosures and consent are adequate and that the proposed class representatives can consent to the concurrent representation on behalf of the proposed class; and (5) although not required by law, it was appropriate that the clients in the Jensen Case and the Developers' Case were be encouraged to consult with independent legal counsel in regard to the decision to consent to the concurrent legal representation and the substance of the conflict waiver letters each was given.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of June, 2008, in South Pasadena, California.

_____
JAMES I. HAM

**EXHIBIT "A"**



**James I. Ham, Esq.**
**James Ham Legal**
555 West Fifth Street, 31st Floor
Los Angeles, California 90013-1018
Telephone: (213) 996-8401

**SUMMARY OF EXPERIENCE:**

A member of the California Bar since 1981, Mr. Ham has been a partner, shareholder and owner of large, medium and small law firms. He advises corporate and individual clients in a wide variety of litigation, regulatory and legal ethics matters. He began assisting law firm management and lawyers with ethical, management and legal professional responsibility compliance obligations early in his career, and legal ethics compliance, including state bar disciplinary defense, is a primary focus of his current legal practice. Mr. Ham has handled matters involving energy production, distribution and generation, securities and financial instruments, aviation, legal and accounting professional negligence, partnership disputes, antitrust, sports and entertainment, consumer, real estate, pharmaceutical, and industrial products and services. He has a LexisNexis Martindale-Hubble Peer Review rating of AV, and has been named by *Los Angeles Lawyer* Magazine as a "Super Lawyer" in 2006, 2007 and 2008.

**EMPLOYMENT HISTORY:**

January 1, 2007 – present:

James Ham Legal
Principal and Founder

Lecturer in Law
University Of Southern California, Gould School of Law
Spring Semester, 2008

Mr. Ham's legal practice focuses on the law of lawyering and legal ethics compliance, including state bar discipline defense and state bar admissions, relations among lawyers, and expert testimony regarding professional responsibility and ethics. Separately, Mr. Ham provides strategic counsel and advice in the area of natural resource development and renewable energy and climate change issues. He represents clients in negotiation, civil litigation, regulatory, and administrative proceedings. In the recent past, Mr. Ham's case

load has included representing a Native American Indian Tribe in negotiations regarding natural resource development and the disposition of an electric utility's SO2 emission allowances, defense of a client in Proposition 65 litigation relating to listed chemicals contained in natural crème products, the representation of a landowner in environmental investigation and remediation negotiations, the representation of law firms and lawyers with practice related legal ethics and management issues, and the representation and defense of lawyers in litigation and state bar inquiries.

Mr. Ham serves by appointment of the United States District Court for the Central District of California as a Panelist in the Attorney Settlement Officer Panel.  He was first appointed in 2005, and his current appointment term expires June 30, 2009.

He is "Of Counsel" to the law firm of Pansky & Markle, a law firm that advises the legal community on legal ethics compliance, State Bar defense and admissions, and legal malpractice issues.

October, 1996 – December 31, 2006:

Arnold & Porter LLP, Los Angeles Office
Partner

From 1996 to 2006, Mr. Ham was an equity partner in the litigation group of this Washington, D.C. based law firm of approximately 700 lawyers.  During his tenure at the firm, Arnold & Porter was known as a national diversity and pro bono leader, recognized often as among the nation's elite law firms in *American Lawyer's* annual "A List" of firms, *Fortune* Magazine's "100 Best Companies to Work For," and other authoritative sources, and had offices in Washington, D.C., Los Angeles, San Francisco, New York, Denver, Northern Virginia, London, and Brussels.

Mr. Ham's litigation and energy practice included representation of a variety of Fortune 50 clients, a major wind turbine manufacturer and wind farm developer, a national cellular service provider, the Government of Israel, a National Football League team, a world class consumer products company, and lawyers and law firms, among others.  He participated in pro bono representation of individuals and non-profit organizations, including Public Council of Los Angeles, served on Arnold & Porter's Ethics & Practice, Loss Prevention, and



Associate Relations (Los Angeles) Committees, and on various Information Technology sub-committees.

July, 1987 – September, 1996:

Quinn, Kully and Morrow, A Professional Law Corp., Los Angeles
Principal (July, 1988 - September, 1996)
Associate (July, 1987 - June, 1988)

Mr. Ham was one of the original attorneys joining former L.A. County Bar President John J. "Jack" Quinn and former State Bar of California and L.A. County Bar President, Hon. Margaret M. Morrow, in opening Quinn, Kully and Morrow, a law firm boutique focused on sophisticated commercial litigation.  Mr. Ham and the firm assisted a variety of corporate clients, legal and accounting professionals, and high profile individuals, including a key figure in the Savings & Loan industry crisis of the late 1980's and early 1990's.

October, 1981 – July, 1987:



Kadison, Pfaelzer, Woodard, Quinn and Rossi, Los Angeles
Associate

Mr. Ham began his litigation career at this well known Los Angeles law firm with a strong regional law practice, whose alumni became leaders of the Los Angeles and California bench and bar, as well as prominent State and Federal government officials.

### *EDUCATION:*

UCLA School of Law, J.D., June, 1981
    Executive Editor, *UCLA Law Review*, Volume 27
    Member, *UCLA Law Review*, Volume 27

Southwestern University School of Law, 1978-79
    First in Class of 392

University of Southern California, A.B., 1978
    Phi Kappa Phi
    Magna Cum Laude

Fresno State, 1974-76

### *PROFESSIONAL ASSOCIATIONS:*

**Member, State Bar of California** (1981 -- present).  State Bar No. 100849

Admitted to practice in the United States Supreme Court, in all California state courts; the United States Court of Appeal (Ninth Circuit); and United States District Courts for the Central, Southern and Northern Districts of California, and the District of Arizona.

State Bar of California Standing Committee on Professional Responsibility and Conduct.  (Appointed, Oct. 1987; Term Expired, Sept. 1990).

**Member, Los Angeles County Bar Association** (1981 -- present)

Professional Responsibility and Ethics Committee
    Member:  1985 – present
    Secretary:  1987-88
    Chairperson:  1988-89
    Member, ABA Ethics 2000 Sub-Committee (1998-2000)
    Secretary:  2007-08

Committee on Evaluation of Professional Standards
    Member: 1989-2000

**Member, American Bar Association** (1981 -- present)

Section of Litigation  (1991 – Present)

    Member, Ethics and Professionalism Committee
    Member, Professional Liability Litigation Committee

Section of Environment, Energy, and Resources (2004 – present)

    Member, Energy Facilities & Siting Committee (2005 – present)
        Public Service Vice Chair (2005 – 2007)

    Member, Native American Resources (2005 – Present)

       Section of Business Law (2006 – Present)

           Member, Business Practice Leadership Committee
           Member, Firm Counsel Project
           Member, Professional Responsibility Committee

       Law Practice Management Section (2007 – present)

           Practice Marketing, Practice Management and Practice Technology Core Groups

       The Center for Professional Responsibility (2007 – present)

**Member, Association of International Petroleum Negotiators** (2005 – Present).

       Delegate, AIPN Model Contracts Workshop, Artimino, Italy, July 2005 and July 2006.
       Member, Communications Committee (2005 – Present)
       Member, Advisor Committee (2005 – Present)



*<u>LEGAL PUBLICATIONS</u>:*

       "Perspectives from the United States on Legal Ethics Considerations Associated with the Outsourcing of Legal Services by Law Firms to Foreign Service Providers," Proceedings of the Association of Professional Responsibility Lawyers, Fifth International Meeting, Amsterdam, The Netherlands, May 6, 2008

       "Ethical Considerations for Lawyers Handling Air Quality and Climate Change Issues in California," (with Ellen A. Pansky, Esq.), in *Air Quality Regulation in California,* Law Seminars International, Los Angeles, April 15, 2008

       "The Duty to Self-Report Ethical Violations to the State Bar," <u>Bulletin</u>, San Louis Obispo Bar Association, March 2008

       "Ten Golden Rules for Successful (and Ethical) Law Practice," <u>Update</u>, Los Angeles County Bar Association, February 2008; <u>The Bar</u> <u>Bulletin</u>, Fresno County Bar Association, May 2008.

"Efficient Billing: Not in the Cards", <u>Los Angeles Daily Journal</u>, Forum, June 18, 2007

"Tribes and States Working Together -- What Has to Happen to Succeed," Law Seminars International, April, 2005

"New California Law on Gifts to Health Care Providers:  Interpretation Challenges and Liability Risks," Arnold & Porter Client Advisory, November, 2004

"Proposition 64 Modifies California's Unfair Competition Law," Arnold & Porter Client Advisory, November, 2004

Practical Legal Ethics in California:  Issues and Answers (with Kurt L. Schmalz), 2002, National Business Institute

"Golden Rules:  Ethics Decisions and Opinions of 1995 Address Ethical Minefields," *Los Angeles Lawyer Magazine*, July – August, 1996



"Significant Changes to Ethics Rules," Lawyer Referral and Information Service, May, 1989

"Flying High:  <u>Baker v. Burbank Glendale Pasadena Airport Authority</u> Redefines the Nuisance Doctrine," *Los Angeles Lawyer Magazine*, March 1986

<u>The Business Jury Trial</u>, Program Materials Editor, Association of Business Trial Lawyers Eleventh Annual Seminar, October 26 – 28, 1984

### *SELECTED SPEAKING ENGAGEMENTS*:

Speaker, *Proposed Ethics Rule Changes, Recent Developments in Conflicts, and 10 Tips for Operating a More Sound Law Office*, June 4, 2008, Pasadena Bar Association, ADR/Litigation Section, Pasadena, California

Speaker, *Off-Shoring Legal Services*, May 16, 2008, Association of Professional Responsibility Lawyers, Fifth International Meeting, Amsterdam, The Netherlands

Speaker, *Air Quality Regulation in California, Ethical Issues in the Administrative Law Setting,* April 15, 2008, Law Seminars International, Los Angeles, California

Speaker, *The Top 10 Don'ts to Avoid Trouble with the State Bar*, January 21, 2008, San Louis Obispo Bar Association, Litigation Section Meeting

Symposium Panelist, *Road to Renewables*, January 18, 2008, Australia Week 2008 – Los Angeles, Sponsored by Australian Government Department of Foreign Affairs and Trade

Speaker, *Common Sense Ethics – What do the Financial Industry, Lawyers and Cowboys Have in Common?* The Lawyer's Club of Los Angeles, December 5, 2007

Panelist, *Ethical Issues: The Do's and Don'ts of Criminal Law Practice: Perspectives from the Bench and the Bar*, Loyola Law School, Criminal Inns of Court, November 7, 2007



Panelist, *New Developments in Class Action Litigation, Including New Cases in 2007,* The Quisenberry Law Firm's Class Action Seminar, September 27, 2007, Irvine, California

Panelist, *Strategies for Managing Civil, Criminal and Ethical Risks in the Large and Medium Size Law Firm*, Los Angeles County Bar Association, February 15, 2007

Panelist, *Energy, Environment & Air Quality Policy Forum* Australian Government Department of Foreign Affairs and Trade and UCLA Institute of the Environment, January 12, 2007

Panelist, *Tribal Energy - Southwest*, Law Seminars International, April 7-8, 2005

*Ethics 2005 -- Keeping Current in a World of Change*, Los Angeles County Bar Association, December 10, 2005

Panelist, *Practical Legal Ethics in California: Issues and Answers*, National Business Institute, October 9, 2003, December 9, 2002 & July 12, 2002

*Managing Conflicts In and Out of Court,* Los Angeles County Bar Association, 1998, 1999 & 2000