William Markham, State Bar No. 132970
MALDONADO & MARKHAM, LLP
402 West Broadway, 24th Floor
San Diego, CA 92101
Tel:       (619) 221-4400
Fax:      (619) 224-3974
E-mail:   wm@maldonadomarkham.com

William A. Kershaw, State Bar No. 57486
Lyle Cook, State Bar No. 148914
KERSHAW, CUTTER & RATINOFF, LLP
401 Watt Avenue, Sacramento California 95864
Sacramento, California 95814-2719
Tel:       (916) 448-9800
Fax:      (916) 669-4499
E-mail:   wkershaw@kcrlegal.com

Attorneys for Plaintiffs, COLLINA DAL LAGO, L.P. and BERNAU DEVELOPMENT CORPORATION.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LA COLLINA DAL LAGO, L.P.; BERNAU DEVELOPMENT CORPORATION; and all similarly situated legal persons,<br><br>        Plaintiffs,<br><br>    Vs.<br><br>PACIFIC BELL TELEPHONE COMPANY; NEVADA BELL TELEPHONE COMPANY; AT&T SERVICES, INC.; and OLDCASTLE PRECAST, INC.,<br><br>        Defendants. | Case No. 08 CV 02451 SI<br><br>DECLARATION OF WILLIAM MARKHAM MADE IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF THEIR CONFLICT WAIVER<br><br><br>Date:       June 27, 2008<br>Time:      9:00 a.m.<br>Place:      Courtroom 10, 19th Floor<br><br>Courtroom 10, 19th Floor<br><br>The Hon. Susan Illston<br><br>Complaint Filed: May 13, 2008 |

DECLARATION OF WILLIAM MARKHAM MADE IN SUPPORT
OF PLAINTIFFS' MOTION FOR APPROVAL OF THEIR CONFLICT WAIVER

I, William Markham, now make the following declaration.

1. I am an attorney-at-law licenced to practice in California, Washington, D.C., and various federal courts, including the Northern District of California. In the present case, I represent Plaintiffs, La Collina Dal Lago, L.P., and Bernau Development Corporation. I have personal knowledge of each of the below-stated matters. If I were asked to testify to these matters, I could and would do so.

2. **Summary of Qualifications and Professional Experience.** I received my law degree from Harvard Law School in 1987 (J.D., 1987). While studying there, I served as an editor and then as an associate editor of the *Harvard International Law Journal*. During the summer of 1986 I clerked for Ogilvy, Renault in Montreal, Quebec, where I worked on issues that arose under Canada's competition law. From 1988 to 1990, I was employed as a litigation associate in the San Francisco office of Coudert Brothers, where I worked exclusively on antitrust cases.

3. In 1990, I established my own practice. Since 2005, I have been a partner in Maldonado & Markham, LLP ("M&M"). My practice is devoted almost entirely to the litigation of antitrust matters, other commercial disputes, and real estate disputes. I have worked on various substantial antitrust matters, representing clients in several major litigations and advising others about antitrust law and policy. I have also represented "subjects", "targets" and "cooperative parties" in antitrust investigations undertaken by the Antitrust Division of the United States Department of Justice.

4. **The Jensen Case.** In January, 2005 I was engaged to provide antitrust consultation and possible representation to Jensen Enterprises, Inc. ("Jensen"). On January 12, 2006, I filed the complaint in the lawsuit entitled *Jensen Enterprises, Inc. v. Oldcastle Precast, Inc. et al.*, Case No. C 06-0247 SI (JCS) (the "Jensen Case"). I remain the attorney of record for Jensen in the Jensen Case. From my work in this matter, beginning in January, 2005, I have become deeply versed in the facts and law that underlie the case.

5. In the Jensen Case, my staff and I have handled every aspect of the litigation on behalf of Jensen. We have investigated and analyzed Jensen' claims and Defendants' defenses and

statements; prepared and revised the pleadings; opposed Defendants' motions to dismiss the complaint and motions for summary judgment; made and opposed other motions; deposed the principal witnesses for Oldcastle and AT&T, including fifteen witnesses that AT&T produced under Rule 30 (b) (6) to testify about its "reimbursement" practices (by which it pays developers for AT&T Vaults, other materials, and trenching); defended all the depositions taken by Defendants; deposed two non-party contractors; deposed Defendants' respective experts on market definition; defended Jensen's antitrust expert, Professor Robert Hall, whom Defendants have deposed twice; propounded fourteen depositions on written questions to fourteen non-parties (namely, other precasting firms); reviewed thousands and thousands of documents produced by the parties; conducted inspections of AT&T's district and regional offices; reviewed summaries of sales invoices produced by Oldcastle and Jensen and reviewed many of the sales invoices; reviewed and prepared sweeping discovery requests and responses; corresponded constantly and at great length with Defendants' attorneys; reviewed the deposition transcripts; and performed an array of related tasks.

    6.    By performing this work, my staff and I have become very familiar with the facts, evidence, contentions, and other such matters that are central to the Jensen Case.

    7.    **Proficiency in the Present Case.** From our work in the Jensen Case, we have learned how and to what extent AT&T reimburses property developers – not only for AT&T Vaults, but also for conduit, trenching, and polymer vaults. This information is directly relevant to the present case, in which Plaintiffs allege the following: Defendants and perhaps as many as three other companies have committed systematic legal wrongs against affected property developers, obliging them to install AT&T's infrastructure partly at their own expense, even though the governing law requires AT&T to bear this expense in full or to provide reasonable reimbursement to the developers for this expense.

    8.    The present case raises many issues of fact and law that have no bearing on the Jensen Case. Among other things, the present case concerns AT&T's under-reimbursement for conduit, trenching, and polymer vaults. The present case is a proposed class action. It raises allegations that the trench agreements used by AT&T are illegal contracts, and that AT&T's reimbursement practices

DECLARATION OF WILLIAM MARKHAM MADE IN SUPPORT
OF PLAINTIFFS' MOTION FOR APPROVAL OF THEIR CONFLICT WAIVER

3

constitute unfair business practices. Jensen, in contrast, is a regular litigation that principally concerns the forced purchase-resale of AT&T Vaults.

9. Even so, both cases concern Defendants' use of forced purchase-resales of AT&T Vaults. Both require a thorough inquiry into AT&T's business practices when reimbursing developers in California and Nevada for materials and trenching.

10. I respectfully submit that my firm's thorough understanding of the Jensen Case has greatly facilitated our work in the present case, allowing us to recognize, describe, and assert Plaintiffs' claims all the more readily and competently.

11. **Concurrent Representation: Expert Advice Given.** Before I accepted the engagement to represent Plaintiffs in the present case, I conferred with two specialists in professional ethics and attorney conduct, Ellen Pansky, Esq. and James Ham, Esq. These two specialists reached the following conclusions:

(1) The applicable rules of ethics and professional conduct permit a lawyer to undertake concurrent representation of two sets of plaintiffs against the same defendants in related matters, so long as (a) the relevant circumstances and possible adverse consequences are disclosed in writing to the clients so far as possible; (b) the clients review these disclosures with their own independent attorneys; and (c) the clients then give written consent to the concurrent representation.

(2) Under California law, which governs standards of professional responsibility in this Court, the proposed class representatives can give written consent to the concurrent representation on their own behalf and also on behalf of the proposed class.

(3) The potential conflicts associated with the proposed concurrent representation do not appear to be unusually complex or unique. Such potential conflicts are often waived by parties seeking concurrent representation by the same legal counsel.

(4) My clients' waiver of potential conflicts and authorization of the concurrent representation might be challenged by Defendants. This challenge might be made long after my firm and I had invested substantial time litigating the case. My firm therefore raise the issue itself at the earliest opportunity, asking the Court to find that (1) the waiver was properly made in accordance

DECLARATION OF WILLIAM MARKHAM MADE IN SUPPORT
OF PLAINTIFFS' MOTION FOR APPROVAL OF THEIR CONFLICT WAIVER

4

with the California Rules of Professional Conduct, and (2) the waiver was properly given by Plaintiffs on behalf of the proposed class.

12. **Concurrent Representation: Obtaining Informed Written Consent**. In reliance on these conclusions, I took the following steps.

(1) I informed Plaintiffs and Jensen of the relevant circumstances and possible adverse consequences of the proposed concurrent representation, doing so in accordance with Rule 3-310 (A) and (C) of the California Rules of Professional Conduct. I did so by sending to Plaintiffs and Jensen a an explanatory letter (the "Conflict Waiver Letter") along with a proposed waiver of conflict of interest (the "Conflict Waiver"), both of which I prepared with the expert assistance of James Ham, Esq. I am prepared on demand to present the Conflict Waiver Letter and Conflict Waiver *in camera,* so that the Court can review these matters further if it wishes to do so.

13. I sent the Conflict Waiver Letter and Conflict Waiver to Jensen and Plaintiffs on April 22, 2008. When doing so, I specifically advised Plaintiffs and Jensen to confer with their own independent attorneys about the Conflict Waiver Letter and Conflict Waiver.

14. Jensen's in-house counsel, Tyrus Cobb, Esq., reviewed and approved of Conflict Waiver Letter and Conflict Waiver. Jensen then signed the Conflict Waiver on May 7, 2008.

15. Plaintiffs showed the Conflict Waiver Letter and Conflict Waiver to their regular transactional attorney, Jeff Jones, Esq. of McDonough Holland & Allen. Attorney Jones raised certain concerns, which attorney I answered to Plaintiffs' satisfaction. Plaintiffs then signed the Conflict Waiver on May 8, 2008.

16. In this manner, Plaintiffs and Jensen have had the potential conflicts of interest and all reasonably foreseeable adverse consequences explained to them. Both have then been advised about these matters by their own independent attorneys. Having been so informed and advised, both have agreed to the Conflict Waiver, which I now submit to this Court for its approval.

17. **No Actual Conflicts**. Having first conferred with the above ethics advisors, and having considered the matter at length, it is my professional opinion that there exists no actual conflict between Plaintiffs/the proposed class and Jensen. On the contrary, the claims of each directly

reinforces the claims of the other. Each has been harmed by Defendants, and each has claims against the Defendants that arise in part from the same conduct. (Even so, the measure of damages is completely different in each case.)

18. **Full Disclosure and Waiver of Potential Conflicts**. As for potential conflicts, I have disclosed to Plaintiffs and Jensen all the relevant circumstances as well as the actual and reasonably foreseeable adverse consequences of the concurrent representation, sending the Conflict Waiver Letter and Conflict Waiver to them, and urging them to confer with independent legal counsel about these issues. Each has waived the potential conflicts and approved the concurrent legal representation by M&M firm after carefully considering the disclosures and after conferring with independent legal counsel about the advisability of consenting to the concurrent representation.

19. **Discovery Requests to Jensen in the Developers' Case**. One of the mechanisms already in place and established by the parties to resolve any potential conflict issue relates to the discovery of evidence. Defendants in the present case will likely request evidence from Jensen. Plaintiffs and Jensen have agreed to the following arrangement to address such a request: If any such request is made, M&M will not participate in any negotiations regarding the request. Instead, the request will be addressed by KCR for Plaintiffs and by Jensen's in-house attorney for Jensen. This agreement is set forth in the Conflict Waiver Letter. Plaintiffs and Jensen, whose claims support one another, are confident that they can readily reach agreement as to how to address any such request. Moreover, Plaintiffs and Jensen have presented a companion motion to this Court, asking for a coordination of both cases, and specifically requesting that evidence made available in the Jensen Case be disclosed to the parties in the Developers' Case, so long as it remains subject to identical protective classifications. This would resolve the matter definitively, as Defendants in the Jensen Case have already obtained from Jensen everything that could conceivably bear upon any of the claims against them in either case.

20. **If the Conflict Waiver Is Disapproved**. If now or later M&M is not permitted perform the concurrent representation, Plaintiffs and Jensen have agreed that M&M may withdraw as counsel for the Plaintiffs and continue to represent Jensen in Jensen's Case. This matter is disclosed

DECLARATION OF WILLIAM MARKHAM MADE IN SUPPORT
OF PLAINTIFFS' MOTION FOR APPROVAL OF THEIR CONFLICT WAIVER

in the Conflict Waiver Letter. So as to spare Plaintiffs the burden of engaging replacement counsel after M&M has devoted substantial time and effort to the litigation of the Developers' Case, M&M requests the Court's early ruling on this matter.

21. **Zealous Representation of Both Matters**. I respectfully submit to the Court that I am able to continue to provide zealous representation of Jensen in the Jensen Case and at the same time provide zealous representation of Plaintiffs in the present case. I respectfully submit that Plaintiffs and the proposed class will derive significant benefits if my firm and I are permitted to represent them in the present case: We have particular experience in litigating the Jensen Case that in my opinion will prove invaluable to the litigation of the proposed class' claims.

I declare under oath and subject to the penalty of perjury under the laws of California that the foregoing matters are true and correct to the best of my knowledge, information, and belief.

Executed at San Diego, California on June 6, 2008.

/s/
_____
William Markham

DECLARATION OF WILLIAM MARKHAM MADE IN SUPPORT
OF PLAINTIFFS' MOTION FOR APPROVAL OF THEIR CONFLICT WAIVER

7