1    **MALDONADO & MARKHAM, LLP**
William Markham (SBN 132970)
2    402 West Broadway, 24th Floor
San Diego, CA 92101
3    Telephone: (619) 221-4400
Facsimile: (619) 224-3974
4    E-mail: wm@maldonadomarkham.com

5    **KERSHAW, CUTTER & RATINOFF, LLP**
William A. Kershaw (SBN 57486)
6    Lyle Cook (SBN 148914)
401 Watt Avenue
7    Sacramento, CA 95814-2719
Telephone:  (916) 448-9800
8    Facsimile:  (916) 669-4499
E-mail: wkershaw@kcrlegal.com

9

Attorneys for Plaintiffs
10   COLLINA DAL LAGO, L.P. and BERNAU DEVELOPMENT
CORPORATION

11

12               UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                SAN FRANCISCO DIVISION

15

16

| | |
|---|---|
| COLLINA DAL LAGO, L.P. and BERNAUE DEVELOPMENT CORPORATION; and all similarly situated legal persons, | Case No. CV-08-2451 |
| | **EXPERT DECLARATION OF ELLEN A. PANSKY** |
| Plaintiffs | |
| v. | Date:       June 27, 2008 |
| | Time:       9:00 a.m. |
| PACIFIC BELL TELEPHONE COMPANY; NEVADA BELL TELEPHONE COMPANY; AT&T SERVICES, INC.; and OLDCASTLE PRECAST, INC., | Court:     Courtroom 10, 19th Fl. |
| | Judge:    Hon. Susan Illston |
| | Complaint filed:  May 13. 2008 |
| Defendants. | |

17–28 (line numbers)

## DECLARATION OF ELLEN A. PANSKY

I, Ellen A. Pansky declare as follows:

1.     I am an attorney at law duly licensed to practice before all courts in the State of California, and before the Central and Southern United States District Courts.  If called as a witness I could and would competently testify from personal knowledge as follows:  I have been retained by Maldonado & Markham, LLP (hereafter "M&M"), to provide legal ethics advice in connection with M&M's concurrent representation of plaintiffs in two separate, yet related, pending actions: in the action entitled *Collina Dal Lago v. Pacific Bell, et al.*, United States District Court Case No. CV-08-2451, and *Jensen Enterprises, Inc. v. Oldcastle Precast, Inc. et al.*, United States District Court Case No. C 06-0247SI (JCS).

## PROFESSIONAL QUALIFICATIONS

2.     My professional qualifications which are set forward at greater length in my curriculum vitae, a copy of which is appended hereto as Exhibit "A," include the following:

A.     From 1978 through 1983, I was employed as a prosecutor by the State Bar of California, during which time I handled thousands of investigations and trial-level prosecutions based on attorney misconduct.  During this time I also provided guidance to members of the bar seeking informal ethics advice from the State Bar's ethics hotline, and acted as a supervisor of other attorneys in the State Bar's Office of Trials;

B.     From 1983 through October 1985, I became an Assistant General Counsel for the State Bar of California, briefing and arguing cases before the California Supreme Court, serving as counsel for various subcommittees of the State Bar's Board of Governors, and representing the State Bar in outside litigation;

C.     Between 1985 and 1988, I was an associate in Clinnin, Siracuse & Belcher, an insurance defense litigation firm located in downtown Los Angeles;

D.     Since October 1988, I have defended numerous attorneys in malpractice and disciplinary matters, and have personally represented attorneys in both

disciplinary proceedings and civil disputes.  I have represented plaintiffs in legal malpractice actions.  A significant portion of my practice is devoted to providing legal ethics consultation and advice to California lawyers, and assisting lawyers to comply with their legal ethics duties and professional responsibilities.  Additionally, I have participated in many continuing legal education programs, including those sponsored by the Los Angeles County Bar Association, Consumer Attorneys Association of Los Angeles, Association of Southern California Defense Counsel, American Bar Association Center for Professional Responsibility, Association of Professional Responsibility Lawyers, and the State Bar of California, which covered legal ethics  issues including but not limited to conflicts of interest, fiduciary duties, fee and billing issues, First Amendment commercial free speech issues, duties of officers of the court, disqualification, the extent to which ethical walls may be constructed, and many other ethics issues;

E.      I have published numerous articles in the area of attorney ethics.  I am a member and past-president of the Association of Professional Responsibility Lawyers (APRL).  I have for many years served on the Los Angeles County Bar Association's Committee on Professional Responsibility and Ethics, of which I am a former chair;

F.      I have been designated and have been qualified as an expert witness in numerous civil actions in which attorney ethics, professional responsibility and standard of care have been at issue.

## I.      DOCUMENTS REVIEWED

3.      I have reviewed Plaintiffs' Motion for Approval of Their Waiver of Potential Conflicts of Interest; the Waiver of Potential Conflicts of Interest/ Concurrent Representation in Separate, Concurrent Matters Including Class Action Litigation;  and the Declaration of James Ham in support of Plaintiffs' Motion for Approval of Their Waiver of Potential Conflicts.

## II.      SCOPE OF ENGAGEMENT

4.      I was retained by William Markham of Maldonado & Markham, LLP.  Among other things, Mr. Markham sought my advice and guidance whether his law firm could

1   ethically serve as co-counsel for the plaintiff's in a proposed class action (the instant action)

2   while concurrently representing a separate plaintiff in a different lawsuit against the same

3   defendants (the *Jensen* action), where some claims of the plaintiffs in the instant case arose

4   out of the same course of conduct and operative facts as the claims in *Jensen*.  I was

5   informed that the plaintiff in *Jensen* is alleged to be an excluded, harmed competitor in an

6   antitrust lawsuit brought against Pacific Bell Telephone Company, Nevada Bell Telephone

7   Company, AT&T Services, Inc. and Oldcastle Precast, Inc., and that the proposed class

8   action case would assert antitrust claims against the same defendants on behalf of harmed

9   customers.  I am aware that the *Jensen* plaintiff and the proposed class members in this

10  action all assert similar claims, arising from participation in the same market, based on the

11  defendants' alleged illegal exclusion of competitors from competing for the business of

12  customers such as the proposed class members.  I agreed to advise M&M whether the firm

13  could ethically undertake the concurrent representation of the *Jensen* plaintiff and the

14  prospective class in the within case, against the same defendants.

### III.    APPLICABLE AUTHORITIES

16          5.      In reaching the opinions set forth in this declaration, in addition to applying

17  my experience, training, ongoing study of law and secondary legal authorities, I have

18  considered a number of authorities on topics relating to the matters at issue in the within

19  proceeding, including but not limited to the following:

20          1.      *Rule 3-310, California Rules of Professional Conduct*.  The California

21  Rules of Professional Conduct expressly contemplate, and do not prohibit, the concurrent

22  representation of multiple plaintiffs having claims against the same defendants and which

23  arise out of identical or similar facts, provided that the requirements of Rule 3-310 of the

24  Rules are satisfied.  Specifically, Rule 3-310 subparagraphs (A) and (C) require a lawyer to

25  obtain the clients' informed written consent following written disclosure of the relevant

26  circumstances and of the actual and reasonably foreseeable adverse consequences to the

27  client of a proposed concurrent representation.  I also am familiar with, and reviewed, the

28  ABA Model Rule governing representation of conflicting interests, Rule 1.7.

2.     I conducted research to determine whether any California case had addressed facts similar to those presented to me by M&M.  I did not find any California authorities which held that there is a per se prohibition against accepting representation of separate plaintiffs having similar claims against the same defendants.  Although there are potential conflicts which could occur in the representation of multiple plaintiffs against the same defendant, including but not limited to the possibility that a defendant may have insufficient financial resources to fully satisfy all of the recoveries obtained by multiple claimants, it is possible to provide concurrent representation to multiple parties, upon adequate disclosure and the provision of informed consent by all affected clients.  I considered cases such as *In Re "Agent Orange" Product Liability Litigation*, 800 F.2d 14 (1986) which concluded that the court may take appropriate steps to address conflicts pointed out by class counsel (citing with approval to *Pettway v. American Cast Iron Pipe Company*, 576 F. 2d 1157, 1165, 1176 (5th Cir. 1978), cert. denied 439 U.S. 1115 (1979).  I also considered a number of cases, including *7-Eleven Owners for Fair Franchising, et al. v. The Southland Corp., et al*, 85 Cal. App. 4th 1135; 102 Cal.Rptr. 777 (2000), in which conflicts arose during the course of a class action settlement, among class members and other plaintiffs against the defendants.  In *7-Eleven Owners*, the appellate court determined that the trial court had properly analyzed whether class counsel acted improperly, where one claimant was in conflict with the majority of the members of the class, and went on to approve the settlement.

3.     During the course of my consultation services to M&M, the decision was rendered in *Sharp v. Next Entertainment, Inc.*  (2008) Cal App. LEXIS 798, in which it was held that class representatives may provide conflict waivers on behalf of an entire prospective class, that named plaintiffs may waive potential conflicts of interest on behalf of a putative class before they have been appointed as class representatives and before class certification, and that the trial court will always provide oversight to ensure that class representatives provide informed written conflict waivers.

1

### IV.    OPINIONS REACHED

2       Based on my understanding of the facts in the within matter and in the *Jensen* action,

3   and based on my review of applicable authorities, it is my opinion that:

4       1.      So long as M&M obtained informed written consent from the plaintiff

5   in the *Jensen* action and the representative of the class in the within action, there is no ethical

6   prohibition precluding M&M from concurrently serving as counsel for multiple plaintiffs in

7   the separate actions brought against the same, or many of the same, defendants.

8       2.      I hold the opinion that class counsel is often required to, and ethically

9   may, represent a class as an entity, and that a dispute among individual class members does

10  not constitute a per se conflict of interest for class counsel.  Similarly, although it is possible

11  that a potential conflict could ripen into an actual conflict in the future (triggering the

12  obligation to make new disclosures, to conduct a new evaluation whether concurrent

13  representation of the multiple parties may continue, and to obtain supplementary written

14  conflict waivers), the fact that multiple clients may develop conflicts in the future, does not

15  constitute an automatic disqualification to providing concurrent representation to multiple

16  clients.

17

18       I declare under penalty of perjury under the laws of the State of California and of the

19  United States of America that the foregoing is true and correct and that this declaration was

20  executed this 6th day of June, 2008 at South Pasadena, California.

21

22                                      _Ellen A. Pansky_

23                                      Ellen A. Pansky

24

25

26

27

28

EXPERT DECLARATION OF ELLEN A. PANSKY
CASE NO. CV-08-2451

**EXHIBIT "A"**

# ELLEN A. PANSKY
# CURRICULUM VITAE

Ellen A. Pansky specializes in the defense of attorneys, bar applicants and other professionals in regulatory and licensure proceedings and represents both plaintiffs and defendants in civil actions. She consults with and advises lawyers in legal ethics and risk management. She frequently serves as an expert witness in legal malpractice proceedings.

Ms. Pansky is a member and past-president (1995-1996) of the Association of Professional Responsibility Lawyers, "APRL." She has long been active with the Los Angeles County Bar Association, currently serving as a member of its Board of Trustees, and for years has served on several of its committees including: Professional Responsibility and Ethics Committee (chair 1996-1997, and current member); Ethics 2000 Liaison Committee; and Judicial Appointments Committee. She is a member of the American Bar Association and serves as a member of Editorial Board of the ABA/BNA Lawyers' Manual on Professional Conduct (2004-2007), a member of Practice Management Section; ABA Women Rainmakers Committee and a member of the Central District of California, United States District Court's Standing Committee on Discipline (2008-2010). Ms. Pansky serves as a liaison member to the ABA Standing Committee on Ethics and Professional Responsibility, representing APRL (2006-2007). She is also a charter member of the ABA Center for Professional Responsibility. Additionally, she served as a member of the California State Bar's Pilot Program Interaction Advisory Committee, addressing the effect of the Lawyer Assistance program on the State Bar disciplinary system. She previously served by appointment of the presiding judge of the State Bar Court as a member of the Advisory Rules Revision Committee of the Executive Committee of the State Bar Court.

Ms. Pansky has been a member of the Professional Liability Subcommittee of the Association of Southern California Defense Counsel. She is a member of the Steering Committee of the Breakfast Club. Ms. Pansky is a prior chair of the State Bar of California Committee on Women in the Law (2000-2001); is a lifetime member and previously served on the Board of Governors of California Women Lawyers, (co-chair of Bias in the Law Committee and chair of its Judicial Evaluations Committee). Ms. Pansky is also a lifetime member of the Women Lawyers' Association of Los Angeles. She is past president (2002-2003) of the National Association of Women Lawyers.

As a California State Bar certified MCLE provider, Ms. Pansky is a frequent lecturer on legal ethics and professional responsibility, including programs based on elimination of bias in the law and conflicts of interest. She has been selected as one of the Inaugural Fellows of the National Institute for Teaching Ethics and Professionalism (NIFTEP), and she also was an invited participant in Harvard University's 2001 focus group on law firm ethics advisors. Ms. Pansky has published extensively in the area of legal ethics, including: as a contributing author (Conflicts of Interest Chapter) of California Civil Procedure Before Trial; CEB, a contributing editor to "Attorney Ethics," *California Practice Handbook*, (Matthew Bender 1993); and has authored a number of articles including: "California Ethical Rules Governing Restriction on Law Practice" *ABA/CPR Conference* June 2007, "Breaking Up Is Hard To

Do: Terminating the Attorney/Client Relationship," *County Bar Update*, January 2007, Vol. 27, No.1, "Lien Provisions in Contingent Fee Contracts: Are You Violating the California Rules of Professional Conduct?" - *Forum* April 2006, "Belated Fee Complaints: What to Do?" Los Angeles County Bar publication - *County Bar Update* January 2004, "Communication and Diligence," *Emory Law Journal*, August 2003, "Don't Fight Your Substitution Out of a Client's Matter" *County Bar Update*, January 2002, Vol. 22, No. 1, "Construction Project: Authorizing Ethical Walls in California" *County Bar Update*, April 2000, Vol. 20, No. 4, "Fair Share?" *Los Angeles Daily Journal* (California Law Business Supplement) October 2000; "Bonus Points," *Los Angeles Lawyer*, September 2000; "One Easy Way to Become the Target of a State Bar Complaint: Fail to Regularly Communicate with Clients," *Los Angeles Daily Journal*, August 1999; "Balance Client Trust Account to Avoid Bar Discipline," *Los Angeles Daily Journal*, June 1999; "When Representing Multiple Parties, Don't Waver on Waivers," *Los Angeles Daily Journal*, September 1999; "Conduct Becoming," *Los Angeles Lawyer*, September 1997; "Between an Ethical Rock and a Hard Place: Balancing Duties to the Organizational Client and Its Constituents," *South Texas Law Review*, October 1996; "Gender Bias in the Legal Profession," *Women Lawyers Journal*, April 1996; "Mitigation of Disciplinary Sanctions: Justice and Fairness Require Analysis of Each Individual Attorney," *The Professional Lawyer*, American Bar Association 21st Ethics Symposium, June 1995; "Barred for Life? Permanent Sanction for Ethics Abuses Won't Cure Profession's Ills," *Los Angeles Daily Journal*, May 1995; California Women Lawyers' Glass Ceiling Surveys Reports (1993-94 and 1995); "Client Trust Account Procedures: How to Ensure Proper Compliance," *Los Angeles Lawyer*, December 1992; and "An Attorney's Expanding Fiduciary Duties to Opposing Parties and Non-Clients," *State Bar General Practice Section Newsletter*, Fall 1992.

Between 1978 and 1983, Ms. Pansky served as a prosecutor in the Office of Trial Counsel for the State Bar of California. In that capacity, she handled approximately 100 formal disciplinary proceedings and thousands of investigations of California attorneys. A number of the prosecutions conducted by Ms. Pansky resulted in California Supreme Court opinions, including *Rimel v. State Bar* (1983) 34 Cal. 3d 128 and *Ballard v. State Bar* (1983) 35 Cal.3d 274. In 1983, Ms. Pansky became an Assistant General Counsel for the State Bar of California, involved primarily in briefing and arguing disciplinary cases before the California Supreme Court, and other courts. A partial list of those cases include: *Greene v. Zank* (1984) 158 Cal.App.3d 497; *Palomo v. State Bar* (1984) 36 Cal.3d 785; *Tarver v. State Bar* (1984) 37 Cal. 3d 122; *Leoni v. State Bar* (1985) 39 Cal.3d 609; *Ritter v. State Bar* (1985) 40 Cal.3d 595; and *Trousil v. State Bar* (1985) 38 Cal.3d 337.

Between 1985 and 1988, Ms. Pansky was associated with a downtown Los Angeles litigation firm, practicing primarily in the areas of insurance defense litigation and physician peer review proceedings.

In 1989, Ms. Pansky and her late husband, R. Gerald Markle, opened the law offices of Pansky & Markle, emphasizing professional liability defense and, to a limited extent,

prosecution of legal malpractice actions; State Bar disciplinary defense and admissions; ethics consultations; and expert testimony. .  Ms. Pansky has defended attorneys in numerous cases before both the California Supreme Court and the State Bar Court, as reflected in reported decisions, including *Lister v. State Bar* (1990) 51 Cal.3d 1117; *Sternlieb v. State Bar* (1990) 52 Cal.3d 317; *Lybbert v. State Bar* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 297; *In Re Paguirigan*  (2001) 25 Cal.4th 1, and *In Re Lesansky* (2001) 25 Cal.4th 11. Additionally, she has briefed and argued many legal malpractice cases before the California courts of appeal with favorable results.

Ms. Pansky was admitted to the California Bar in 1977. Ms. Pansky is also admitted to practice before the United States District Courts for the Northern, Central and Southern Districts of California, as well as the Ninth Circuit Court of Appeals.  She is a native Southern Californian, having graduated from Hawthorne High School in 1971 with honors. She graduated summa cum laude from the University of California at Los Angeles in 1974. She is a lifetime member of the UCLA Alumni Association. She received her J.D. degree from Loyola University School of Law in Los Angeles in 1977. Ms. Pansky twice has been awarded the Wiley W. Manuel Pro Bono Services Award. In 2006, Ms. Pansky served as a moot court judge in the National Civil Trial Competition sponsored by Loyola Law School. Martindale Hubbell has awarded Ms. Pansky an AV rating, and has listed the law offices of Pansky & Markle in its Bar Register of Preeminent Lawyers.