1   FOLGER LEVIN & KAHN LLP
    Michael A. Kahn (CSB No. 057432, mkahn@flk.com)
2   Beatrice B. Nguyen (CSB No. 172961, bnguyen@flk.com)
    Janine L. Scancarelli (CSB No. 197202, jscancarelli@flk.com)
3   Embarcadero Center West
    275 Battery Street, 23rd Floor
4   San Francisco, CA 94111
    Telephone: (415) 986-2800
5   Facsimile: (415) 986-2827

6

7   Attorneys for Defendant Oldcastle Precast, Inc.

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  LA COLLINA DAL LAGO, L.P;              Case No. C-08-2451 SI
    BERNAU DEVELOPMENT
13  CORPORATION; and all similarly situated   **DEFENDANT OLDCASTLE PRECAST,**
    legal persons,                             **INC.'S MOTION TO DISMISS**
14                                             **COMPLAINT OR, IN THE**
                     Plaintiffs,               **ALTERNATIVE, TO STRIKE CLASS**
15                                             **ALLEGATIONS**
         v.
16                                         Date: October 3, 2008
    PACIFIC BELL TELEPHONE              Time: 9:00 a.m.
17  COMPANY; NEVADA BELL                Judge: Hon. Susan Illston
    TELEPHONE COMPANY; AT&T            Courtroom: 10
18  SERVICES, INC.; and OLDCASTLE
    PRECAST, INC.,
19
                     Defendants.
20

21

22

23

24

25

26

27

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................................ 1

STATEMENT OF RELIEF SOUGHT ............................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I. INTRODUCTION ................................................................................................ 1

II. FACTS ALLEGED IN THE COMPLAINT ........................................................ 4

    A. La Collina and BDC Are Residential Developers that Do Business in Folsom .................................................................................................. 4

    B. Plaintiffs Did Not Purchase Any AT&T Vaults, Either from Oldcastle or Any Other Supplier ................................................................ 5

    C. Plaintiffs Allege that AT&T Systematically "Under-Reimburses" Developers for Trenching and Materials Purchased and Installed for AT&T's Benefit ................................................................................... 5

    D. Plaintiffs Allege that AT&T Engaged in Various "Ploys" to Achieve Its Purported Goal of Under-Reimbursing Developers ............... 6

    E. Plaintiffs Do Not Allege that Oldcastle Charged Supracompetitive Prices ........................................................................................................ 7

III. LEGAL STANDARD ........................................................................................... 7

IV. LEGAL ARGUMENT .......................................................................................... 8

    A. Each of Plaintiffs' Claims Against Oldcastle Should Be Dismissed Because Plaintiffs Lack Constitutional Standing to Bring Them .............. 8

        1. Plaintiffs Lack Article III Standing Because They Do Not Allege that They Sustained any Injury In Fact Attributable to Oldcastle ..................................................................................... 9

        2. Plaintiffs' Allegation that They Were Under-Reimbursed by AT&T Does Not Confer Article III Standing to Bring a Claim Against Oldcastle .................................................... 10

    B. Plaintiffs' First Cause of Action Against Oldcastle Should be Dismissed Because They Do Not State a Claim for Violations of California's Unfair Competition Law ..................................................... 12

        1. Plaintiffs do not have standing to bring a UCL claim against Oldcastle ....................................................................... 12

        2. Plaintiffs Are Not Entitled to the Remedies Available under the UCL ....................................................................................... 13

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-i-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3
            a.    Plaintiffs are not entitled to restitution under the
UCL ................................................................................ 13

4

            b.    Plaintiffs are not entitled to injunctive relief against
5                  Oldcastle because Oldcastle has not caused any harm
to Plaintiffs .................................................................... 14

6

C.    Plaintiffs' Third Cause of Action Should be Dismissed Because
7        Plaintiffs Cannot State a Claim for Unreasonable Restraint of Trade
in Violation of Section 1 of the Sherman Act ........................................... 15

8

      1.    Plaintiffs' Claim Under Section 1 Fails Because They Lack
9              Antitrust Standing Under the Federal Antitrust Laws................... 15

10            a.    Plaintiffs cannot establish that they have suffered an
antitrust injury that was caused by any wrongful act
11                 on Oldcastle's part ............................................................ 15

12            b.    Plaintiffs cannot bring a claim for damages under the
federal antitrust laws because they do not allege that
13                 they made direct purchases .............................................. 16

14      2.    Plaintiffs' Claim Under Section 1 of the Sherman Act Fails
Because Plaintiffs Do Not Allege that Oldcastle Made a
15             Conscious Commitment to an Illegal Scheme ............................. 17

16            a.    Plaintiffs' claim fails because the conspiracy they
allege makes no economic sense ....................................... 18

17

            b.    Plaintiffs cannot successfully state a claim for
18                 conspiracy based on a bare allegation without
supporting facts ............................................................... 19

19

            c.    Plaintiffs fail to allege that any agreement between
20                 the Defendants was related to any illegal restraint on
trade .............................................................................. 20

21

D.    Plaintiffs' Fourth Cause of Action Should Be Dismissed Because
22        Plaintiffs Have Not Stated a Cause of Action for Monopolization
Under Section 2 of the Sherman Act .......................................................... 20

23

E.    Plaintiffs' Fifth Cause of Action Should Be Dismissed Because
24        Plaintiffs Have Not Stated a Cause of Action for Conspiracy to
Monopolize Under Section 2 of the Sherman Act ..................................... 21

25

F.    Plaintiffs' Sixth Cause of Action Should Be Dismissed Because
26        Plaintiffs Have Not Stated a Cause of Action Pursuant to Section 3
of the Clayton Act .................................................................................... 22

27

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-ii-

1

**TABLE OF CONTENTS**
(continued)

2

Page

3    G.    Plaintiffs' Sixth [sic] Cause of Action Should be Dismissed
          Because Plaintiffs Have Not Stated a Cause of Action Pursuant to
4          Sections 16720 et seq. of the California Business and Professions
          Code ......................................................................................................... 22

5

      H.    Plaintiffs' Seventh Cause of Action Should be Dismissed Because
6          Plaintiffs Have Not Stated a Cause of Action Pursuant to the
          Nevada Unfair Trade Practices Act ........................................................... 23

7

      I.    The Court Should Grant Oldcastle's Motion to Dismiss Without
8          Leave to Amend Because Plaintiffs Cannot Cure the Deficiencies in
          the Complaint ............................................................................................ 23

9

      J.    The Court Should Strike All Class Allegations in the Complaint ........... 24

10

CONCLUSION ................................................................................................................. 25

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-iii-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

# TABLE OF AUTHORITIES

Page

## CASES

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*,
    436 F.3d 82 (2d Cir. 2006)................................................................................................ 7

*American Tobacco Co. v. United States*,
    328 U.S. 781 (1946) ........................................................................................................ 19

*Associated General Contractors, Inc. v. California State Council of Carpenters*,
    459 U.S. 519 (1983)......................................................................................................... 15

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) .............................................................................................. *passim*

*Bradstreet v. Wong*,
    161 Cal. App. 4th 1440 (2008) ....................................................................................... 14

*Brunswick Corp. v. Pueblo Bowl-O-Mat., Inc.*,
    429 U.S. 477 (1977) ................................................................................................... 15, 16

*Cahill v. Liberty Mutual  Ins. Co.*,
    80 F.3d 336 (9th Cir. 1996).............................................................................................. 7

*In re Canadian Import Antitrust Litigation*,
    470 F.3d 785 (8th Cir. 2006)........................................................................................... 16

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104 (1986)......................................................................................................... 16

*Cholla Ready Mix, Inc. v. Civish*,
    382 F.3d 969 (9th Cir. 2004)............................................................................................ 8

*Cook, Perkiss and Liehe, Inc. v. Northern California Collection Services Inc.*,
    911 F.2d 242 (9th Cir. 1990)........................................................................................... 24

*Daro v. Superior Court*,
    151 Cal. App. 4th 1079 (2007) .................................................................................. 13, 14

*East Texas Motor Freight System, Inc. v. Rodriguez*,
    431 U.S. 395 (1977) ........................................................................................................ 25

*Eichman v. Fotomat Corp.*,
    880 F.2d 149 (9th Cir. 1989)........................................................................................... 17

*Freeman v. San Diego Association of Realtors*,
    322 F.3d 1133 (9th Cir. 2003).......................................................................................... 21

*Gerlinger v. Amazon.com Inc.*,
    526 F.3d 1253 (9th Cir. 2008).......................................................................................... 9

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-iv-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Gest v. Bradbury,*
   443 F.3d 1177 (9th Cir. 2006)........................................................................ 10, 11

4

*Hall v. Time, Inc.,*
   158 Cal. App. 4th 847 (2008) ........................................................................ 12, 13

5

6

*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (9th Cir. 1992)............................................................................. 24

7

*Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.,*
   627 F.2d 919 (9th Cir. 1980)............................................................................. 21

8

9

*Illinois Brick Co. v. Illinois,*
   431 U.S. 720 (1977) ...................................................................................... 16, 17

10

*Impro Products Inc. v. Herrick,*
   715 F.2d 1267 (8th Cir. 1983).......................................................................... 19, 20

11

12

*International Distribution Centers v. Walsh Trucking Co.,*
   812 F.2d 786 (2nd Cir. 1987)............................................................................. 21

13

*Kamm v. California City Development Co.,*
   509 F.2d 205, 210 (9th Cir. 1975)..................................................................... 24

14

15

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal. 4th 1134 (2003) ................................................................................ 13, 14

16

*Kunert v. Mission Financial Services Corp.,*
   110 Cal. App. 4th 242 (2003) ............................................................................. 23

17

18

*Lee v. Am. National Insurance Co.,*
   260 F.3d 997 (9th Cir. 2000).............................................................................. 9

19

*Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.,*
   140 F.3d 1228 (9th Cir. 1998)............................................................................ 15

20

21

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ................................................................................ 9, 10, 15

22

*In re Milk Products Antitrust Litigation,*
   195 F. 3d 430 (8th Cir. 1999)............................................................................. 25

23

24

*Monsanto Co.  v. Spray-Rite, Inc.,*
   465 U.S. 752 (1984) ...................................................................................... 17, 19

25

*Nelsen v. King County,*
   895 F.2d 1248 (9th Cir. 1990)............................................................................ 8

26

27

*O.K. Sand & Gravel, Inc. v. Martin Marietta Technologies, Inc.,*
   36 F.3d 565 (7th Cir. 1994)................................................................................ 16

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-v-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3    *Paladin Associates, Inc. v. Montana Power Co.*,
        328 F.3d 1145 (9th Cir. 2003).................................................................................... 21
4
     *Pool Water Products v. Olin Corp.*,
5        258 F.3d 1024 (9th Cir. 2001).................................................................................... 16

6    *Reddy v. Litton Industries, Inc.*,
        912 F.2d 291 (9th Cir. 1990)............................................................................... 23, 24
7
     *Simon v. East Kentucky Welfare Rights Organization*,
8        426 U.S. 26 (1976)....................................................................................................... 24

9    *Syufy Enterprises v. American Multicinema, Inc.*,
        793 F.2d 990, 1000 (9th Cir. 1986)..................................................................... 20, 22
10
     *Toscano v. PGA*,
11       258 F.3d 978 (9th Cir. 2001)............................................................................... 19, 20

12   *Warth v. Seldin*,
        422 U.S. 490 (1975)...................................................................................................... 8
13
     *Whitmore v. Arkansas*,
14       495 U.S. 149 (1990)...................................................................................................... 7

15   *Williamson Oil Co., Inc. v. Philip Morris USA*,
        346 F.3d 1287 (11th Cir. 2003)............................................................................ 18-19
16

17    **FEDERAL STATUTES**

18   15 U.S.C. § 1 .................................................................................................... *passim*

19   15 U.S.C. § 2 .................................................................................................... 22, 23

20   15 U.S.C. § 14 ........................................................................................................ 23

21    **STATE STATUTES**

22   Cal. Bus. & Prof. Code § 16720 (California Cartwright Act)...................................... 23

23   Cal. Bus. & Prof. Code § 17200 (California Unfair Competition Law) ................... 5, 13

24   Cal. Bus. & Prof. Code § 17203 (California Unfair Competition Law) ...................... 15

25   Cal. Bus. & Prof. Code § 17204 (California Unfair Competition Law) ...................... 13

26   Nev. Rev. Stat. 598A.050 (Nevada Unfair Trade Practice Act) ................................. 24

27   Nev. Rev. Stat. 598A.060 (Nevada Unfair Trade Practice Act) ................................. 24

28

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

**FEDERAL RULES**

4

Federal Rule of Civil Procedure 12(b)(1) ................................................................. 2, 7

5

Federal Rule of Civil Procedure 23(a) ......................................................................... 24

6

Federal Rule of Civil Procedure 23(d)(1)(D) ............................................................... 24

7

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 2, 7, 18

8

**OTHER AUTHORITIES**

9

AREEDA & HOVENKAMP, ANTITRUST LAW (2003) ................................................. 21, 22

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1

**NOTICE OF MOTION**

2

     Defendant Oldcastle Precast, Inc. ("Oldcastle") hereby gives notice that on October 3,

3

2008, at 9:00 a.m., a hearing will be held in Courtroom 10 of this Court at 450 Golden Gate

4

Avenue in San Francisco, California, 94102, on Oldcastle's motion to dismiss the Complaint filed

5

by Plaintiffs La Collina dal Lago, L.P. ("La Collina") and Bernau Development Corporation

6

("BDC") (collectively, "Plaintiffs") in this action.  Alternatively, Oldcastle moves to strike

7

allegations in the Complaint on behalf of a purported class.  Oldcastle's motion will be based on

8

this notice of motion and memorandum of points and authorities, the Declaration of Janine L.

9

Scancarelli in Support of Motion to Dismiss ("Scancarelli Decl.") filed herewith, the Court's file

10

on this matter, and such other evidence and argument as may be presented at the hearing.

11

**STATEMENT OF RELIEF SOUGHT**

12

     Oldcastle seeks an order dismissing the Complaint against Oldcastle for lack of subject

13

matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or for failure to state a claim

14

upon which relief can be granted under Rule 12(b)(6).  If the Court does not dismiss the

15

Complaint, Oldcastle seeks an order striking all allegations made on behalf of a purported class.

16

**MEMORANDUM OF POINTS AND AUTHORITIES**

17

**I.     INTRODUCTION**

18

     The basis of this motion to dismiss is simply that Oldcastle is not a proper defendant.

19

Oldcastle manufactures precast concrete boxes, or vaults, including vaults that are used in the

20

infrastructure for telephone and other utilities.  Plaintiffs have neither purchased any products

21

from Oldcastle, nor any precast concrete telephone vaults at all.  Plaintiffs therefore state no claim

22

against Oldcastle, and have no standing even to attempt to state a claim.  Whether the Court

23

dismisses this action under Rule 12(b)(1) or 12(b)(6), the result should be the same – dismissal of

24

the action without leave to amend the Complaint.

25

     Plaintiffs' Complaint consists almost entirely of allegations about Defendants Pacific Bell

26

Telephone Company, Nevada Bell Telephone Company and AT&T Services, Inc. (collectively,

27

"AT&T").  Plaintiffs allege that AT&T systematically under-reimburses property developers who

28

extend AT&T's underground infrastructure into their developments.  Plaintiffs allege that, despite

-1-

1    being obligated by law to pay the developers for the costs they incur in providing such

2    installations, AT&T uses various "ploys" to force developers to bear a substantial portion of the

3    costs of trenching and materials.  Plaintiffs even characterize AT&T's under-reimbursement as

4    the "Essential Wrongdoing" in this case.  *See* Compl. ¶ 51.

5        Nevertheless, Plaintiffs name Oldcastle as a defendant in this case in connection with

6    alleged violations of California's Unfair Competition Law (First Cause of Action), the Sherman

7    Act (Third, Fourth and Fifth Causes of Action), the Clayton Act (Sixth Cause of Action),

8    California's Cartwright Act (Sixth [sic] Cause of Action), and the Nevada Unfair Practice Act

9    (Seventh Cause of Action).

10        Plaintiffs' only allegations about Oldcastle boil down to this:  First, Oldcastle entered into

11    an agreement with AT&T to supply "AT&T Vaults" (*i.e.*, precast concrete vaults used in AT&T's

12    infrastructure), pursuant to which it gave AT&T a list of prices at which AT&T would pay for

13    Vaults it purchased directly from Oldcastle.  *See* Compl. ¶¶ 102-04, 119.  Second, AT&T and

14    Oldcastle allegedly worked in concert to require developers to use AT&T Vaults made by

15    Oldcastle when the Vaults would eventually be owned by AT&T.  *Id.*

16        **Plaintiffs Bought No AT&T Vaults, Either from Oldcastle or any Other Supplier.**

17    Plaintiffs' allegations fail to state a claim for many reasons, foremost of which is that neither La

18    Collina nor BDC alleges that it actually <u>purchased</u> any AT&T Vaults from Oldcastle or any other

19    manufacturer.  And Plaintiffs' deposition testimony confirms that they have not purchased any

20    precast telephone vaults from any supplier.  Scancarelli Decl. Ex. A, pp. 53:2-10, 140:4-13,

21    144:18-147:12, 147:13-148:4; Ex. B.  Plaintiffs themselves allege that the "harmed victims" from

22    the so-called "AT&T-Oldcastle Arrangement" would be limited to "all developers who have been

23    required to provide AT&T Vaults in AT&T's rights-of-way in California during the subject

24    period, and who received insufficient reimbursement for the expenses from AT&T on the ground

25    that AT&T could have purchased the products in question directly from Oldcastle at the low

26    prices set forth in the AT&T-Oldcastle price list."  Compl. ¶ 130.  Thus, even under their very

27    own definition, Plaintiffs are not "harmed victims":  they were not required to provide AT&T

28    with AT&T Vaults purchased from Oldcastle or anyone else, nor did they receive insufficient

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-2-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1  reimbursement for such AT&T Vaults.  Where Plaintiffs did not purchase, and were not under-

2  reimbursed for, AT&T Vaults, they cannot bring a claim based on alleged under-reimbursement

3  of AT&T Vaults.

4  **Any Injury to Plaintiffs Was Caused by AT&T.**  Even if Plaintiffs alleged that they

5  purchased AT&T Vaults from Oldcastle (or any other supplier), their claims would still fail.  For

6  one thing, Plaintiffs cannot allege that they were injured by Oldcastle because their only possible

7  injury could be the alleged under-reimbursement by AT&T, and Plaintiffs admit that AT&T

8  determines its own reimbursement policies.  *See* Compl. ¶¶ 50, 103.  Plaintiffs do not even allege

9  that AT&T set its reimbursement rates at the prices in the Oldcastle price list, but rather that it

10  used the list as "an internal price ceiling," setting prices at "approximation[s]" of the list prices or

11  even lower than the list prices.  *Id.*  Oldcastle's alleged acts were therefore not a necessary or

12  sufficient cause of any under-reimbursement by AT&T.

13  **The Alleged Conspiracy Makes No Economic Sense.**  Plaintiffs ask this Court to find

14  that AT&T conspired with Oldcastle for the sole purpose of obtaining a low price list for AT&T

15  Vaults (which made up just a fraction of the overall costs of developer-provided installations) and

16  that AT&T gave Oldcastle a monopoly concession in exchange.  However, Plaintiffs do not

17  allege that AT&T then showed this list to anyone, but rather that it considered the list prices as an

18  internal price ceiling.  Moreover, Plaintiffs suggest that AT&T employed "numerous ploys" to

19  under-reimburse developers, most of which had nothing to do with the price list.  AT&T did not

20  need the price list to under-reimburse developers, nor did the price list cause AT&T to under-

21  reimburse developers.  Plaintiffs even allege that AT&T has independently determined that it

22  need only pay "some reimbursement" to meet its legal obligation to developers.  *Id.* at ¶ 50.  To

23  suggest that AT&T entered into an illegal conspiracy so that it could use the price list as some

24  sort of internal "justification" for its reimbursement practices defies logic.

25  **The Complaint fails to state any claim for relief for at least seven reasons:**

26  First, Plaintiffs lack standing under Article III of the Constitution to bring claims against

27  Oldcastle because Oldcastle has not caused them any injury in fact.  (All Causes of Action).

28  Second, Plaintiffs lack standing to bring a claim against Oldcastle under Section 17200 *et*

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-3-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1   *seq.* of the California Business and Professions Code (the "UCL") because they do not allege any

2   injury or loss of money caused by an unfair act by Oldcastle.  (First Cause of Action).

3          Third, Plaintiffs fail to state a claim under the UCL because they are not entitled to the

4   remedies of restitution and injunctive relief available under the statute.  (First Cause of Action).

5          Fourth, Plaintiffs lack antitrust standing to bring claims under federal or state antitrust

6   laws because they fail to allege that they sustained an antitrust injury as a result of any act by

7   Oldcastle – any alleged injury was caused by AT&T.  (Third through Seventh Causes of Action)

8          Fifth, Plaintiffs cannot pursue claims for damages under the federal antitrust laws because

9   they do not allege that they were direct purchasers of AT&T Vaults.  (Third through Sixth Causes

10  of Action).

11         Sixth, Plaintiffs do not state facts that could give rise to a reasonable inference of a

12  plausible conspiracy between Oldcastle and AT&T.  (Third, Fifth, Sixth, Sixth and Seventh

13  Causes of Action - Plaintiffs use the label "Sixth" on two Causes of Action).

14         Seventh, Plaintiffs lack standing to bring any claim about AT&T's reimbursement

15  practices in Nevada or parts of California other than Folsom, because they do not allege that they

16  do business in those places.  (Seventh Cause of Action, and remaining Causes of Action to the

17  extent they allege conduct outside Folsom).

18         Alternatively, if the Court does not dismiss the Complaint, it should strike all claims

19  Plaintiffs make on behalf of a purported class of developers because Plaintiffs are inadequate

20  class representatives.

21  **II.      FACTS ALLEGED IN THE COMPLAINT**

22         **A.      La Collina and BDC Are Residential Developers that Do Business in Folsom.**

23         Plaintiffs La Collina and BDC are residential property developers that do business

24  exclusively in California.  *See* Compl. ¶¶ 6-7.  Plaintiff La Collina alleges that it financed a

25  residential development on Natoma Street in Folsom, California, that was completed between

26  2003 and December 2004.  *Id.* ¶ 73.  Plaintiff BDC alleges that it has financed a residential

27  property development currently under construction on the same street.  *Id.* ¶¶ 76-77.

28         Plaintiffs do not allege that they do business in Nevada, or anywhere other than Folsom.

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-4-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1  Plaintiffs' deposition testimony confirms that they have done business only in Folsom.  *See*

2  Scancarelli Decl. Ex. A, pp. 17:19-21, 123:18-124:12.

3      Plaintiffs allege that AT&T's legal obligations to reimburse for trenching and materials

4  costs differ between residential and commercial subdivisions.  Compl. ¶ 3.  Plaintiffs do not

5  allege that they have ever developed commercial properties.  *See* Scancarelli Decl. Ex. A, pp.

6  17:19-21, 123:18-124:12.

7      **B.    Plaintiffs Did Not Purchase <u>Any</u> AT&T Vaults, Either from Oldcastle or Any
        Other Supplier.**

8

9      Plaintiffs do not allege that they purchased a single AT&T Vault from Oldcastle, either

10  directly or indirectly.  In fact, Plaintiffs do not allege that they have purchased <u>any</u> AT&T Vaults

11  from <u>any</u> vendor.  When Plaintiffs purchase materials for AT&T installations, they invariably do

12  so indirectly, by repurchasing them from specialty contractors hired to do trenching work.  *Id.* ¶¶

13  117-18.  However, Plaintiffs do not allege that they have purchased even one AT&T Vault, even

14  indirectly through a contractor.  Similarly, Plaintiffs do not allege that they have provided any

15  AT&T Vaults to AT&T, or that they were under-reimbursed by AT&T for purchasing such

16  Vaults.  Nor do they allege that they were subjected to the "AT&T-Oldcastle Arrangement,"

17  described below in Section II.D.

18      Plaintiffs' deposition testimony confirms that they have not purchased any precast

19  concrete telephone vaults.  *See* Scancarelli Decl. Ex. A, pp. 140:4-13, 147:13-148:4 (no AT&T

20  precast concrete vault installed in or specified for BDC's Morning Walk development), 17:22-25,

21  53:2-10, 144:18-147:12 (no AT&T precast concrete vaults in La Collina development); Ex. B.

22      **C.    Plaintiffs Allege that AT&T Systematically "Under-Reimburses" Developers
        for Trenching and Materials Purchased and Installed for AT&T's Benefit.**

23

24      Plaintiffs allege that AT&T must reimburse property developers for the cost of extending

25  AT&T's underground telephone infrastructure into their developments pursuant to tariffs filed

26  with the Public Utilities Commissions in California and Nevada.  *See* Compl. ¶¶ 3-4, 38.

27  Plaintiffs further allege that AT&T systematically refuses to fully reimburse developers for the

28  costs associated with the installations, including trenching costs and costs of conduit, concrete

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-5-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1   manholes and boxes, polymer boxes and other materials.  *Id.* ¶¶ 3-4.

2       **D.     Plaintiffs Allege that AT&T Engaged in Various "Ploys" to Achieve Its
            Purported Goal of Under-Reimbursing Developers.**

3

4       Plaintiffs allege that AT&T – not Oldcastle – uses "ploys" to systematically under-

5   reimburse developers for trenching and material costs.  *Id.* ¶ 4.  Among these alleged ploys are a

6   price matrix developed in 2002 for use in San Diego and Imperial Counties, the use of "statewide

7   averages" and other "improper formulae" to calculate reimbursement, coercion of property

8   developers, "forced purchase-resales," and the use of "illegal" trench agreements.  *Id.* ¶¶ 52-68.

9   Plaintiffs also allege that AT&T fails to itemize the reimbursement amounts, and refuses to state

10  the cost of materials separately from the cost of installation.  *Id.* ¶¶ 69-70.

11      The only alleged ploy that Plaintiffs suggest has anything to do with Oldcastle is a

12  purported "forced purchase-resale" arrangement described in the Complaint as the "AT&T-

13  Oldcastle Arrangement."  Plaintiffs allege that in November 2002, Oldcastle and AT&T entered

14  into an agreement for the sale of precast concrete vaults and related accessories used in AT&T's

15  underground infrastructure in California, pursuant to which Oldcastle provided AT&T a list of

16  "low" prices at which AT&T would pay for vaults it bought directly from Oldcastle.  *Id.* ¶¶ 103-

17  4, 120.  In exchange, AT&T allegedly assured Oldcastle that where vaults were supplied by

18  property developers, AT&T would "gradually require" the developers to purchase those vaults

19  from Oldcastle.  *Id.* ¶ 103.  Through this Arrangement, Plaintiffs allege, Oldcastle obtained the

20  ability to sell vaults to developers at "uncontrolled" prices.  *Id.*  Plaintiffs allege that Defendants

21  extended the "Agreement" to Nevada in 2006.  *Id.* ¶ 120.  Significantly, Plaintiffs do <u>not</u> allege

22  that Oldcastle ever charged above-market or supracompetitive prices for AT&T Vaults.

23      AT&T allegedly used the price list it obtained from Oldcastle "to justify systematic under-

24  reimbursement to Developers."  *Id.* ¶ 103.  However, the only manner in which AT&T allegedly

25  used the Oldcastle price list to "justify" its reimbursement was as an "internal AT&T price

26  ceiling."  *Id.*  Plaintiffs acknowledge that AT&T, not Oldcastle, set AT&T's reimbursement

27  practices and rates.  *See id.* ¶ 50 (alleging that AT&T deems its legal responsibility fulfilled "so

28  long as it pays some reimbursement to property developers").  Plaintiffs do not allege that AT&T

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-6-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1   ever showed its contract with Oldcastle to any developer to justify its reimbursement practices.

2   In fact, Plaintiffs allege that AT&T actually lumped material and installation costs together in

3   their trenching agreements with developers so that the developers could not determine the amount

4   being reimbursed for materials.  *Id.* ¶¶ 69-70.  And Plaintiffs admit that AT&T did not reimburse

5   developers at the contract prices.  Rather, AT&T allegedly paid them an "approximation" of

6   contract prices – or less.  *See id.* ¶ 103.

7        Plaintiffs do not allege that "forced purchase-resales" were limited to Oldcastle products

8   or AT&T Vaults.  Plaintiffs allege that the "forced purchase-resales" involved multiple suppliers

9   of products ranging from concrete manholes and boxes to conduit and polymer boxes.  Plaintiffs

10  also allege that that the forced purchase-resales extend to periods and areas where Oldcastle was

11  not the preferred supplier of AT&T Vaults, including Nevada before 2006.  *Id.* ¶¶ 4, 20, 120.

12       **E.    Plaintiffs Do Not Allege that Oldcastle Charged Supracompetitive Prices.**

13       Plaintiffs do not allege that Oldcastle has sold AT&T Vaults at supracompetitive prices.

14  Plaintiffs claim only that the prices to developers' contractors were higher than those charged

15  directly to AT&T – which Plaintiffs themselves allege were low.  *See id.* ¶¶ 102, 146.  Nor do

16  Plaintiffs allege that the vaults Oldcastle sold were defective.

17  **III.    LEGAL STANDARD**

18       Oldcastle seeks dismissal of Plaintiffs' Complaint under Rule 12(b)(1) on the ground that

19  Plaintiffs lack standing under Article III of the United States Constitution.  *See Alliance for Envtl.*

20  *Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 88 n.6 (2d Cir. 2006).  The Court cannot

21  reach the merits of the case unless Plaintiffs establish standing to sue.  *Whitmore v. Arkansas*, 495

22  U.S. 149, 154 (1990).  The Court may consider matters outside the pleadings in deciding a motion

23  to dismiss under Rule 12(b)(1); such consideration does not convert the motion into one for

24  summary judgment.  *Alliance for Envtl. Renewal,* 436 F.3d at 88 n.8.

25       In the alternative, Oldcastle seeks dismissal under Rule 12(b)(6).  In deciding a Rule

26  12(b)(6) motion, the Court must accept all well-pleaded factual allegations as true, and determine

27  whether a plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v.*

28  *Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  The Court need not accept as true

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-7-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1   conclusory allegations, unreasonable inferences, unwarranted deductions of fact, or legal

2   conclusions cast as factual allegations, if those conclusions cannot reasonably be drawn from the

3   facts alleged.  *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

4        "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

5   more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

6   will not do."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

7   When a complaint alleges an antitrust conspiracy, a motion to dismiss should be granted unless a

8   plaintiff alleges facts that make an inference of a conspiracy plausible.  *Id.* at 1964-65.  A

9   complaint fails to plead an illegal conspiracy claim if the allegations support a plausible, non-

10  conspiratorial explanation for the alleged agreement.  *Id.* at 1972-73.

11  **IV.    LEGAL ARGUMENT**

12          **A.    Each of Plaintiffs' Claims Against Oldcastle Should Be Dismissed Because
            Plaintiffs Lack Constitutional Standing to Bring Them.**
13

14       In order to bring <u>any</u> claim against Oldcastle in this Court, Plaintiffs must have standing

15  under Article III of the Constitution.  In the context of class actions, the Ninth Circuit has stated:

16              Standing "is a jurisdictional element that must be satisfied prior to
                class certification.  A litigant must be a member of the class he or
17              she seeks to represent at the time the class action is certified by the
                district court."  This, in turn, requires the litigant to "establish[ ] the
18              requisite of a case or controversy with the defendants."  If the
                litigant fails to establish standing, he may not "seek relief on behalf
19              of himself or any other member of the class."

20  *Nelsen v. King County*, 895 F.2d 1248, 1249-50 (9th Cir. 1990) (internal citations omitted)

21  (affirming trial court's order dismissing purported class claim for injunctive relief due to named

22  plaintiffs' lack of standing).  On a motion to dismiss, the Court should dismiss a complaint where

23  a plaintiff fails to affirmatively assert facts demonstrating his or her standing.  *See Warth v.*

24  *Seldin,* 422 U.S. 490, 518 (1975) (holding that complainant must clearly allege facts

25  demonstrating that he is a proper party to invoke judicial resolution).

26       At a <u>minimum</u>, to demonstrate Article III standing, a party invoking the Court's

27  jurisdiction must establish three elements: (1) the party has suffered an injury in fact; (2) there is a

28  causal connection between the injury and the complained of conduct (*i.e.*, "the injury has to be

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-8-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1    fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of]

2    independent action of some third party not before the court"); and (3) it is likely the injury will be

3    "redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)

4    (citations omitted).  Here, Plaintiffs lack standing to bring any claim against Oldcastle because

5    they do not allege that they have suffered any injury in fact traceable to any act by Oldcastle.

6           **1.     Plaintiffs Lack Article III Standing Because They Do Not Allege that**
               **They Sustained any Injury In Fact Attributable to Oldcastle.**
7

8           Plaintiffs cannot demonstrate that they have standing to bring a lawsuit against Oldcastle

9    because they fail to allege any injury in fact traceable to acts by Oldcastle.  *See id.* at 560-61.  The

10   only harm alleged by Plaintiffs that could possibly be construed as an injury in fact was alleged

11   under-reimbursement by AT&T.[1]  However, Plaintiffs do <u>not</u> allege that they themselves were

12   under-reimbursed for any AT&T Vault.  Moreover, in recent deposition testimony, Plaintiffs

13   admit that they have not purchased any AT&T Vault from any manufacturer.  *See* Scancarelli

14   Decl. Ex. A, pp. 53:2-10, 140:4-13, 144:18-147:12, 147:13-148:4; Ex. B.

15          Significantly, the <u>only</u> allegations in the Complaint regarding Oldcastle are (1) that it

16   provided AT&T with a list of prices <u>for AT&T Vaults</u> and (2) that it obtained a monopoly

17   concession <u>for the sale of AT&T Vaults</u>.  Yet neither La Collina nor BDC purchased any precast

18   concrete AT&T Vaults, either from Oldcastle or from any other vendor.  Nor do Plaintiffs allege

19   that they supplied AT&T Vaults to AT&T, or that they were under-reimbursed for them.  Because

20   Plaintiffs have not purchased AT&T Vaults, they have no standing to bring a claim based on the

21   sale and reimbursement of AT&T Vaults.  *See Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001 (9th

22   Cir. 2000) (holding that plaintiff who did not buy an insurance policy from insurer did not suffer

23   any injury due to insurer's allegedly unfair marketing practices; plaintiff therefore lacked

24   _____

25          [1] Plaintiffs do not, for example, allege that they paid supracompetitive prices to Oldcastle,
     or that Oldcastle supplied damaged or unsatisfactory vaults.  Accordingly, Plaintiffs have not
26   alleged that they sustained an "injury in fact" as required to establish standing under Article III.
     *See Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253 (9th Cir. 2008) (holding that plaintiff lacked
27   Article III standing to pursue a claim for price fixing against booksellers where he did not
     demonstrate that he paid an increased price for books following the purported illegal agreement,
28   or that service or choice was reduced).

1   standing under Article III to bring suit against insurer in federal court).

2       Because plaintiffs have sustained no injury in fact, their claims should be dismissed on the

3   ground that they lack standing to bring any claim against Oldcastle.

4           **2.      Plaintiffs' Allegation that They Were Under-Reimbursed by AT&T
                    Does Not Confer Article III Standing to Bring a Claim Against
5                   Oldcastle.**

6       Plaintiffs' allegations that they were (or, in the case of BDC, will be) "under-reimbursed"

7   by AT&T does not confer standing on Plaintiffs to bring suit against Oldcastle because there is no

8   causal connection between Oldcastle's actions and any purported under-reimbursement. *See*

9   *Lujan*, 504 U.S. at 560-61. As set forth above, Plaintiffs do not allege that they were under-

10  reimbursed for any AT&T Vaults. And Plaintiffs do not allege any causal connection between

11  any act of Oldcastle and under-reimbursement for costs <u>other</u> than those for AT&T Vaults.

12  Moreover, even if Plaintiffs had alleged that they were under-reimbursed by AT&T for AT&T

13  Vaults, Plaintiffs acknowledge that AT&T sets its own reimbursement policies. *See* Compl. ¶ 50

14  (alleging that AT&T deems its responsibility under the tariffs fulfilled "so long as it pays some

15  reimbursement to the property developers").

16      If Plaintiffs allege that they were under-reimbursed for trenching materials other than

17  AT&T Vaults, they do not allege any relationship between that under-reimbursement and any act

18  by Oldcastle. *See Gest v. Bradbury,* 443 F.3d 1177, 1181 (9th Cir. 2006) (no standing where

19  alleged injury in fact is not "fairly traceable" to conduct by defendant). In fact, Plaintiffs

20  themselves claim that the only developers that could be harmed by the "AT&T-Oldcastle

21  Arrangement" would be those "who have been required to provide AT&T Vaults in AT&T's

22  rights-of-way in California . . . and who received insufficient reimbursement for the expenses

23  from AT&T on the ground that AT&T could have purchased the products in question directly

24  from Oldcastle at the low prices set forth in the AT&T-Oldcastle price list." *See* Compl. ¶ 130.

25      Even if Plaintiffs had alleged they were under-reimbursed by AT&T for AT&T Vaults,

26  the only allegation Plaintiffs make against Oldcastle with regard to reimbursement is that

27  Oldcastle entered a contract with AT&T that set the prices AT&T would pay for its direct

28  purchases of telephone vaults. *See id.* at ¶¶ 103-04. However, Plaintiffs' own allegations

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-10-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1    demonstrate that Oldcastle's list of prices for direct sales to AT&T did not cause or facilitate

2    AT&T's alleged practice of under-reimbursing developers.  *See Gest,* 443 F.3d at 1181-82

3    (holding that plaintiff had no Article III standing where plaintiffs would have suffered the same

4    alleged injury in the absence of defendants' conduct).  They instead allege that AT&T set its

5    reimbursement prices internally.  Compl. ¶ 50.  Despite claiming that AT&T sometimes used the

6    price list to "justify" its prices, *id.* at ¶ 103, Plaintiffs do not allege that AT&T showed the price

7    list to anyone, let alone to developers in an effort to "justify" its reimbursement practices.

8        In fact, Plaintiffs do not even allege that AT&T pays reimbursement at the Oldcastle

9    contract prices.  Rather, they allege that AT&T pays reimbursement in any number of ways that

10   do not involve the contract prices, including relying on pricing matrixes and statewide averages.

11   Compl. ¶¶ 52-68.  The only alleged method used by AT&T that has anything (allegedly) to do

12   with the contract is the AT&T-Oldcastle Arrangement, a version of the purported "forced

13   purchase-resale" method.  But even with regard to the "forced purchase-resale" method, Plaintiffs

14   do not claim that AT&T set its reimbursement rates at the Oldcastle contract prices.  Rather,

15   AT&T allegedly reimburses for vaults at an "approximation" of contract prices – or less.  Compl.

16   ¶ 103.  Further, Plaintiffs do not allege that the "AT&T-Oldcastle Arrangement" was used in

17   determining the reimbursement Plaintiffs would receive.  Compl. ¶¶ 73-78.  Only BDC (not La

18   Collina) alleges that AT&T attempted to impose any "forced purchase-resale," and that allegation

19   contains no mention of Oldcastle.  *Id.* at ¶ 78.

20       Even if Plaintiffs had alleged a causal connection between an act by Oldcastle and

21   AT&T's reimbursement policies, their claims would still fail because they do not allege that any

22   act taken by Oldcastle actually caused AT&T to reduce the reimbursement it paid to Plaintiffs.  If

23   Plaintiffs would have been paid the same amount or less before the purported "Oldcastle-AT&T

24   Arrangement," there was no injury in fact "fairly traceable" to Oldcastle's alleged conduct.  *See*

25   *Gest,* 443 F.3d at 1181-82.

26       In sum, because Plaintiffs do not have standing to bring any claim against Oldcastle, the

27   Court should dismiss its claims without further consideration of the substance of the claims.

28

-11-

1

**B.**     **Plaintiffs' First Cause of Action Against Oldcastle Should be Dismissed Because They Do Not State a Claim for Violations of California's Unfair Competition Law.**

2

3      Plaintiffs' First Cause of Action attempts to state a claim for violation of Sections 17200

4   *et seq.* of the California Business and Professions Code (the "Unfair Competition Law" or

5   "UCL") against all Defendants.  However, even if Plaintiffs could establish Article III standing,

6   their UCL claim fails because (1) they have no standing to bring a claim under the UCL itself;

7   and (2) they are not entitled to the remedies available under the statute.

8          **1.**     **Plaintiffs do not have standing to bring a UCL claim against Oldcastle.**

9      Even if Plaintiffs could establish Article III standing, they do not meet the more stringent

10   standing requirements of the UCL.  Since Proposition 64 was enacted, plaintiffs under the UCL

11   must establish that they have suffered "injury in fact" and that they have "lost money or property

12   as a result of . . . unfair competition."  Cal. Bus. & Prof. Code § 17204.  Here, Plaintiffs lack

13   standing to bring a UCL claim against Oldcastle because they cannot establish that they have

14   suffered any injury in fact or that they have lost any money or property because of any unfair act

15   by Oldcastle.  *See Hall v. Time, Inc.,* 158 Cal. App. 4th 847, 849 (2008) (affirming dismissal of

16   complaint where plaintiff failed to allege that unfair competition caused loss of money or

17   property), modified by 2008 Cal. App. LEXIS 139 (Jan. 28, 2008).

18      As shown above, Plaintiffs fail to establish that they have suffered an injury in fact as a

19   result of any action take by Oldcastle.  For the same reasons, Plaintiffs do not establish that they

20   have lost any money or property as a result of any unfair act by Oldcastle.  First, and most

21   critically, Plaintiffs do not allege that they have purchased any AT&T Vaults from Oldcastle or

22   any other supplier, or that they supplied AT&T with Vaults or were under-reimbursed for such

23   Vaults.  Plaintiffs' recent testimony confirms that they have not purchased AT&T Vaults.

24   Scancarelli Decl. Ex. A, pp. 140:4-13, 144:18-147:12, 147:13-148:4; Ex. B.  Second, Plaintiffs do

25   not allege that they paid supracompetitive prices for AT&T Vaults, or that Oldcastle sold Vaults

26   that were worth less than what was paid for them.  *See Hall,* 158 Cal. App. 4th at 849 (dismissing

27   UCL claim alleging unfair practices caused by sale of book; plaintiff failed to allege injury

28   because complaint did not state that he did not want the book, that the book was unsatisfactory, or

1    that the book was worth less than he paid for it).

2         To the extent that Plaintiffs do allege any injury as a result of AT&T's under-

3    reimbursement for products other than AT&T Vaults, that injury was not <u>caused</u> by Oldcastle.

4    *See Hall,* 158 Cal. App. 4th at 858-59 (holding that plaintiff lacked standing under the UCL

5    where he failed to allege that alleged unfair act had caused him to lose money or property).  In

6    fact, Plaintiffs acknowledge that there is no causal connection between any act by Oldcastle and

7    under-reimbursement for trenching and materials other than AT&T Vaults.  *See* Compl. ¶ 130.

8         Even if Plaintiffs had alleged that they were under-reimbursed for AT&T Vaults,

9    Plaintiffs admit that AT&T set its own reimbursement policies, and that it under-reimbursed

10   developers across the board for materials and trenching costs.  Compl. ¶¶ 4.  Thus, Oldcastle's

11   simple act of including a list of prices in its contract with AT&T, which AT&T might have used

12   as an internal reference, cannot form the basis of a UCL claim because that act was not necessary

13   or sufficient to cause Plaintiffs' harm.  "[T]here must be a causal connection between the harm

14   suffered and the unlawful business activity.  That causal connection is broken when a

15   complaining party would suffer the same harm whether or not a defendant complied with the

16   law."  *Daro v. Super. Ct*., 151 Cal. App. 4th 1079, 1099 (2007).  Accordingly, because Plaintiffs

17   do not allege that any act by Oldcastle caused them an "injury in fact" and a loss of money or

18   property, Plaintiffs lack standing and their UCL claim should be dismissed as to Oldcastle.  *See*

19   *Hall,* 158 Cal. App. 4th at 849 (holding that the UCL includes a causation requirement); *Daro*,

20   151 Cal. App. 4th at 1097-99 (no causal connection where plaintiff tenants would have suffered

21   the same harm whether or not building owners complied with the Subdivided Land Act).

22        **2.     Plaintiffs Are Not Entitled to the Remedies Available under the UCL.**

23        Even if Plaintiffs had standing under the UCL, their claim would fail because they are not

24   entitled to the remedies provided by the UCL.

25             **a.     Plaintiffs are not entitled to restitution under the UCL.**

26        The only monetary remedy authorized in a UCL suit by private plaintiffs is restitution.

27   *See Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1147-48 (2003).  Plaintiffs

28   would only be entitled to restitution of money actually received by a Defendant as a result of

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-13-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1    unfair competition.  *Id.* (courts may restore money or property "acquired through unfair

2    practices"); Cal. Bus. & Prof. Code § 17203 (courts may award money received "by means of"

3    unfair competition).

4          Here, Plaintiffs are not entitled to restitution from Oldcastle because they do not allege

5    that Oldcastle has received any money from them as a result of unfair competition.  First,

6    Plaintiffs did not purchase any telephone vaults from Oldcastle, either directly or indirectly, and

7    thus did not pay any money to Oldcastle.  Even if Plaintiffs had purchased AT&T Vaults from

8    Oldcastle (which they did not), Plaintiffs do not allege that Oldcastle charged supracompetitive

9    prices for AT&T Vaults, or that the AT&T Vaults sold by Oldcastle were not worth what

10   Oldcastle charged.  Thus, even if Plaintiffs had paid any money to Oldcastle, that money would

11   have been for the value of AT&T Vaults, not any amount attributable to an unfair act.  *See Korea*

12   *Supply,* 29 Cal. 4th at 1147-49 (holding that plaintiff could not recover any money that defendant

13   did not take directly from plaintiff; courts may only restore money or property "acquired through

14   unfair practices").

15         The only purported losses alleged by Plaintiffs in this case are amounts allegedly under-

16   reimbursed by AT&T.  *See, e.g.,* Compl. ¶85.  Plaintiffs cannot seek restitution from Oldcastle of

17   the amounts by which AT&T was purportedly enriched.  *See Bradstreet v. Wong,* 161 Cal. App.

18   4th 1440, 1460-61 (2008) (plaintiff employees could not seek restitution from owners of defunct

19   corporation for unpaid wages where labor was provided to the corporation and not the owners).

20              **b.     Plaintiffs are not entitled to injunctive relief against Oldcastle**
                         **because Oldcastle has not caused any harm to Plaintiffs.**
21

22         Section 17203 of the UCL authorizes injunctive relief  "as may be necessary to prevent

23   the use or employment by any person of any practice which constitutes unfair competition."

24   Here, no injunction against Oldcastle is "necessary" or possible.  Plaintiffs allege that the

25   "essential wrongdoing" in this case is AT&T's alleged under-reimbursement.  Compl. ¶ 51.

26   Because that alleged conduct is attributable solely to AT&T, no injunction against Oldcastle

27   could prevent further purported violations.  *See Daro,* 151 Cal. App. 4th at 1098, 1100 (plaintiff

28   must demonstrate that alleged violation of the UCL is likely to be redressed by remedies available

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-14-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1  under the UCL; a party who has suffered no injury as a result of a UCL violation cannot create

2  standing by arguing that a broad-based injunction will provide him or her some incidental

3  benefit).  Plaintiffs also are not entitled to injunctive relief because there is also no threat of

4  imminent immediate harm.  *See Lujan*, 504 U.S. at 560; *see also* Scancarelli Decl. Ex. A, pp.

5  17:22-25 (La Collina development infrastructure complete), 140:4-13 (no precast concrete

6  telephone box specified for Morning Walk development).

7       Accordingly, because Plaintiffs cannot demonstrate that they are entitled to any of the

8  remedies available pursuant to the UCL, their claim should be dismissed.

9    **C.     Plaintiffs' Third Cause of Action Should be Dismissed Because Plaintiffs**
     **Cannot State a Claim for Unreasonable Restraint of Trade in Violation of**
10   **Section 1 of the Sherman Act.**

11       As set forth above in section IV.A, Plaintiffs lack Article III standing to bring any claim

12  against Oldcastle, including any claim under Section 1 of the Sherman Act.  Even if Plaintiffs

13  could establish Article III standing, their claim would fail (1) because they cannot establish

14  <u>antitrust</u> standing, and (2) because they do not allege that Oldcastle made a conscious

15  commitment to an illegal scheme.

16        **1.     Plaintiffs' Claim Under Section 1 Fails Because They Lack Antitrust**
              **Standing Under the Federal Antitrust Laws.**
17

18              **a.     Plaintiffs cannot establish that they have suffered an antitrust**
                      **injury that was caused by any wrongful act on Oldcastle's part.**

19       Plaintiffs' claim under Section 1 of the Sherman Act fails because Plaintiffs lack Article

20  III standing to bring <u>any</u> claim against Oldcastle, as discussed above, and also because they

21  cannot establish that they have the "antitrust standing" to bring a federal antitrust claim.  In order

22  to adequately allege antitrust standing, Plaintiffs must not only establish that they have sustained

23  an injury in fact; they must also allege that (1) they have sustained an antitrust injury; and (2) that

24  the injury was caused by an antitrust violation by Oldcastle.  *See Assoc. Gen. Contractors, Inc. v.*

25  *Cal. State Council of Carpenters,* 459 U.S. 519, 542-44 (1983); *see also Lucas Auto. Eng'g, Inc.*

26  *v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1233 (9th Cir. 1998).

27       Antitrust injury is "injury of the type the antitrust laws were intended to prevent."

28  *Brunswick Corp. v. Pueblo Bowl-O-Mat., Inc.*, 429 U.S. 477, 489 (1977).  First, Plaintiffs do not

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-15-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1   allege that they have purchased any AT&T Vault, and have admitted that they have not done so.

2   Scancarelli Decl. Ex. A, pp. 140:4-13, 144:18-147:12, 147:13-148:4; Ex. B.  Second, Plaintiffs do

3   not allege that they paid supracompetitive prices for vaults, or that they purchased vaults that

4   were worth less than what they paid.  *See Pool Water Products v. Olin Corp.*, 258 F.3d 1024,

5   1034 (9th Cir. 2001) (no antitrust injury where conduct does not increase the price of goods or

6   diminish their quality).  So there is no antitrust injury here.

7         But even if there were antitrust injury, to establish antitrust standing, Plaintiffs must also

8   establish that an antitrust injury "flows from that which makes defendants' acts unlawful."

9   *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 113 (1986) (quoting *Brunswick*, 429 U.S. at

10  489).  Even if Plaintiffs had suffered an injury due to alleged under-reimbursement by AT&T,

11  Plaintiffs would still lack antitrust standing to bring a claim against Oldcastle because the under-

12  reimbursement would not have been caused by Oldcastle's acts.  As discussed above, AT&T set

13  its own reimbursement practices: any under-reimbursement was caused by those practices, not

14  any contract AT&T might have had with Oldcastle.  *See, e.g., O.K. Sand & Gravel, Inc. v. Martin*

15  *Marietta Technologies, Inc.*, 36 F.3d 565, 573 (7th Cir. 1994) ("To establish an antitrust injury, a

16  plaintiff must show . . . that the violation was the 'cause-in-fact' of the injury: that 'but for' the

17  violation, the injury would not have occurred."); *In re Canadian Imp. Antitrust Litig.*, 470 F.3d

18  785, 791 (8th Cir. 2006) (holding that purchasers of prescription drugs lacked standing to sue

19  U.S. drug companies for conspiring to prevent the importation of less expensive Canadian

20  prescription drugs, where "[t]he absence of competition from Canadian sources in the domestic

21  prescription drug market . . . [was] caused by the federal statutory and regulatory scheme adopted

22  by the United States government, not by the conduct of the defendants").

23              **b.     Plaintiffs cannot bring a claim for damages under the federal
                         antitrust laws because they do not allege that they made direct
24                       purchases.**

25        It is well established that indirect purchasers may not sue for damages under the federal

26  antitrust laws.  *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977).  Thus, because

27  Plaintiffs have not purchased any AT&T vault from Oldcastle, let alone one directly from

28  Oldcastle, their claim pursuant to Section 1 of the Sherman Act should be dismissed.

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-16-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1     In *Illinois Brick*, the State of Illinois and various local governmental agencies sued

2     concrete block manufacturers, alleging a price-fixing conspiracy under the federal antitrust laws.

3     *Id.* at 720.  The manufacturers had sold the concrete blocks to general contractors who in turn

4     charged the plaintiff in bids submitted for buildings.  *Id.* at 735.  The Court refused to allow the

5     indirect-purchaser plaintiffs to bring a claim for damages against the manufacturers.

6         Here, Plaintiffs do not allege that they purchased any AT&T Vaults from Oldcastle.

7     However, even if Plaintiffs had purchased Oldcastle-manufactured vaults, Plaintiffs' claims

8     would fail nevertheless because they make all their purchases of materials used in AT&T

9     installations indirectly through contractors (just as the *Illinois Brick* plaintiffs' claim was barred

10    because they purchased concrete blocks through a contractor).  *See* Compl. ¶¶ 117-18.

11              **2.      Plaintiffs' Claim Under Section 1 of the Sherman Act Fails Because**
                 **Plaintiffs Do Not Allege that Oldcastle Made a Conscious Commitment**
12               **to an Illegal Scheme.**

13        Plaintiffs' allegations are also inadequate to state a claim under Section 1 of the Sherman

14    Act because Plaintiffs have not sufficiently alleged that the parties engaged in any illicit

15    agreement, conspiracy, or combination.  To establish a claim under Section 1 of the Sherman Act,

16    Plaintiffs must allege (1) an agreement, conspiracy, or combination among two or more persons

17    or distinct business entities; (2) which is intended to harm or unreasonably restrain competition;

18    and (3) which actually causes injury to competition (i.e., "antitrust injury").  *Eichman v. Fotomat*

19    *Corp.*, 880 F.2d 149, 161 (9th Cir. 1989).  It is a plaintiff's burden to allege and prove that "the

20    manufacturer and others had a conscious commitment to a common scheme designed to achieve

21    an unlawful objective."  *Monsanto Co. v. Spray-Rite, Inc.*, 465 U.S. 752, 764 (1984) (internal

22    quotations omitted).  Here, Plaintiffs do not allege that Oldcastle made any conscious

23    commitment to any scheme with regard to AT&T's reimbursement practices, nor that AT&T

24    made any conscious commitment to Oldcastle's pricing practices for indirect sales, for at least

25    three reasons.  First, the conspiracy alleged by Plaintiffs makes no economic sense.  Second,

26    Plaintiffs have made no more than a bare allegation of conspiracy, without sufficient supporting

27    facts.  Third, Plaintiffs have not alleged that any agreement between AT&T and Oldcastle had a

28    causal link to their purported injury.

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-17-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1

           **a.**        **Plaintiffs' claim fails because the conspiracy they allege makes no economic sense.**

2

3       To survive a motion to dismiss pursuant to Rule 12(b)(6), "when allegations of parallel

4 conduct are set out in order to make a Section 1 claim, they must be placed in a context that raises

5 a suggestion of a preceding agreement, not merely parallel conduct that could just as well be

6 independent action." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007). Thus, Plaintiffs

7 cannot simply make a bare allegation of a conspiracy, but rather must specifically allege facts

8 from which the Court could reasonably draw an inference of an illegal conspiracy. *Id.*

9       Here, not only is Oldcastle's and AT&T's conduct more consistent with a typical supply

10 contract, the alternative "Arrangement" alleged by Plaintiffs makes no economic sense. AT&T

11 had no economic rationale to enter into a conspiracy to obtain a price list from Oldcastle, because

12 it did not need the list to reimburse at low rates (as evidenced by the numerous other "ploys"

13 alleged by Plaintiffs). According to Plaintiffs, AT&T had numerous schemes for under-

14 reimbursing developers that were entirely unrelated to the amounts that Oldcastle had charged

15 contractors, including reimbursements linked to various price lists and matrixes. At <u>most</u>,

16 Plaintiffs allege AT&T used the Oldcastle list internally as a price ceiling in some instances.

17 Since Plaintiffs themselves allege that AT&T believed it was not required to reimburse

18 developers at the developers' cost, there was simply no reason for AT&T to enter into a

19 conspiracy to obtain a price list that it was never going to show to anyone. *See* Compl. ¶ 50.

20       Thus, it is not possible to reasonably infer concerted action, because—taking Plaintiffs'

21 allegations as true—AT&T would have no interest whatsoever in the rates Oldcastle charged

22 contractors for its vaults. Moreover, there is nothing unusual or illegal in Oldcastle's alleged

23 decision not to give all contractors the same discount it gave to a major customer who had given

24 it a requirements contract. Indeed, Plaintiffs' entire conspiracy theory rests on the fact that

25 Oldcastle provided AT&T with a price list in connection with a supply contract. No conspiracy

26 could possibly be assumed from such an act, which is incident to any normal supply arrangement.

27 Allegations of conduct that "could just as well be independent action" will not sustain a Section 1

28 claim. *Twombly*, 127 S. Ct. at 1966; *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-18-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1287, 1301 (11th Cir. 2003) (plaintiff must establish plus factors tending to exclude the possibility of independent action).

### b. Plaintiffs cannot successfully state a claim for conspiracy based on a bare allegation without supporting facts.

Plaintiffs' Section 1 claim also fails because they have not alleged facts sufficient to establish the existence of their "bare assertion of conspiracy" between Oldcastle and AT&T. *Twombly*, 127 S. Ct. at 1966 (holding that such bare assertions were insufficient to state a claim under Section 1 of the Sherman Act); *Toscano v. PGA,* 258 F.3d 978, 983 (9th Cir. 2001) (bare allegations of conspiracy insufficient to state claim for conspiracy).

Plaintiffs allege that "Oldcastle and AT&T have conspired to give Oldcastle monopoly power in these relevant markets and to let Oldcastle charge its captive customers high prices for its telephone vaults." Compl. ¶ 125. They further allege that the arrangement "has depended upon AT&T and Oldcastle acting in concert to exclude all of Oldcastle's competitors, so that Oldcastle can act as the sole-provider or monopoly seller of these products to a captive market of those Developers who require precast concrete vaults to complete their connections to AT&T's land-line network." *Id.* ¶ 102. These are the kind of conclusory allegations held insufficient in *Twombly*: "a defendant seeking to respond to plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin." *Twombly*, 127 S. Ct. at 1971 n10. Plaintiffs do not point to the "specific time, place, or person involved in the alleged conspiracies." *Id.*

Plaintiffs' Complaint simply does not allege facts from which Plaintiffs could prove that Oldcastle and AT&T had a "conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto*, 465 U.S. at 764. Plaintiffs must "demonstrate that the defendants shared a 'unity of purpose or a common design and understanding, or a meeting of the minds' to engage in the conduct prohibited by the Sherman Act." *Impro Prods. Inc. v. Herrick*, 715 F.2d 1267, 1273 (8th Cir. 1983) (citing *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946)). Plaintiffs' Section 1 claim, however, relies entirely on the independent conduct of Oldcastle and AT&T.

An analogous case is *Toscano v. PGA,* 258 F.3d 978, 983 (9th Cir. 2001), where plaintiffs

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-19-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1   sued the PGA and PGA sponsors for alleged antitrust violations. *Id.* at 983. The court affirmed

2   dismissal of the complaint against local sponsors who agreed to abide by PGA rules, holding that

3   they were not proper defendants because they had no involvement in the establishment or

4   enforcement of the allegedly anticompetitive practices. *Id.* Similarly, Plaintiffs here do not

5   allege that Oldcastle was involved in establishing AT&T's reimbursement policies, or that AT&T

6   set the prices at which Oldcastle would sell AT&T Vaults to developers. Plaintiffs fail to make

7   any specific allegations that Oldcastle and AT&T agreed as to the prices that they would charge

8   and reimburse, respectively. Instead, Plaintiffs simply state that Oldcastle charged more to

9   contractors than AT&T reimbursed developers. As such, "the complaint leaves no doubt that

10  plaintiffs rest their Section 1 claim on descriptions of parallel conduct and not on any independent

11  allegation of actual agreement" among the Defendants. *Twombly*, 127 S. Ct. at 1970.

12              **c.      Plaintiffs fail to allege that any agreement between the**
                          **Defendants was related to any illegal restraint on trade.**
13

14          An agreement between the parties is irrelevant unless that agreement is connected to the

15  alleged restraint on trade. *Impro Prods.*, 715 F.2d at 1276; VI AREEDA & HOVENKAMP,

16  ANTITRUST LAW § 1409a n.2 (2003). For instance, "a supplier who licenses a product to another

17  does not join the licensee in a conspiracy to monopolize merely because the licensee turns around

18  and exploits the license for its own monopolistic purposes." *Syufy Enters. v. American*

19  *Multicinema, Inc.*, 793 F.2d 990, 1000 (9th Cir. 1986). Here, the alleged agreement is irrelevant

20  to the "Essential Wrongdoing" (*i.e.*, AT&T's under-reimbursement of developers). Compl. ¶ 51.

21  If, as Plaintiffs allege, AT&T is required to pay developers in full for the infrastructure provided

22  in residential subdivisions, *id.* ¶¶ 3, 74, 78, then it does not matter whether AT&T and Oldcastle

23  had any agreements about the prices at which Oldcastle would sell AT&T Vaults. Regardless of

24  any agreements, AT&T would be required to reimburse developers for whatever they paid.

25          **D.      Plaintiffs' Fourth Cause of Action Should Be Dismissed Because Plaintiffs**
                      **Have Not Stated a Cause of Action for Monopolization Under Section 2 of the**
26                    **Sherman Act.**

27          Plaintiffs' Fourth Cause of Action fails for the same reasons as their other antitrust claims:

28  (1) Plaintiffs lack antitrust standing because they have not alleged that they sustained an antitrust

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-20-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1  injury that was caused by any anticompetitive act by Oldcastle; and (2) Plaintiffs lack standing

2  under federal antitrust laws because they did not purchase any vaults directly from Oldcastle.

3  Accordingly, Plaintiffs' Fourth Cause of Action for monopolization should be dismissed.

4       **E.     Plaintiffs' Fifth Cause of Action Should Be Dismissed Because Plaintiffs Have
                 Not Stated a Cause of Action for Conspiracy to Monopolize Under Section 2
5                of the Sherman Act.**

6       Plaintiffs' allegations do not state a claim of <u>conspiracy</u> to monopolize in violation

7  Section 2 of the Sherman Act, because they do not establish: "(1) the existence of a combination

8  or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific

9  intent to monopolize; and (4) causal antitrust injury." *Paladin Assocs., Inc. v. Montana Power*

10  *Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

11      In addition to the deficiencies that cause Plaintiffs' Section 1 claim to fail, Plaintiffs'

12  Section 2 conspiracy to monopolize claim fails because Plaintiffs do not allege specific intent to

13  monopolize.  A plaintiff must show "specific intent to monopolize and anticompetitive acts

14  designed to effect that intent," in order to prevail under Section 2 conspiracy to monopolize

15  claim.  *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 926 (9th Cir. 1980).  A

16  plaintiff must therefore establish not just that an agreement between defendants contained

17  restrictive provisions, but also that the parties adopted such provisions for improper purposes.

18  *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1155 (9th Cir. 2003).  Plaintiffs'

19  allegations fall far short of stating a claim that AT&T and Oldcastle shared the specific intent of

20  granting Oldcastle monopoly power.  Plaintiffs make conclusory allegations that AT&T gave "a

21  monopoly concession to Oldcastle," but they do not allege that AT&T had the specific intent to

22  give Oldcastle monopoly power.

23      Moreover, as the customer of the vaults produced by Oldcastle, AT&T would have no

24  logical interest in such a monopoly.  This logical disconnect has led prominent antitrust scholars

25  to state that "one must doubt whether the 'conspiracy to monopolize' language of Section 2 was

26  ever intended to reach nonhorizontal agreements at all."  IIIA AREEDA & HOVENKAMP,

27  ANTITRUST LAW ¶ 809 (2003); *see also Int'l Distrib. Ctrs v. Walsh Trucking Co.*, 812 F.2d 786

28  (2nd Cir. 1987) (holding there was no conspiracy to monopolize where a defendant company

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-21-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1   hires away key executives of another company absent a showing that the executives—not just the

2   company—intended to monopolize the market).

3        AT&T had no economic rationale to enter into a conspiracy to obtain a price list from

4   Oldcastle, particularly given Plaintiffs' allegations that under at least some "strategies," the rates

5   it reimbursed were decided internally and largely unrelated to the prices charged by Oldcastle.

6   AT&T's only logical rationale in entering into a contract with Oldcastle was to get the best

7   possible rates for its vaults.  Likewise, Plaintiffs do not allege that Oldcastle knew that AT&T

8   was using Oldcastle's contract prices to under-reimburse developers (and, indeed, AT&T was <u>not</u>

9   doing so).  Such knowledge, at a minimum, is required here, as this alleged under-reimbursement

10  forms the essential anticompetitive component of the conspiracy Plaintiffs allege.  *See Syufy*

11  *Enters.*, 793 F.2d at 1001 (finding "no authority that a Section 2 conspiracy may be established

12  without some showing that more than one of the alleged co-conspirators had at least some

13  awareness that the underlying conduct was anticompetitive or monopolistic").  Thus Plaintiffs fail

14  to state a claim for conspiracy to monopolize.

15        **F.    Plaintiffs' Sixth Cause of Action Should Be Dismissed Because Plaintiffs Have
             Not Stated a Cause of Action Pursuant to Section 3 of the Clayton Act.**
16

17        Plaintiffs' Sixth Cause of Action fails for the same reasons their other federal antitrust

18  claims fail.  In particular, Plaintiffs' claim fails because, as discussed above, (1) Plaintiffs lack

19  antitrust standing because they have not alleged that they sustained an antitrust injury that was

20  caused by any anticompetitive act by Oldcastle; and (2) Plaintiffs lack standing to bring claims

21  under the federal antitrust laws because they did not purchase any vaults directly from Oldcastle.

22  Accordingly, Plaintiffs' Sixth Cause of Action should be dismissed.

23        **G.    Plaintiffs' Sixth [sic] Cause of Action Should be Dismissed Because Plaintiffs
             Have Not Stated a Cause of Action Pursuant to Sections 16720 *et seq.* of the
24           California Business and Professions Code.**

25        The elements of a cause of action under California Business and Professions Code Section

26  16720, *et seq.* ("the Cartwright Act") are essentially the same as those for a cause of action under

27  Section 1 of the Sherman Act.  A cause of action for a conspiracy in restraint of trade in violation

28  of the Cartwright Act "must allege (1) the formation and operation of the conspiracy, (2) the

FOLGER LEVIN &
KAHN llp
ATTORNEYS AT LAW

-22-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1    wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts."

2    *Kunert v. Mission Fin. Servs. Corp.*, 110 Cal. App. 4th 242, 262 n.15 (2003) (holding that

3    automobile buyers did not state a claim under the Cartwright Act, in part because the claim was

4    based on the flawed premise that wholesale prices should be the same as retail prices).  This claim

5    should be dismissed for the same reasons as Plaintiffs' claim under Section 1 of the Sherman Act:

6    as discussed above, (1) Plaintiffs lack antitrust standing because they do not allege that they

7    sustained an antitrust injury that was caused by any anticompetitive act by Oldcastle; and (2)

8    Plaintiffs do not allege that Oldcastle made a conscious commitment to an illegal scheme.

9    **H.     Plaintiffs' Seventh Cause of Action Should be Dismissed Because Plaintiffs
10          Have Not Stated a Cause of Action Pursuant to the Nevada Unfair Trade
             Practice Act.**

11          The Nevada legislature has declared that the provisions of the Nevada Unfair Trade

12   Practice Act ("UTPA") shall be "construed in harmony with prevailing interpretations of the

13   federal antitrust statutes."  Nev. Rev. Stat. 598A.050, 598A.060.  Therefore, Plaintiffs' UTPA

14   claim should be dismissed for the same reasons as their federal antitrust claims.  Plaintiffs also

15   fail to state a claim under the UTPA because they have not done business in Nevada, let alone

16   purchased AT&T Vaults there, so Plaintiffs could not have been harmed by any act that took

17   place in Nevada.  *See* Nev. Rev. Stat. 598A.060 (stating that "it is unlawful to conduct any part of

18   any" contract, combination, or conspiracy in restraint of trade "in this State," *i.e.,* Nevada).

19   **I.     The Court Should Grant Oldcastle's Motion to Dismiss Without Leave to
20          Amend Because Plaintiffs Cannot Cure the Deficiencies in the Complaint.**

21          The Court should dismiss Plaintiffs' claims without leave to amend because amendment

22   would be futile.  *See Reddy v. Litton Indus., Inc.,* 912 F.2d 291, 296 (9th Cir. 1990) (holding that

23   trial court did not abuse its discretion in granting motion to dismiss without leave to amend where

24   plaintiff could not amend complaint to allege injury).  Plaintiffs cannot amend the Complaint to

25   allege that they have purchased AT&T Vaults, because such a statement would be false.  *See*

26   Scancarelli Decl. Ex. A, pp. 140:4-13, 144:18-147:12, 147:13-148:4; Ex. B.  Plaintiffs have also

27   admitted that they have not done business in Nevada or any part of California other than Folsom.

28   *Id.* Ex. A, pp. 17:19-21, 123:18-124:12.

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-23-

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1    Similarly, Plaintiffs cannot amend their Complaint to allege facts that are inconsistent

2    with the facts already pled.  *See Reddy*, 912 F.2d at 295-96 (plaintiffs may not cure deficiencies in

3    challenged complaint by alleging facts inconsistent with the complaint).  Here, Plaintiffs have

4    already alleged that (1) AT&T sets its own reimbursement policies and (2) AT&T has not

5    systematically set reimbursement rates for AT&T Vaults at the prices in its contract with

6    Oldcastle.  Plaintiffs cannot not amend their Complaint to allege facts to the contrary.  Thus, the

7    Court should dismiss the Complaint with prejudice because the deficiencies in the Complaint

8    cannot be cured by amendment.  *See Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv.*

9    *Inc.,* 911 F.2d 242, 247 (9th Cir. 1990) (affirming dismissal of complaint without leave to amend

10    where deficiencies could not be cured by amendment).

11        **J.        The Court Should Strike All Class Allegations in the Complaint.**

12        If Plaintiffs' claims survive this motion, the Court should strike the allegations made in

13    the Complaint on behalf of a purported class because it is clear from the face of the Complaint

14    that La Collina and BDC cannot adequately represent such a class.

15        Federal Rule of Civil Procedure 23(d)(1)(D) permits the Court to order "that the pleadings

16    be amended to eliminate allegations about representation of the absent persons and that the action

17    proceed accordingly."  Courts properly strike class allegations at the pleadings stage where it is

18    apparent from the face of a complaint that plaintiffs cannot establish that they are proper

19    representatives of the proposed class.  *See, e.g., Kamm v. Cal. City Dev. Co.,* 509 F.2d 205, 210

20    (9th Cir. 1975).  Such is the case here:  La Collina and BDC's claims are not typical of the

21    purported class, nor can they fairly and adequately protect the interests of the class.  *See* Fed. R.

22    Civ. Proc. 23(a).

23        First, Plaintiffs cannot represent a class alleging injuries stemming from Oldcastle's

24    conduct, because neither Plaintiff alleges that it ever purchased an AT&T Vault, or anything from

25    Oldcastle.  "[N]amed plaintiffs . . . 'must allege and show that they personally have been injured,

26    not that injury has been suffered by other, unidentified members of the class to which they belong

27    and which they purport to represent.'"  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20

28    (1976); *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (holding that

OLDCASTLE'S MOTION TO DISMISS COMPLAINT
OR, IN THE ALTERNATIVE, TO STRIKE CLASS
ALLEGATIONS; CASE NO. C-08-2451 SI

1  named plaintiff's claims are not typical where plaintiff is subject to unique defenses).  A class

2  representative must have standing to assert any claim it seeks to litigate on behalf of absent class

3  members.  *E. Tex. Motor Freight Sys. Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977).

4      Second, Plaintiffs cannot represent a class that alleges antitrust violations regarding the

5  sale of AT&T Vaults throughout California and Nevada because both Plaintiffs do business only

6  in Folsom, California.  *See* Compl. ¶¶ 6-7, 73, 76-77.  This is important because Plaintiffs allege

7  that some challenged practices, like the price matrix used in San Diego and Imperial Counties, are

8  specific to certain geographic areas.  *See In re Milk Prods. Antitrust Litig.,* 195 F. 3d 430, 436-37

9  (8th Cir. 1999) (holding that named plaintiff was an inadequate representative of state-wide class

10  because of differences in regional markets, plaintiff's isolated location within the state, and

11  plaintiff's atypical purchasing practices; also, conspiracy in the named plaintiff's geographic area

12  would not necessarily translate into evidence of a conspiracy in other regions of the state).

13      Third, Plaintiffs do not meet the typicality and adequacy requirements of Rule 23 because

14  they do not develop commercial subdivisions.  *See* Compl. ¶ 3 (alleging that AT&T's

15  reimbursement obligations are different for commercial and residential developers); *See also In re*

16  *Milk Prods. Antitrust Litig.,* 195 F. 3d at 436-37 (no class certification where named plaintiff fails

17  to meet typicality and adequacy requirements).

18                              **CONCLUSION**

19      For the foregoing reasons, Oldcastle respectfully requests the Court to dismiss the

20  Complaint in its entirety without leave to amend.

21  Dated: June 20, 2008

                              FOLGER LEVIN & KAHN LLP

22

23                              /s/
                              Janine L. Scancarelli
                    Attorneys for Defendant Oldcastle Precast, Inc.

24

25  71073\6002\606595.1