AARON M. PANNER
Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036

RAYMOND P. BOLAÑOS, State Bar #142069
J. SCOTT PAISLEY, State Bar #094236
AT&T Services, Inc. Legal Dept.
525 Market Street, 20th Floor
San Francisco, California 94105-2727
Telephone:  (415) 778-1357
Facsimile:  (415) 882-4458

Attorneys for Defendants
PACIFIC BELL TELEPHONE COMPANY,
NEVADA BELL TELEPHONE COMPANY,
and AT&T SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LA COLLINA DAL LAGO, L.P.; BERNAU DEVELOPMENT CORPORATION; and all similarly situated legal persons,<br><br>                          Plaintiffs,<br><br>          v.<br><br>PACIFIC BELL TELEPHONE COMPANY; NEVADA BELL TELEPHONE COMPANY; AT&T SERVICES, INC.; and OLDCASTLE PRECAST, INC.,<br><br>                          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Case No.  08 CV 02451  SI<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT BY PACIFIC BELL TELEPHONE COMPANY, NEVADA BELL TELEPHONE COMPANY, AND AT&T SERVICES, INC. ("AT&T")**<br><br>     Date:   October 3, 2008<br>     Time:   9:00 a.m.<br>     Place:  Courtroom 10, 19th Floor<br><br>     The Hon. Susan Illston |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES............................................................................................. iii

NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT ............................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES

STATEMENT OF ISSUES............................................................................................. 1

SUMMARY OF ARGUMENT ....................................................................................... 1

PLAINTIFFS' ALLEGATIONS AND FACTUAL BACKGROUND .......................................... 3

    A.    Line Extensions .................................................................................... 3

    B.    The Complaint...................................................................................... 6

ARGUMENT .............................................................................................................. 7

I.    PLAINTIFFS FAIL TO STATE A CLAIM FOR "UNLAWFUL, UNFAIR OR FRAUDULENT" BUSINESS PRACTICES ......................................................... 7

    A.    AT&T's Alleged Under-Reimbursement of Developers Does Not Violate Its Tariff; Any Such Claim Would Have To Be Resolved by the California PUC in the First Instance ................................................... 8

    B.    AT&T's Alleged Practices with Respect to Reimbursement of Developers Is Not "Unfair"......................................................................... 13

    C.    Plaintiffs Fail To Allege Any "Fraudulent" Business Conduct by AT&T........................................................................................................ 14

II.    THE EXISTENCE OF AN EXPRESS CONTRACT BARS PLAINTIFFS' UNJUST-ENRICHMENT CLAIM........................................................................ 15

III.    PLAINTIFFS FAIL TO ALLEGE ANY ANTITRUST VIOLATION ........................... 15

    A.    Alleged Under-Reimbursement of Developers – Resulting from AT&T's Alleged Exercise of Market Power – Creates No Cognizable Harm to Competition ............................................................................... 16

    B.    Plaintiffs' "Conspiracy To Monopolize" Claim Fails for the Same Reason as Their Section 1 Claim ............................................................. 18

    C.    As Indirect Purchasers of Telephone Vaults, Developers Cannot Pursue Claims for Damages ................................................................... 18

    D.    Plaintiffs' State Antitrust Claims Fail for the Same Reasons ...................... 19

425686

1

IV.    PLAINTIFFS LACK STANDING TO PURSUE ANTITRUST CLAIMS OR
CLAIMS BASED ON AT&T'S CONDUCT IN NEVADA ........................................... 19

2

3

CONCLUSION ................................................................................................................ 21

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

425686

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

# <u>TABLE OF AUTHORITIES</u>

Page

**FEDERAL CASES**

*AT&T Co. v. Central Office Tel., Inc.*, 524 U.S. 214 (1998) ........................................ 15

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ................................. 7, 14, 15

*Connetics Corp. Sec. Litig. (In re)*, 542 F. Supp. 2d 996 (N.D. Cal. 2008)................................ 20

*Digital Communications Network, Inc. v. AT&T Wireless Servs.*,
    63 F. Supp. 2d 1194 (C.D. Cal. 1999).................................................................. 13

*Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133 (9th Cir. 2003) .................................... 18

*Hevesi v. Citigroup Inc.*, 366 F.3d 70 (2d Cir. 2004) ................................................. 21

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ................................................. 3, 18

*Jensen Enters. Inc. v. Oldcastle Inc.*, No. C 06-00247 SI, 2006 WL 2583681
    (N.D. Cal. Sept. 6, 2006)........................................................................... 2

*Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727 (3d Cir. 1970) ......................................... 19

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008)........................................... 7, 18

*Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003) .............................. 19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)................................................... 20

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) ........................................... 16

*Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088 (9th Cir. 2000) ...................... 18, 19

*Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998 (N.D. Cal. 2006)........................... 19

*Smith v. Sprint Communications Co.*, No. C 96-2067 FMS, 1996 WL 1058204
    (N.D. Cal. Sept. 13, 1996)......................................................................... 4, 15

*Spiegler v. Home Depot U.S.A., Inc.*, ___ F. Supp. 2d ___,
    2008 WL 1848292 (C.D. Cal. 2008)................................................................. 13

*Terazosin Hydrochloride Antitrust Litig. (In re)*, 160 F. Supp. 2d 1365
    (S.D. Fla. 2001)..................................................................................... 20

*United States v. Western Pac. R.R.*, 352 U.S. 59 (1956)................................................ 11

*United States v. Yellow Freight Sys., Inc.*, 762 F.2d 737 (9th Cir. 1985) .............................. 11

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)............................................................................ 2, 17, 18

425686

*Wooden v. Board of Regents*, 247 F.3d 1262 (11th Cir. 2001) ....................................... 19

## STATE CASES

*Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (4th Dist. 2006) ........................... 8, 14

*California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
    94 Cal. App. 4th 151 (4th Dist. 2001) .............................................................. 15

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ................................................................................ 8

*Cundiff v. GTE California Inc.*, 101 Cal. App. 4th 1395 (2d Dist. 2002)..................................... 12

*Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036 (1999)............................... 10

*Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377 (1992)...................................................... 8, 11

*LeasePartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*,
    942 P.2d 182 (Nev. 1997) ........................................................................... 15

*Marin County Bd. of Realtors, Inc. v. Palsson*, 16 Cal. 3d 920 (1976) ..................................... 19

*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214 (4th Dist. 1999) .................... 10

*Samura v. Kaiser Found. Health Plan, Inc.*, 17 Cal. App. 4th 1284 (1st Dist. 1993) ................. 14

*Trammell v. Western Union Tel. Co.*, 57 Cal. App. 3d 538 (1st Dist. 1976) ................................ 4

*Wise v. Pacific Gas & Elec. Co.*, 77 Cal. App. 4th 287 (1st Dist. 1999) ..................................... 11

## STATUTES AND RULES

15 U.S.C. § 1 ..................................................................................................... 1

15 U.S.C. § 2 ..................................................................................................... 1

Cal. Bus. & Prof. Code § 17200........................................................................ 1, 8

Cal. Bus. & Prof. Code § 17203........................................................................ 9

Cal. Bus. & Prof. Code § 17204........................................................................ 8, 9

Fed. R. Civ. P. 12(b)(6)..................................................................................... 1

Nev. Rev. Stat. § 598A.050............................................................................... 19

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

1

**OTHER MATERIALS**

2    1 Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002)............................ 20

3    Schedule Cal. P.U.C. No. A2 ....................................................................................... 4, 5, 9, 10

4    Tariff  P.S.C.N. No. A4................................................................................................... 5, 6

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

425686

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

## NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT

PLEASE TAKE NOTICE that, on October 3, 2008, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10, 19th floor, 450 Golden Gate Avenue, San Francisco, California, defendants Pacific Bell Telephone Company, Nevada Bell Telephone Company, and AT&T Services, Inc. (collectively, "AT&T") will move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all claims contained in the complaint filed in the above-captioned matter. Specifically, all claims against AT&T (plaintiffs' causes of action 1, 2, 3, 5, 7 and 8) fail to state claims upon which relief can be granted. Each of these claims fails to plead one or more of the requisite elements of a valid theory of recovery.

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF ISSUES

Whether plaintiffs have alleged all of the elements required to state valid claims against AT&T, for violation of state and federal law, state common law, and state unfair-competition statutes.

## SUMMARY OF ARGUMENT

Plaintiffs, on behalf of a purported class, claim that AT&T violated the California and Nevada unfair-competition statutes and state common law, by failing to provide full reimbursement to developers for their costs in constructing underground facilities used to connect new developments to AT&T's telephone network. They also claim that one facet of that conduct – an alleged agreement with defendant Oldcastle Precast, Inc. ("Oldcastle") to designate Oldcastle as the sole approved supplier of pre-cast concrete vaults for AT&T's network – violates Section 1 and Section 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and state antitrust law. Because plaintiffs' allegations fail to state a claim – or, at a minimum, because plaintiffs' claims implicate the primary jurisdiction of state regulators – the Court should dismiss the complaint.

*First*, plaintiffs fail to allege that AT&T has engaged in a business practice that is "unlawful, unfair or fraudulent." Cal. Bus. & Prof. Code § 17200. Plaintiffs claim incorrectly that AT&T's alleged failure to provide full reimbursement is "unlawful" because it violates the California (or Nevada) tariff governing reimbursement. The tariffs – of which the Court may take

1    judicial notice and filed with this motion – do not require AT&T to provide dollar-for-dollar

2    reimbursement of a developer's costs.  Even if there were any doubt on that score, the proper

3    interpretation of disputed terms of a state tariff, and its application in particular cases, are matters

4    that must be resolved in the first instance by the responsible state regulator – the California Public

5    Utilities Commission ("PUC") or its Nevada counterpart.  Furthermore, AT&T's conduct is

6    neither "unfair" nor "fraudulent" within the meaning of the California statute.  There is nothing

7    unfair about asking a developer to bear some of the cost of an extension of services that benefits

8    the developer.  And the only supposed "fraudulent" practice is AT&T's supposed failure to

9    inform developers that AT&T is required by regulation to reimburse developers dollar-for-dollar

10    – again, a mischaracterization of the tariffs and, in any event, not an act that is "likely to deceive

11    the public."

12        *Second*, plaintiffs' unjust-enrichment claim fails because, as alleged in the complaint,

13    reimbursement of developers is governed by express contracts – *i.e.*, the trench agreements that

14    developers and AT&T enter into with respect to line extensions.  California and Nevada law is

15    clear that claims in quasi-contract are not permitted where an express contract governs.

16        *Third*, plaintiffs' claims under the Sherman Act and state antitrust law also fail.  The sole

17    basis for the antitrust claims is that an alleged agreement between AT&T and Oldcastle has

18    resulted in harm to competition in the form of increased costs for developers.  Plaintiffs allege

19    that developers are forced to acquire vaults from Oldcastle which they convey to AT&T as a

20    condition of connecting their developments to AT&T's network, but for which AT&T does not

21    adequately reimburse them.  In other words, AT&T is allegedly charging developers too much to

22    connect to its network.  But a lawful monopolist – and plaintiffs nowhere claim that AT&T's

23    alleged monopoly in land-line telephone service is unlawful – does not violate the antitrust laws

24    by charging "too much" for its services.  *See Verizon Communications Inc. v. Law Offices of*

25    *Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004); *Jensen Enters. Inc. v. Oldcastle, Inc.*, No. C 06-

26    00247 SI, 2006 WL 2583681, at *6 (N.D. Cal. Sept. 6, 2006).

27

28

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

Nor is plaintiffs' claim salvaged by its allegations of a relevant market limited to "[v]aults made to AT&T's technical specifications," Compl. ¶ 108. Plaintiffs' complaint is expressly based on AT&T's imposition of costs on plaintiff developers through its alleged practice of under-reimbursing developers for their costs in connecting to AT&T's network. The relative market power of suppliers of equipment necessary for that connection is irrelevant to this claim. Plaintiffs' claim would be the same regardless of the breadth of the markets in which they purchase their materials or the number of competitors in those markets. The claimed harm results from AT&T's alleged under-reimbursement, and not from the price of the products that the developers buy and convey to AT&T as a condition of interconnection.

Lastly, plaintiffs' antitrust claims are based entirely on the alleged agreement between AT&T and Oldcastle which they contend affects the alleged market for vaults. But because plaintiffs admit that developers do *not* actually purchase so-called "AT&T vaults" directly, *see* Compl. ¶ 104, developers lack antitrust standing to maintain claims for damages under the Sherman Act based on alleged harm to competition in any vault market. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977).

*Fourth*, and finally, neither of the named plaintiffs has standing to sue based on either (1) the alleged agreement between Oldcastle and AT&T or (2) conduct in Nevada. As explained in the motion to dismiss filed by Oldcastle, neither plaintiff alleges that it has ever actually purchased a vault from Oldcastle, even indirectly. And neither plaintiff alleges that it has ever developed, or plans to develop, properties in Nevada. *See* Compl. ¶¶ 6, 7. Accordingly, all of plaintiffs' antitrust claims, as well as their claims based on Nevada law, should be dismissed.

## PLAINTIFFS' ALLEGATIONS AND FACTUAL BACKGROUND

### A.    Line Extensions

When a developer constructs a new development, the developer needs to ensure that residents – homes and businesses – have access to public utility service, that is, water, electricity, gas, and communications services. Developers and public utilities accordingly need to make arrangements for the extension of public utility service to areas that were not previously served.

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

This case involves arrangements between developers and AT&T for extension of AT&T's network to serve new developments. *See* Compl. ¶¶ 1, 2.

In California, AT&T's obligations with respect to "line extensions" are addressed in AT&T's Network and Exchange Services Tariff, which is filed with and subject to the authority of the California PUC.[1]  The California tariff provides that, "[w]here its own operating conditions warrant, the Utility will construct and maintain its facilities underground at its expense," and provides in particular that "[o]nly underground line extensions and service connections will be constructed to and within" most residential developments.  Schedule Cal. P.U.C. No. A2.1.15.A.6, 7.  The tariff goes on to establish different requirements with respect to residential subdivisions and subdivisions "wherein all or a portion of the requirement will be for business service" – that is, commercial or mixed-use residential and commercial subdivisions. *Id.* No. A2.1.15.C.2.

In the case of residential subdivisions, AT&T commits to "construct an underground extension at its expense" and to pay "its pro-rata cost" of trenches that are jointly occupied. *Id.* No. A2.1.15.C.1.a.[2]  Plaintiffs do not claim that AT&T has ever refused to construct underground line extensions as required by the tariff – though they do complain that AT&T refuses to accommodate developers' schedules. *See* Compl. ¶¶ 58-61.  As a result of AT&T's alleged delays, residential developers frequently prefer to construct underground facilities on their own schedule, thereby saving time, inconvenience, and money. *See id.* ¶¶ 59, 60.  The tariff does not expressly address what AT&T's obligations are in the case where a developer constructs facilities that AT&T then occupies.  Accordingly, AT&T and developers negotiate arrangements that

---

[1] AT&T's California tariffs set forth the rates, terms, and conditions under which AT&T offers to provide common-carrier telecommunications services.  Once effective, a tariff is binding and has the force of law. *See Trammell v. Western Union Tel. Co.*, 57 Cal. App. 3d 538, 550-51 (1st Dist. 1976).  The relevant excerpts of the California and Nevada tariffs are attached hereto as Exhibits A and B; the Court "takes judicial notice of . . . agency-filed tariffs." *Smith v. Sprint Communications Co.*, No. C 96-2067, 1996 WL 1058204, at *5 n.4 (N.D. Cal. Sept. 13, 1996).

[2] The developer is required to "perform or pay for any pavement cutting and repaving, and for clearing the route and grading it to within six inches of final subgrade, all in time to give the Utility a reasonable construction period."  Schedule Cal. P.U.C. No. A2.1.15.C.1.b.

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

1  ensure that the facilities are constructed in accordance with AT&T's specifications; that AT&T

2  provides reimbursement according to the parties' agreement; and that ownership of the facilities is

3  transferred to AT&T. *See id.* ¶¶ 62, 63, 66. There is no claim here that such arrangements are

4  prohibited by the tariff. To the contrary, plaintiffs affirmatively allege that AT&T is permitted to

5  "pay reasonable reimbursement for [trenching and materials] if it arranges to have a property

6  developer supply them." *Id.* ¶ 3 (emphasis removed).

7       In the case of commercial or mixed-use developments, AT&T's obligations are even more

8  limited. The tariff anticipates that, in such developments, the developer, not AT&T, will be

9  responsible for installation of the necessary "underground supporting structure" to provide

10  communications service to the development. *See* Schedule Cal. P.U.C. No. A2.1.15.C.2.d ("The

11  [developer] will construct to the Utility's specifications and deed to the Utility the complete

12  underground supporting structure."). AT&T's obligation is limited to "provid[ing] the conduit

13  material, and metallic manhole covers where specified." *Id.* No. A2.1.15.C.2.a. Alternatively, the

14  developer "may provide the conduit material to [AT&T's] specifications and [AT&T] will

15  reimburse the applicant at [AT&T's] current cost for that type of conduit." *Id.*[3]

16       In Nevada, AT&T's tariff – filed with the Nevada PUC – provides that there will be no

17  charge for line extensions of 1,000 feet or less, but the general rule is subject to various

18  exceptions. For example, AT&T may require agreements "not to exceed five years of telephone

19  service . . . as a condition precedent to the establishment of the service when line extensions are

20  necessary." Tariff P.S.C.N. No. A4.2.A.12. In addition, the tariff contemplates that, "[w]hen the

21  revenue to be derived from the service to be served by a particular line extension is not, in the

22  opinion of [AT&T], sufficient to warrant [AT&T] assuming the costs of providing the necessary

23  construction, the applicant or applicants may be required to pay all or a portion of such costs in

24  lieu of the line extension charges set forth in this schedule." *Id.* No. A4.2.A.13. For commercial

---

[3] AT&T is required to bear a portion of the cost if it requires the developer to "include transiting conduit to serve parcels outside the subdivision." Schedule Cal. P.U.C. No. A2.1.15.C.2.b. In such a case, the developer and AT&T "shall agree upon the amount of such reimbursement before construction begins." *Id.*

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

1  and mixed-use developments, a developer can construct facilities "in excess of the distance for

2  which there is no charge in accordance with the construction standards of [AT&T]," and, in that

3  case, the developer is not reimbursed and "in all instances the ownership of facilities shall be

4  entirely vested in [AT&T]." *Id.* No. A4.2.A.1. As in California, the tariff does not expressly

5  address the reimbursement of residential developers that choose to construct facilities rather than

6  rely on AT&T to do so.

7  **B.    The Complaint**

8  Plaintiffs' complaint alleges that, pursuant to the arrangements described above ("trench

9  agreements"), "AT&T has failed to pay proper reimbursement to . . . property developers" for

10  infrastructure installed in residential developments in California and Nevada. Compl. ¶ 1. In

11  general, "trench agreements . . . list lump-sums that AT&T agrees to pay for the trenching and

12  materials. The lump-sums include both the price of the materials and the cost of their

13  installation." *Id.* ¶ 63. According to the complaint, although "AT&T does not explain to the

14  property developers how it calculates the[ ] prices" in the trench agreements, its "reimbursement

15  rates" are "arbitrarily low." *Id.* ¶¶ 46, 63.

16  The complaint also alleges that "AT&T accomplishes . . . under-reimbursement by various

17  means." *Id.* ¶ 51. One has been to require developers to purchase materials from designated

18  suppliers and to reimburse developers based on AT&T's cost of materials "or at even lower

19  prices," below the price charged to the developers. *See id.* ¶¶ 52, 53. (One such supplier

20  allegedly is defendant Oldcastle; plaintiffs' antitrust allegations are based on the agreement

21  between AT&T and Oldcastle. *See id.* ¶¶ 100-170.) In other cases, AT&T allegedly has

22  reimbursed developers according to pricing matrices that reflect prices "substantially lower than

23  the developers' actual costs." *Id.* ¶ 55. AT&T has likewise allegedly under-reimbursed

24  developers for trenching by using average costs that do not reflect, for example, the added cost of

25  trenching in rocky terrain. *See id.* ¶¶ 56, 57.

26  ///

27  ///

28

6                                                                                          425686

**ARGUMENT**

To survive a motion to dismiss for failure to state a claim, a complaint must do more than offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). Rather, a complaint must offer "[f]actual allegations" sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* at 1965 (citation omitted). A pleading of "ultimate facts" and "legal conclusions" is insufficient in the absence of "necessary evidentiary facts to support those conclusions." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).

Here, plaintiffs have failed to allege any claim under California's Unfair Competition Law because they have not alleged any unlawful, unfair, or fraudulent business practice within the meaning of that statute. Point I, *infra*. Plaintiffs' claim for unjust enrichment cannot proceed with regard to conduct governed by an express contract. Point II, *infra*. Plaintiffs' state and federal antitrust claims fail because they have not alleged harm to competition. Point III, *infra*. And plaintiffs lack standing to pursue any claims based on Nevada law or defendants' conduct in Nevada. Point IV, *infra*.

## I.     PLAINTIFFS FAIL TO STATE A CLAIM FOR "UNLAWFUL, UNFAIR OR FRAUDULENT" BUSINESS PRACTICES

Plaintiffs' claims under Cal. Bus. & Prof. Code § 17200 are premised on the claim that AT&T's alleged practice of reimbursing developers for network facilities at rates below developers' actual costs violates AT&T's obligation under the governing California and Nevada tariffs. But plaintiffs do not and cannot cite any language in AT&T's tariffs that establishes such a standard for reimbursement of residential developers. AT&T's alleged practice of reimbursing developers for both facilities and construction expenses at agreed-upon rates – whether or not those rates fully cover developers' costs – is not unlawful. Even if there were room for debate on this point, this Court cannot interpret AT&T's California and Nevada tariffs in the first instance or determine that reimbursement under particular trench agreements was "reasonable" or

7

425686

"unreasonable." Such matters of regulatory policy fall within the primary jurisdiction of the responsible state public utility commission. Without any foundation in California public utility law, the complaint about under-reimbursement fails. Absent some restriction in the tariff, there is no other legal principle that would prevent AT&T and developers from agreeing to whatever arrangements they choose with regard to construction of communications facilities in new developments.

California law "defines 'unfair competition' to include 'any [1] unlawful, [2] unfair or [3] fraudulent business act or practice.' " *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quoting Cal. Bus. & Prof. Code § 17200). "*Unlawful* business activity proscribed under section 17200 includes anything that can properly be called a business practice and that at the same time is forbidden by law." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (emphasis added; internal quotation marks omitted). Business conduct cannot be "unfair" if it does not "offend[ ] an established public policy" and is not "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1268 (4th Dist. 2006) (internal quotation marks omitted). Conduct is considered "fraudulent" within the meaning of section 17200 only if "members of the public are likely to be deceived" by that conduct. *Id.* at 1274. In addition, under section 17204, a plaintiff may bring an action only if the plaintiff "suffered injury in fact and . . . lost money or property" as a result of the alleged conduct. Cal. Bus. & Prof. Code § 17204.

As explained below, plaintiffs fail to allege facts sufficient to satisfy any of the potential grounds for relief under section 17200.

### A.     AT&T's Alleged Under-Reimbursement of Developers Does Not Violate Its Tariff; Any Such Claim Would Have To Be Resolved by the California PUC in the First Instance

**1.**     To allege that AT&T's conduct is "unlawful" within the meaning of section 17200, plaintiffs must allege a violation of some other law. *See Farmers Ins.*, 2 Cal. 4th at 383 ("an action . . . to redress an unlawful business practice 'borrows' violation of other laws") (internal

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

quotation marks omitted).  Plaintiffs claim that AT&T's conduct "was and is unlawful . . . because this conduct violates the regulatory requirements for repayment under California's Rule 15 and the Nevada Tariff."  Compl. ¶ 86.  The tariffs provide no support for this claim.

*First*, in the case of commercial or mixed-use subdivisions, AT&T has no obligation under the California tariff to bear the cost of installation of the "supporting structure" needed for its line extension.  Rather, the developer "will construct to [AT&T's] specifications and deed to [AT&T] the complete underground supporting structure."  Schedule Cal. P.U.C. No. A2.1.15.C.2.d.  AT&T's obligation is to "provide the conduit material" or to "reimburse the applicant at [AT&T's] current cost" for that material.  *Id.* No. A2.1.15.C.2.a.  Only in cases where AT&T's specifications "include transiting conduit" to serve *other* properties, is AT&T required to reimburse the developer the "incremental cost attributable to transiting conduit over and above" certain defined costs, pursuant to prior agreement.  *Id.* No. A2.1.15.C.2.b.  Only after that supporting structure is in place, is AT&T required to "complete the line extension at its expense." *Id.* No. A2.1.15.C.2.e.

Plaintiffs do not allege any violation of this provision.  They do not allege that plaintiffs ever constructed a commercial or mixed-use development that required a line extension.  *See* Compl. ¶ 73 (referring to construction of "38-lot *residential* property development") (emphasis added); *id.* ¶ 76 (referring to "8-lot *residential* property development") (emphasis added). Accordingly, they have suffered no injury as a result of any supposed violation of this tariff provision, and cannot bring an action under section 17200 as a class representative.  *See* Cal. Bus. & Prof. Code §§ 17203, 17204 (providing that a person "may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204" – that is, the person has "suffered injury in fact and has lost money or property as a result of the unfair competition").  Moreover, plaintiffs fail to allege that AT&T's reimbursement – provided in a "lump-sum[ ]" that "include[s] both the price of the materials and the cost of their installation" – ever failed to meet this standard.

---

9                                                                    425686

*Second*, in the case of residential developments, AT&T commits to construction of line extensions "at its expense," with AT&T paying a "pro-rata" share of the cost of trenches that are jointly occupied.  Schedule Cal. P.U.C. No. A2.1.15.C.1.a.  Plaintiffs do not allege that AT&T has ever attempted to charge a developer for the construction of line extensions when AT&T itself did the work.  To the contrary, plaintiffs allege that AT&T informs developers that "it can provide . . . trenching and materials itself" for line extensions – albeit on a schedule that developers may find too slow.  Compl. ¶ 60.  Plaintiffs argue that this provision should be understood to require – in cases where developers choose to construct facilities used for line extensions – that AT&T fully *reimburse* developers for their cost of constructing the facilities in question.  *See id.* ¶ 46 (alleging that AT&T "must reimburse [developers] for the full cost" of constructing the facilities).  But the tariff does not require such reimbursement.  Instead, the reimbursement reflects terms agreed to, in advance, by developers and AT&T.  Nothing in the tariff purports to prohibit such arrangements.

There is likewise no support for plaintiffs' claims regarding the Nevada tariff.  As an initial matter, because the Nevada tariff governs conduct only in Nevada – not in California – it cannot be the basis for a claim under section 17200.  *See Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (4th Dist. 1999) (courts must "presume the Legislature did not intend the statutes of this state to have force or operation beyond the boundaries of the state"); *id.* at 224 (the Legislature did not " 'inten[d] to encompass *conduct* occurring in a foreign jurisdiction in the prohibitions and remedies of a domestic statute.' ") (quoting *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1059 n.20 (1999)).  And, as with the California tariff, nothing in the Nevada tariff purports to require AT&T to reimburse developers for construction based on the developers' costs, rather than in accordance with arrangements agreed to in advance between the developers and AT&T.

To be sure, AT&T may not be able to accommodate the work schedule of each developer, and, as the complaint alleges, developers may find it cheaper and more convenient to construct facilities on their own rather than to wait on AT&T.  But, in that case, it is perfectly reasonable

425686

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

1    for the parties to agree in advance to the amount of reimbursement, and there is nothing in the

2    tariffs that proscribes that practice or requires otherwise.

3        **2.**    If there were any doubt that AT&T's alleged reimbursement practice is permissible

4    under its tariff, this Court should not adjudicate the claim, but should instead dismiss the claim

5    pursuant to the doctrine of primary jurisdiction.  Primary jurisdiction "'applies where a claim is

6    originally cognizable in the courts, and comes into play whenever enforcement of the claim

7    requires the resolution of issues which, under a regulatory scheme, have been placed within the

8    special competence of an administrative body.'"  *Farmers Ins.*, 2 Cal. 4th at 390 (quoting *United*

9    *States v. Western Pac. R.R.*, 352 U.S. 59, 63-64 (1956)) (emphasis removed).  The doctrine

10   "enhances court decisionmaking and efficiency by allowing courts to take advantage of

11   administrative expertise, and it helps assure uniform application of regulatory laws."  *Id.* at 391.

12   The doctrine applies in particular to claims brought under section 17200.  *See Wise v. Pacific Gas*

13   *& Elec. Co.*, 77 Cal. App. 4th 287, 298 (1st Dist. 1999) (citing *Farmers Ins.*, 2 Cal. 4th at 392-

14   95).

15       Although "[n]o rigid formula exists for applying the primary jurisdiction doctrine," *id.*

16   (internal quotation marks omitted), when a claim requires construction of disputed terms of a filed

17   tariff, and where the construction of the terms implicates regulatory policy, the issue falls within

18   the "exclusive primary jurisdiction" of the responsible administrative agency.  *Western Pac.*, 352

19   U.S. at 63.  In *Western Pacific*, for example, the issue presented was whether shipments of steel

20   bomb cases filled with napalm gel should be classified as "incendiary bombs," as the railroad

21   argued, or instead as "gasoline in steel drums," as the government maintained.  *Id.* at 60-61.  The

22   Supreme Court held that the issue had to be referred to the Interstate Commerce Commission.  As

23   the Ninth Circuit has explained, "the question involve[s] economic considerations that would not

24   be considered by simply 'reading the tariff language or applying abstract "rules" of

25   construction.'"  *United States v. Yellow Freight Sys., Inc.*, 762 F.2d 737, 740 (9th Cir. 1985)

26   (quoting *Western Pac.*, 352 U.S. at 67).

27

28

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

1    These principles bar initial adjudication of plaintiffs' tariff-based claims in this Court.

2    Plaintiffs do not rely on the plain terms of the tariff, but instead claim (incorrectly) that the tariff

3    embodies a state policy of requiring AT&T to reimburse developers for construction of facilities

4    at rates that compensate developers for all of their reasonable costs. If adopted, that policy could

5    have a substantial impact on AT&T, developers, and rate-payers. On the one hand, if agreeing to

6    allow developers to install new facilities on their own schedules would significantly inflate

7    AT&T's costs, AT&T might have a right to recover those added costs through regulated rate

8    increases; alternatively, AT&T might be forced to recover the costs through higher rates for

9    unregulated services. On the other hand, if allowing developers to install facilities according to a

10   schedule that they find convenient meant significant added costs for AT&T, AT&T might refuse

11   to provide this accommodation and instead simply install all facilities itself. That change might

12   well *increase* the effective costs for developers (who would often be required to delay certain

13   construction activities to permit AT&T to finish the necessary work). The relief that plaintiffs

14   seek might well make developers worse off, not better. These are matters that the responsible

15   public utility commission can take into account as a function of its regulatory expertise and its

16   ability to seek public comment. Ultimately, resolution of the question would implicate regulatory

17   policy judgments that lie within the state commissions' discretion. This Court should not seek to

18   substitute its judgment for that of the state commission.[4]

19   Furthermore, each application of any general policy to specific facts would require

20   application of administrative expertise and judgment – as in *Western Pacific*. For example,

21   plaintiffs presumably would concede that, if they fail to accomplish an installation in an efficient

22   manner and incur unreasonable costs, they should not be permitted to recover those costs from

23

24   [4] This case is not like *Cundiff v. GTE California Inc.*, 101 Cal. App. 4th 1395 (2d Dist. 2002), in
     which the court found primary-jurisdiction doctrine inapplicable to a claim that defendants had

25   misled consumers about the nature of charges imposed for obsolete or nonexistent telephones.
     Unlike the complaint here, that complaint did not implicate the construction of any tariff or

26   challenge the defendants' compliance with their tariff obligations; instead, the complaint alleged
     that defendants had deceived customers about the nature of certain charges imposed. *See id.* at

27   1413.

28

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

AT&T. Whether, in a *particular* case, a developer's proposed costs are reasonable and whether a particular method of estimating reasonable costs (for example, use of a state-wide average or regional pricing matrix) is appropriate are the sorts of judgments that are within the exclusive competence of the California PUC. *See Digital Communications Network, Inc. v. AT&T Wireless Servs.*, 63 F. Supp. 2d 1194, 1200 (C.D. Cal. 1999) ("The Ninth Circuit has recognized that . . . issues of reasonableness implicate primary jurisdiction.") (internal quotation marks omitted).

### B.  AT&T's Alleged Practices with Respect to Reimbursement of Developers Is Not "Unfair"

In the absence of any regulatory obligation to reimburse developers for their full cost of constructing facilities that AT&T uses to provide telecommunications service, there is nothing "unfair" about AT&T and developers agreeing in advance to the terms that will govern the extension of AT&T's service to new developments. Although the standard for determining whether "a particular business practice is unfair" is "currently in flux," it is clear that, in the absence of deception or other substantive wrong – not alleged here – a court will not "review the fairness of contracts" under section 17200. *Spiegler v. Home Depot U.S.A., Inc.*, ___ F. Supp. 2d ___, 2008 WL 1848292, at *6-*7 (C.D. Cal. 2008) (internal quotation marks omitted).

As alleged in the complaint, before a developer constructs new facilities that AT&T will use to extend service to a new development, the parties enter into "a contract, called a 'trench agreement,'" that governs the developer's obligation "to install trenching and materials" and that also provides for payments by AT&T. Compl. ¶ 62; *see id.* ¶¶ 63, 66. There is no allegation that AT&T has failed to abide by its obligations under these trench agreements. *Cf. Spiegler*, 2008 WL 1848292, at *7 (rejecting section 17200 claim where "[d]efendants complied with the express terms of the contracts, and charged plaintiffs in accordance with their terms"). Despite plaintiffs' rhetoric – referring to AT&T's conduct as "immoral, unethical, oppressive, . . . unscrupulous . . . [and] underhanded," Compl. ¶ 87 – the facts alleged in the complaint make clear that plaintiffs' sole complaint is that their trench agreements with AT&T do not provide them with everything they want – a result that is neither unfair nor unusual in the case of a negotiated contract. *See*

1   *Twombly*, 127 S. Ct. at 1964-65 ("a plaintiff's obligation to provide the 'grounds' of his

2   'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

3   the elements of a cause of action will not do") (alteration in original). Such an inquiry into the

4   substantive fairness of a valid contract – and plaintiffs do not claim that the contracts at issue here

5   are void – is barred. *See Samura v. Kaiser Found. Health Plan, Inc.*, 17 Cal. App. 4th 1284, 1299

6   & n.6 (1st Dist. 1993).[5]

7           In short, there is nothing "unfair" about asking developers to bear part of the cost of

8   constructing new facilities that benefit them.

9   **C.    Plaintiffs Fail To Allege Any "Fraudulent" Business Conduct by AT&T**

10          To allege that conduct is "fraudulent" within the meaning of section 17200, a plaintiff

11  must allege facts sufficient to show that "members of the public are likely to be deceived" by the

12  conduct in question. *Bardin*, 136 Cal. App. 4th at 1274 (internal quotation marks omitted).

13  Plaintiffs fail to make any such allegations.

14          The sole basis for plaintiffs' claim that AT&T's conduct was "fraudulent" is that

15  developers were "likely to be deceived by AT&T's presentation of reimbursement agreements

16  that purported to be consistent with AT&T's reimbursement obligations, but were not." Compl.

17  ¶ 88. As explained above, plaintiffs have mischaracterized the underlying tariffs; there is nothing

18  inconsistent between the proposed agreements and AT&T's regulatory obligations under the

19  tariff. Further, AT&T's tariffs are publicly filed documents. Developers are perfectly capable of

20  determining whether AT&T's trench agreements are consistent with the tariffs without relying on

21  any alleged representation by AT&T. As a court of this district observed in a related context,

22  "[s]ince utility rates are set forth in public documents, a consumer is presumed aware of the filed

23

---

24  [5] Plaintiffs also claim that defendants' conduct is unfair because "the Supplier Defendant has
    obtained illegal monopoly concessions." Compl. ¶ 87. But the complaint makes clear that

25  plaintiffs' only grievance is with under-reimbursement, not with the fact that they are required to
    purchase products meeting particular specifications. *See id.* (claiming that the conduct is unfair

26  because plaintiffs are "force[d] . . . to bear costs that by law must be paid by AT&T"). In any
    event, as explained below, there is no "illegal monopoly" when AT&T requires developers to buy

27  a particular supplier's materials for a particular project.

28

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

1   rate." *Smith v. Sprint Communications Co.*, No. C 96-2067 FMS, 1996 WL 1058204, at *5 (N.D.

2   Cal. Sept. 13, 1996). Indeed, as a matter of utility law, one *cannot* rely on the representation of a

3   utility that deviates from its filed tariffs. *See AT&T Co. v. Central Office Tel., Inc.*, 524 U.S. 214,

4   222 (1998). Developers – sophisticated "repeat players" – are perfectly able to evaluate whether

5   AT&T's practices are consistent with its tariffs. Plaintiffs allege no facts to support their claim

6   that developers are "likely to be deceived." Compl. ¶ 88. *Twombly* confirms that plaintiffs may

7   not rely on such unsupported and implausible conclusory allegations. 127 S. Ct. at 1968

8   (rejecting proposition that "a wholly conclusory statement of claim" can survive a motion to

9   dismiss).

10  **II.     THE EXISTENCE OF AN EXPRESS CONTRACT BARS PLAINTIFFS'**

11  **        UNJUST-ENRICHMENT CLAIM**

12          A claim of unjust enrichment – also referred to as a claim for restitution – is a quasi-

13  contract claim, in which a quasi-contractual obligation is imposed in the absence of any actual

14  contractual agreement. *See California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,

15  94 Cal. App. 4th 151, 171 n.23 (4th Dist. 2001). "However, as a matter of law, a quasi-contract

16  action for unjust enrichment does not lie where, as here, express binding agreements exist and

17  define the parties' rights." *Id.* at 172; *see also LeasePartners Corp. v. Robert L. Brooks Trust*

18  *Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) ("An action based on a theory of unjust

19  enrichment is not available when there is an express, written contract, because no agreement can

20  be implied when there is an express agreement."). Plaintiffs affirmatively allege that AT&T

21  "nearly always requires the developer to enter into a contract," Compl. ¶ 62, and that both

22  plaintiffs allegedly entered into a trench agreement with AT&T, *see id.* ¶¶ 73, 76. Accordingly,

23  plaintiffs cannot pursue any claim for unjust enrichment.

24  **III.    PLAINTIFFS FAIL TO ALLEGE ANY ANTITRUST VIOLATION**

25          Plaintiffs' antitrust claims are directed exclusively at alleged agreements between AT&T

26  and Oldcastle. As relevant to AT&T, plaintiffs claim that these agreements constitute

27  unreasonable restraints of trade under Section 1 of the Sherman Act; that AT&T has conspired to

28

15                                              425686

1  monopolize the market for AT&T-compatible vaults in violation of Section 2 of the Sherman Act;

2  and that AT&T has violated California and Nevada antitrust law.

3     As an initial matter, as thoroughly briefed by defendant Oldcastle, plaintiffs have failed to

4  allege that they purchased any AT&T-compatible vaults, either directly or indirectly.

5  Accordingly, these plaintiffs lack any claim based on supposed harm to competition in the alleged

6  market for such vaults. *See also infra* pp. 19-21.

7     In any event, plaintiffs' allegations fail to state a claim under the Sherman Act, and their

8  state-law antitrust claims fail for the same reasons.

9  **A.    Alleged Under-Reimbursement of Developers – Resulting from AT&T's**

10  **Alleged Exercise of Market Power – Creates No Cognizable Harm to**

11  **Competition**

12     Harm to competition – and resulting antitrust injury to plaintiffs – is a *sine qua non* for

13  any antitrust claim under Section 1 and Section 2 of the Sherman Act. *See McGlinchy v. Shell*

14  *Chem. Co.*, 845 F.2d 802, 811-13 (9th Cir. 1988). Here, plaintiffs fail to allege that their injury

15  stemmed from any harm to competition – as opposed to the exercise of *lawful* market power by

16  AT&T.

17     Plaintiffs seek to create the appearance of competitive harm by designating the developers

18  as the "purchasers" of the vaults and asserting that, as a result of the AT&T/Oldcastle

19  arrangement, they have become "captive customers" who are charged "high[er] prices for

20  [Oldcastle's] telephone vaults" than they would be if AT&T had not designated a sole provider.

21  Compl. ¶ 125. This is nothing more than artful pleading.

22     In substance, plaintiffs' claim is that, as a result of the Oldcastle/AT&T agreement, it costs

23  plaintiffs more to connect to AT&T's network – because they receive less reimbursement relative

24  to the price of the vaults when they convey the vaults to AT&T in exchange for interconnection.

25  But, as the allegations of the complaint make clear, it is not any agreement between AT&T and

26  Oldcastle that causes plaintiffs to pay more to connect to AT&T's network. Rather, the higher

27  costs are entirely a function of AT&T's market power in the provision of "land-line telephone

28

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

1   services" exercised in the contractual arrangements – or "trench agreements" – between AT&T

2   and plaintiffs. *See, e.g.*, Compl. ¶ 67.

3       As plaintiffs admit, AT&T allegedly is able to under-reimburse (or over-charge)

4   developers for interconnection because (1) the developers either want or need to connect to

5   AT&T's network, and (2) the applicable state law requires AT&T to own all the infrastructure in

6   the public rights-of-way through which its network runs. Even in the absence of the alleged

7   contract between AT&T and Oldcastle, AT&T still would possess this lawful market power and

8   the lawful right to charge (through under-reimbursement or otherwise) whatever price the market

9   might bear for the right by developers to connect to its network.[6] That market power, and

10  AT&T's exercise of it, are neither enhanced by nor dependent upon any contract with Oldcastle or

11  any "market power" that Oldcastle allegedly enjoys in the "vault" market. The allegations

12  concerning Oldcastle are simply irrelevant.

13      Plaintiffs' allegations thus boil down to nothing more than the claim that a *lawful*

14  monopolist is imposing costs or charges on them that they should not have to bear to connect to

15  its network. The Supreme Court's consistent response to such claims is that they do not amount

16  to violations of the antitrust law. "The mere possession of monopoly power, and the concomitant

17  charging of monopoly prices, is not only not unlawful; it is an important element of the free-

18  market system." *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S.

19  398, 407 (2004).

20      The claim that AT&T's under-reimbursement violates its *regulatory* obligations – even if

21  such a claim were properly alleged, which it is not – does not affect this conclusion. In fact, far

22  from supporting plaintiffs' claim, the existence of regulation provides an additional reason for the

23  Court to resist expansion of the antitrust laws to reach the conduct alleged here. "[A]ntitrust

24  analysis must sensitively recognize and reflect the distinctive economic and legal setting of the

25  _____

26  [6] And, in this case, if the developers are dissatisfied with the reimbursement offered by AT&T,
    they may choose to have AT&T install the network infrastructure itself as provided for in the
    tariffs, albeit on AT&T's schedule, which may be more costly to the developers in the long run. It

27  is an economic choice, not an antitrust violation.

28

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

1 | regulated industry to which it applies." *Trinko*, 540 U.S. at 411 (internal quotation marks

2 | omitted; alteration in original). The existence of regulation means that "the additional benefit to

3 | competition provided by antitrust enforcement will tend to be small, and it will be less plausible

4 | that the antitrust laws contemplate such additional scrutiny." *Id.* at 412.

5 |     **B.**    **Plaintiffs' "Conspiracy To Monopolize" Claim Fails for the Same Reason as**

6 |              **Their Section 1 Claim**

7 |     "Because [plaintiffs'] claim under § 1 fails, its claim of a conspiracy to monopolize under

8 | § 2 based on the same conduct necessarily fails as well." *Nova Designs, Inc. v. Scuba Retailers*

9 | *Ass'n*, 202 F.3d 1088, 1092 (9th Cir. 2000). To allege a claim for conspiracy to monopolize,

10 | plaintiffs must allege a specific intent to create a monopoly and resulting antitrust injury. *See*

11 | *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1154 (9th Cir. 2003). As explained

12 | above, however, plaintiffs allege harm stemming from under-reimbursement by AT&T, not as the

13 | result of any restrain on competition in any supply market. Accordingly, their claim under

14 | Section 2 fails.

15 |     **C.**    **As Indirect Purchasers of Telephone Vaults, Developers Cannot Pursue**

16 |              **Claims for Damages**

17 |     Even if plaintiffs could articulate an antitrust claim based on harm to a market for AT&T-

18 | compatible vaults, they would lack standing to pursue any claim for damages. "The Supreme

19 | Court in *Illinois Brick v. Illinois*, 431 U.S. 720, 736 (1977), held 'indirect purchasers' may not

20 | recover antitrust damages." *Kendall*, 518 F.3d at 1048 (parallel citations omitted). Here,

21 | plaintiffs specifically allege that they do not purchase telephone vaults but instead "*invariably*

22 | employ 'underground contractors' to make these purchases for them." Compl. ¶ 104 (emphasis

23 | added). As a result, it is those contractors, not plaintiffs, who are the direct purchasers of the

24 | AT&T-compatible vaults. Accordingly, their Sherman Act claims for damages based on anti-

25 | competitive conduct in the supposed market for A vaults – whether articulated under Section 2 or

26 | under Section 1 – are barred.

27

28

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

1

**D.    Plaintiffs' State Antitrust Claims Fail for the Same Reasons**

2      Plaintiffs' claims under California and Nevada state antitrust laws fail for the same

3   reasons as their claims under the Sherman Act. "The Cartwright Act is patterned after the

4   Sherman Act, and 'federal cases interpreting the Sherman Act are applicable to problems arising

5   under the Cartwright Act.'" *Nova Designs*, 202 F.3d at 1092 (quoting *Marin County Bd. of*

6   *Realtors, Inc. v. Palsson*, 16 Cal. 3d 920, 925 (1976) (in bank)). Likewise, the provisions of the

7   Nevada Unfair Trade Practices Act shall be "construed in harmony with prevailing judicial

8   interpretations of the federal antitrust statutes." Nev. Rev. Stat. § 598A.050. Accordingly,

9   plaintiffs' failure to allege a cause of action under Section 1 or Section 2 is likewise fatal to its

10  state-law antitrust claims.

11  **IV.    PLAINTIFFS LACK STANDING TO PURSUE ANTITRUST CLAIMS OR**

12  **CLAIMS BASED ON AT&T'S CONDUCT IN NEVADA**

13      Finally, plaintiffs lack standing to pursue their antitrust claims or any claim based on

14  Nevada law or the Nevada tariff; accordingly, despite their invocation of class-action procedures,

15  all of those claims should be dismissed. "In class actions, the named representatives must allege

16  and show that they personally have been injured, not that injury has been suffered by other,

17  unidentified members of the class[.]" *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018,

18  1022 (9th Cir. 2003) (internal quotation marks omitted). In determining standing, "each claim

19  must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one

20  named plaintiff has suffered the injury that gives rise to that claim." *Wooden v. Board of Regents*,

21  247 F.3d 1262, 1288 (11th Cir. 2001) (internal quotation marks omitted). "A plaintiff . . . cannot

22  circumvent the standing requirement simply because the plaintiff files his suit in a class action."

23  *Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998, 1022 (N.D. Cal. 2006) (internal

24  quotation marks omitted); *see also Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir.

25  1970) ("What [a plaintiff] may not achieve himself, he may not accomplish as a representative of

26  a class."). "Because individual standing requirements constitute a threshold inquiry, the proper

27

28

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

1    procedure when the class plaintiff lacks individual standing is to dismiss the complaint[.]"  1 Alba

2    Conte & Herbert Newberg, *Newberg on Class Actions* § 2:9 (4th ed. 2002).

3        Here, as defendant Oldcastle explains at length in its separate motion, plaintiffs do not

4    allege that they ever purchased any AT&T-compatible vault – the product market supposedly

5    affected by the alleged antitrust violation.  Nor do plaintiffs allege any injury as a result of

6    defendants' conduct in Nevada.  *See* Compl. ¶ 6 (alleging that plaintiff Bernau Development

7    Corporation "is a property developer that develops residential subdivisions *in California*")

8    (emphasis added); *id.* ¶ 7 (same allegation with respect to plaintiff La Collina dal Lago, L.P.); *id.*

9    ¶ 72 (alleging that plaintiffs have been under-reimbursed under the California tariff, but not the

10    Nevada tariff).  Accordingly, AT&T's conduct in Nevada has caused plaintiffs no injury, and any

11    decree of this Court directed at conduct in Nevada would not provide plaintiffs any remedy.  *See*

12    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (Article III standing requires plaintiff to

13    show injury-in-fact, causation, and redressability).

14        Courts have applied this principle to dismiss state antitrust claims where, as here, no

15    named plaintiff suffered an injury in the state in question.  In *In re Terazosin Hydrochloride*

16    *Antitrust Litigation*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001), plaintiffs brought claims under the

17    Sherman Act and various state statutes based on an alleged conspiracy to restrain trade in a

18    prescription drug.  The court held that, because none of the named plaintiffs had purchased the

19    drug in several of the states, "it is clear that no named plaintiff suffered an injury giving rise to an

20    antitrust claim" under those states' laws.  *Id.* at 1371.  Rejecting the argument that "plaintiffs were

21    entitled to assert other claims based on the rights of absent third parties," the Court dismissed

22    several claims on standing grounds.  *Id.* at 1371-72.

23        This Court's decision in *In re Connetics Corp. Securities Litigation*, 542 F. Supp. 2d 996

24    (N.D. Cal. 2008), does not lead to a different result.  That case holds that, once a named plaintiff

25    has standing to pursue a claim based on his or her own injuries, there is no requirement that the

26    plaintiff establish "individual standing" as to all claimed *injuries* of the class.  *Id.* at 1004.

27    Nevertheless, there must be *some* plaintiff with standing to raise each *claim* in the suit.  *Cf. Hevesi*

28

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI

1  *v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) (while the lead plaintiff did not have standing as

2  to each claim asserted, one or more of the other named plaintiffs did).  Plaintiffs lack such

3  standing here with regard to all of the purported antitrust claims and all claims based on Nevada

4  law or conduct taking place in Nevada.  Those claims must be dismissed.

5  **CONCLUSION**

6     The Court should dismiss the complaint.

7  Dated:    June 20, 2008                       Respectfully submitted,

8                                                AT&T Services, Inc. Legal Dept.

9
                                        By:     _____
10                                              Raymond P. Bolaños
                                                Attorneys for Defendants
11                                              PACIFIC BELL TELEPHONE COMPANY,
                                                NEVADA BELL TELEPHONE
12                                              COMPANY, and AT&T SERVICES, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

425686

AT&T's Notice of Motion and Motion To Dismiss Complaint – Case No. 08 CV 02451 SI