1   AARON M. PANNER
    Kellogg, Huber, Hansen, Todd, Evans, & Figel, PLLC
2   Sumner Square
    1615 M Street, N.W., Suite 400
3   Washington, DC 20036

4   RAYMOND P. BOLAÑOS, State Bar #142069
    J. SCOTT PAISLEY, State Bar #094236
5   AT&T Services, Inc. Legal Dept
    525 Market Street, 20th Floor
6   San Francisco, California 94105-2727
    Telephone:  (415) 778-1357
7   Facsimile:  (415) 882-4458

8   Attorneys for Defendants
    PACIFIC BELL TELEPHONE COMPANY,
9   NEVADA BELL TELEPHONE COMPANY and
    AT&T SERVICES, INC.

10

11

12                      UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14

15

16   LA COLLINA DAL LAGO, L.P.; BERNAU          ) Case No.  08 CV 02451 SI
     DEVELOPMENT CORPORATION; and all           )
17   similarly situated legal persons,          )
                                                )
18          Plaintiffs,                         ) REQUEST FOR JUDICIAL NOTICE OF
                                                ) DEFENDANTS PACIFIC BELL
19          vs.                                 ) TELEPHONE COMPANY, NEVADA BELL
                                                ) TELEPHONE COMPANY, and AT&T
20   PACIFIC BELL TELEPHONE COMPANY;            ) SERVICES, INC. ("AT&T") IN SUPPORT OF
     NEVADA BELL TELEPHONE COMPANY;             ) AT&T's MOTION TO DISMISS
21   AT&T SERVICES, INC.; and OLDCASTLE,        )
     PRECAST, INC.;                             ) [FRCP 12(b)(6)]
22                                              )
            Defendants.                         )
23                                              ) Date:    October 3, 2008
                                                ) Time:   9:00 a.m.
24                                              ) Courtroom 10, 19th Floor
                                                )
25                                              )
                                                )
26                                              ) The Honorable Susan Illston
                                                )
27  ─────────────────────────────────────────
                                                      1                              425666
28   Request for Judicial Notice
     Case No.  C 08 CV 02451 SI

1        Pursuant to Federal Rule of Evidence 201, defendants PACIFIC BELL TELEPHONE

2    COMPANY ("Pacific Bell"), NEVADA BELL TELEPHONE COMPANY ("Nevada Bell"), and

3    AT&T SERVICES, INC. respectfully request that the Court take judicial notice of the following:

4        1.    Attached hereto as Exhibit A are true and correct copies of excerpts of Section

5    2.1.15 of Pacific Bell's tariff governing Network and Exchange Services, filed with the California

6    Public Utilities Commission.

7        2.    Attached hereto as Exhibit B are true and correct copies of excerpts of Sections 4-

8    1-4.5 of the Nevada Bell's tariff governing Network and Exchange Services, filed with the

9    Nevada Public Utilities Commission.

10        The Court may take judicial notice of matters outside the pleadings, including tariffs filed

11    with state agencies. *MGIM Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *Smith v.*

12    *Sprint Comm.,* 1996 WL 1058204, n. 4 (N.D. Cal. 1996).

13

14    Dated:    June 20, 2008    Respectfully submitted,

15        AT&T Services, Inc. Legal Dept.

16

17    By:    _____
         Raymond P. Bolaños

18        Attorneys for Defendants
         PACIFIC BELL TELEPHONE COMPANY,

19        NEVADA BELL TELEPHONE COMPANY and
         AT&T SERVICES, INC.

20

21

22

23

24

25

26

27

28    Request for Judicial Notice
     Case No.  C 08 CV 02451 SI

425666

**EXHIBIT A**

Pacific Bell
San Francisco, California

SCHEDULE CAL.P.U.C. NO. A2.
4th Revised Sheet 95
Cancels 3rd Revised Sheet 95

NETWORK AND EXCHANGE SERVICES
A2.  GENERAL REGULATIONS

2.1  RULES (Cont'd)

2.1.15  RULE NO. 15 - LINE EXTENSIONS

A.  GENERAL

1.  Except as otherwise provided in these rules and as otherwise required by
    federal law for facilities placed on U.S. Government land, the Utility
    will construct, own and maintain line extensions along dedicated streets
    and acceptable easements which can be obtained without charge or condition
    or condemnation.

2.  Where the applicant requests a route or type of construction which is
    feasible but differs from that determined by the Utility, the applicant
    will be required to pay the estimated additional cost involved. [2]

3.  In lieu of all or part of the payment in 2. above, the applicant may
    furnish such materials or perform such work as may be mutually agreed
    between the Utility and the applicant.  Upon acceptance by the Utility,
    ownership of any material so furnished shall vest in the Utility. [2]

4.  In suburban areas, charges for line extensions apply as set forth in
    Schedule Cal.P.U.C. No. A4.3.

5.  Line extensions to serve temporary or speculative projects are subject to
    provisions of A2.1.13.

6.  Where its own operating conditions warrant, the Utility will construct and
    maintain its facilities underground at its expense.

7.  Only underground line extensions and service connections will be
    constructed to and within the following types of new subdivisions [1]; or
    new real estate developments, i.e., projects which do not satisfy the
    density requirement for a subdivision:  (See 8. and 9. following for
    exemptions to this requirement.)

  a.  Five or more lots for single-family and/or multi-family dwellings;
      unless:

    (1)  The lots within the residential subdivision or real estate development
         existed as legally described parcels prior to May 5, 1970, and an
         agreement has been entered into prior to May 5, 1972, with the electric
         utility for aerial service; or

NOTE 1:  As defined in Schedule Cal.P.U.C. No. A2.1.1.
NOTE 2:  Includes Income Tax gross-up amount, as listed in Schedule          (T)
Cal.P.U.C. No. A2.1.3,D.

Continued

| | | |
|---|---|---|
| Advice Letter No. 16092B | Issued by | Date Filed:  Oct. 24, 1991 |
| Decision No. | M. J. Miller | Effective:  Jan. 1, 1992 |
| | Regulatory Vice President | Resolution No. E-3243 |

 Ex. A

Pacific Bell                                          SCHEDULE CAL.P.U.C. NO. A2.
San Francisco, California                                      1st Revised Sheet 96
                                               In Lieu of Original Sheet 96 Rejected

NETWORK AND EXCHANGE SERVICES
A2.  GENERAL REGULATIONS

2.1  RULES (Cont'd)
2.1.15  RULE NO. 15 - LINE EXTENSIONS (Cont'd)
 A.  GENERAL (Cont'd)
  7.  (Cont'd)
   a. Five or more lots for single-family and/or multi-family dwellings;
      unless: (Cont'd)

    (2) The minimum parcel size within the new residential subdivision or real
        estate development, identifiable by a map filed with the local
        governmental authority, is 3 acres and the applicant for the extension
        shows that all of the following conditions exist:

        Local ordinances do not require underground construction.

        Local ordinances or land use policies do not permit further division
        of the parcels involved so that parcel sizes less than 3 acres can be
        formed.

        Local ordinances or deed restrictions do not allow more than one
        single-family dwelling or accommodation on each parcel, or any portion
        of a parcel, of less than 3 acres.

        New aerial line extensions and service connections constructed to or
        within a residential subdivision or real estate development would not
        be in proximity to[1] and visible from[1] a designated scenic highway,
        state or national park, or other area determined by a governmental
        agency to be of unusual scenic interest to the general public.

        Exceptional circumstances do not exist which in the Utility's opinion
        warrant the installation of underground line extension or service
        connection facilities.  Whenever the Utility invokes this provision
        the circumstances shall be described promptly in a letter to the
        Commission, with a copy to the applicant for the extension.

   NOTE 1:  As defined in Schedule Cal.P.U.C. No. A2.1.1

Continued

| Advice Letter No. 14889 | Issued by | Date Filed: Mar. 4, 1985 |
|---|---|---|
| Decision No. | Robert B. Roche | Effective: Apr. 18, 1985 |
| | Executive Director - State Regulatory | Resolution No. T10914 |

Pacific Bell                                    SCHEDULE CAL.P.U.C. NO. A2.
San Francisco, California                              1st Revised Sheet 97
                                      In Lieu of Original Sheet 97 Rejected

NETWORK AND EXCHANGE SERVICES
A2.   GENERAL REGULATIONS

2.1  RULES (Cont'd)
2.1.15  RULE NO. 15 - LINE EXTENSIONS (Cont'd)
 A.   GENERAL (Cont'd)
   7.  (Cont'd)
     a. Five or more lots for single-family and/or multi-family dwellings; unless:
        (Cont'd)
       (2) (Cont'd)

          The Utility does not elect to install the extension underground for its
          own operating convenience.  Whenever the Utility elects to install the
          extension underground for its operating convenience, the extra cost
          compared with overhead shall be borne by the Utility.

     b. Five or more dwelling units in two or more buildings located on a single
        parcel of land.

     c. Two or more enterprises on a single parcel or on two or more contiguous
        parcels of land; where each enterprise is to be engaged in; trade, the
        furnishing of services, or a process which creates a product or changes
        materials into another form or product (e.g., shopping centers; sales,
        commercial, or industrial enterprises; business or professional offices;
        educational or government complexes; shops; and factories).

   8. If an applicant elects to be served by aerial electrical facilities which
      are not in violation of a legal prohibition imposed by a municipality,
      the CPUC or other governmental agency having jurisdiction, the Utility is
      not obligated to construct underground.

   9. In exceptional circumstances, when the application of these rules appears
      impractical or unjust, the Utility or the applicant may refer the matter
      to the Public Utilities Commission for special ruling or for approval of
      mutually agreed upon special conditions prior to commencing construction.

  10. Where an applicant requests service within a real estate project in
      advance of construction of permanent underground facilities, service will
      be provided aerial or underground by means of temporary facilities,
      subject to the following:

     a. Arrangements have been made with the Utility for construction of
        permanent underground line extension and/or service connection
        facilities to and within the project in its entirety, in accordance with
        Schedule Cal.P.U.C. No. A2.1.15 and A2.1.16.

Continued

Advice Letter No. 14889          Issued by          Date Filed: Mar. 4, 1985

Decision No.                    Robert B. Roche     Effective: Apr. 18, 1985

                      Executive Director - State Regulatory     Resolution No. T10914

SBC California
San Francisco, California

SCHEDULE CAL.P.U.C. NO. A2.
4th Revised Sheet 98
Cancels 3rd Revised Sheet 98

NETWORK AND EXCHANGE SERVICES
A2. GENERAL REGULATIONS

2.1  RULES (Cont'd)
 2.1.15  RULE NO. 15 - LINE EXTENSIONS (Cont'd)
  A.  GENERAL (Cont'd)
   10. (Cont'd)

   b. The temporary facility shall be for the use of the applicant and this
      facility shall not be used to serve applicants for permanent telephone
      service in advance of the provision of permanent facilities, unless as        (N)
      determined by the Utility, extenuating circumstances preclude the
      construction of permanent facilities before permanent telephone service
      is needed.  The Utility reserves the right to utilize the supporting          (N)
      structure to be constructed hereunder to provide service to any
      subsequent applicants for temporary facilities within this real estate
      project.

   c. The temporary facility shall be removed, abandoned, or rearranged at the
      discretion of the Utility, at the time service from this facility is
      discontinued or at the time this service can be connected to the
      permanent underground facilities, whichever occurs first.

   d. Applicant shall pay in advance a nonrefundable amount equal to the
      estimated cost installed plus the estimated cost of removal, less the
      estimated salvage, of all facilities necessary to furnish this service.[1]

  B.  AERIAL LINE EXTENSIONS

   1. Aerial Line Extensions

      Aerial line extensions will be constructed at the Utility's expense,
      subject to the general provisions in A. preceding.

  C.  UNDERGROUND LINE EXTENSIONS

   1. Within new subdivisions in their entirety where all requirements will be
      for residential service or where buried cable is to be used for the line
      extension facilities or where another telecommunications carrier             (N)
      constructs facilities without cost to the applicant:                         (N)

    a. The Utility will construct an underground extension at its expense.
       Trenches will be occupied jointly, where economy dictates, upon payment
       by the Utility of its pro-rata cost thereof.

    b. The applicant will perform or pay for any pavement cutting and repaving,
       and for clearing the route and grading it to within six inches of final
       subgrade, all in time to give the Utility a reasonable construction
       period.
   NOTE 1: Includes Income Tax gross-up amount, as listed in Schedule Cal.P.U.C.
           No. A2.1.3,D.

Continued

Advice Letter No. 26458

Decision No.

Issued by

Rhonda Johnson

Executive Director

Date Filed: Mar. 21, 2005

Effective: May 1, 2005

Resolution No.

SBC California
San Francisco, California

SCHEDULE CAL.P.U.C. NO. A2.
5th Revised Sheet 99
Cancels 4th Revised Sheet 99

NETWORK AND EXCHANGE SERVICES
A2. GENERAL REGULATIONS

2.1  RULES (Cont'd)
2.1.15  RULE NO. 15 - LINE EXTENSIONS (Cont'd)
 C.  UNDERGROUND LINE EXTENSIONS (Cont'd)

  2.  Within new subdivisions in their entirety wherein all or a portion of the requirement will be for business service and the Utility determines that an underground supporting structure is needed:

    a.  The Utility will provide the conduit material, and metallic manhole covers where specified, or, where mutually agreeable, the applicant may provide the conduit material to the Utility's specifications and the Utility will reimburse the applicant at the Utility's current cost for that type of conduit.

    b.  If the specifications in d. following include transiting conduit to serve parcels outside the subdivision, the Utility will provide all conduit material and reimburse the applicant their incremental cost attributable to transiting conduits over and above a total of four local and transiting conduits in any section of the underground supporting structure.  The applicant and the Utility shall agree upon the amount of such reimbursement before construction begins.

    c.  The applicant shall be responsible for loss, unreasonable breakage and any liability in connection with the conduit material or manhole covers provided to the applicant by the Utility.

    d.  The applicant will construct to the Utility's specifications and deed to the Utility the complete underground supporting structure.[1]

    e.  The Utility will complete the line extension at its expense, subject to the provisions of 1. preceding where buried cable is to be used.

NOTE 1:  Includes Income Tax gross-up amount, as listed in Schedule Cal.P.U.C. No. A2.1.3,D.
 Material omitted now located on Sheet 99.1.

Continued

Advice Letter No. 26458

Decision No.

Issued by

Rhonda Johnson

Executive Director

Date Filed: Mar. 21, 2005

Effective: May 1, 2005

Resolution No.

SBC California
San Francisco, California

SCHEDULE CAL.P.U.C. NO. A2.
Original Sheet 99.1

NETWORK AND EXCHANGE SERVICES
A2. GENERAL REGULATIONS

2.1  RULES (Cont'd)
2.1.15  RULE NO. 15 – LINE EXTENSIONS (Cont'd)
 C.  UNDERGROUND LINE EXTENSIONS (Cont'd)

   3.  Line extensions to new subdivisions from the Utility's planned          (T) (L)
       distribution facilities are based upon the Utility's current Long Range
       Outside Plant Plan.  This Plan designates the physical routing of       (L)
       distribution facilities to and within a given Distribution Area in order (N)
       to design, operate and administer the Utility's network in the most
       economical and efficient manner. Line extensions to serve applicants in a
       given Distribution Area may only be constructed, as determined by the
       Utility, from the Distribution Area designated by the current LROPP.    (N)

   a.  For that portion of an extension which is 200 feet or less in length    (L)
       and is adjacent to the boundary of a new subdivision, responsibilities
       for the cost of said portion will be the same as those within a
       subdivision, as determined by 1. or 2. preceding for the type of
       construction employed.                                                  (L)

   b.  In those cases where the line extension must extend across an           (N)
       existing street to reach the development and the public agency will not
       permit open cutting for residential developments, the applicant is
       responsible for the estimated difference in cost between normal
       trenching and conduit placement (exclusive of pavement cutting and
       repaving) and the cost of boring.  For commercial developments the
       applicant is responsible for the cost of the bore less the material cost
       of conduit.                                                             (N)

   (L)  Formerly located on Sheet 99.

                                                              Continued

Advice Letter No. 26458                Issued by              Date Filed: Mar. 21, 2005

Decision No.                        Rhonda Johnson            Effective: May 1, 2005

                                  Executive Director          Resolution No.

SBC California
San Francisco, California

SCHEDULE CAL.P.U.C. NO. A2.
6th Revised Sheet 100
Cancels 5th Revised Sheet 100

NETWORK AND EXCHANGE SERVICES
A2. GENERAL REGULATIONS

2.1  RULES (Cont'd)
2.1.15  RULE NO. 15 - LINE EXTENSIONS (Cont'd)
  C.  UNDERGROUND LINE EXTENSIONS (Cont'd)
    3.  (Cont'd)

    c.  For the remainder of an extension outside the boundary of a new       (T)
        subdivision, the applicant will pay in advance a nonrefundable amount
        equal to three-fourths of the estimated difference in cost between the
        underground and equivalent aerial facilities.[1]  For underground       (N)
        installations the Utility is entitled to four conduits, the equivalent
        capacity of a pole line.  Where another telecommunications carrier
        constructs facilities without cost to the applicant, the remainder may
        be constructed subject to the provisions of C.1. preceding.             (N)

  4.  To and within new real estate developments in their entirety which do not
      satisfy the density requirement for a subdivision, line extensions will
      be constructed as in 1. through 3. preceding, provided:

    a.  The applicant will pay in advance the estimated total cost of the
        Utility's construction.  Any difference between the amount advanced and
        the actual cost shall be advanced or refunded, as the case may be,
        within 45 days after the actual cost is determined by the Utility.       (C)
        This adjusted advance, excluding any payment required by 3.b. preceding
        and the cost set forth in 1.b., 2.c. and d., and 3.a. preceding is       (T)
        refundable as provided following.[1]

    b.  When, within the first three year period after completion of the
        Utility's construction, the subdivision density requirement has been
        met, the Utility will refund the refundable advance in a. preceding.
        If, at the end of the three year period the subdivision density
        requirement has not been met, the Utility will refund that portion of
        the refundable advance proportional to the ratio of the then permanent
        telephone line andine termination density to the subdivision density     (D)
        requirement.  No interest will be paid on such advances.

  5.  All other underground line extensions.[1]

      If the applicant requests or is required, such as by local ordinance or    (N)
      municipal condition, for example, to have underground line extensions,     (N)
      in cases other than those included in 1. through 4. preceding, the
      applicant will pay in advance a nonrefundable amount equal to
      three-fourths of the estimated difference in cost between underground and
      equivalent aerial facilities.  Where another telecommunications carrier    (N)
      constructs line extensions without cost to the applicant, the line
      extension may be constructed at no cost to the applicant.                  (N)


  NOTE 1:  Includes Income Tax gross-up amount, as listed in Schedule
           Cal.P.U.C. No. A2.1.3,D.

                                                              Continued

Advice Letter No. 26458                    Issued by              Date Filed:  Mar. 21, 2005

Decision No.                                                      Effective:  May 1, 2005
                                        Rhonda Johnson

                                      Executive Director          Resolution No.

SBC California
San Francisco, California

SCHEDULE CAL.P.U.C. NO. A2.
3rd Revised Sheet 100.1
Cancels 2nd Revised Sheet 100.1

NETWORK AND EXCHANGE SERVICES
A2. GENERAL REGULATIONS

2.1  RULES (Cont'd)
2.1.15  RULE NO. 15 - LINE EXTENSIONS (Cont'd)

D.  APPLICATION CANCELLED MODIFIED OR DEFERRED BY AN APPLICANT FOR LINE
    EXTENSIONS TO AND WITHIN NEW SUBDIVISIONS AND REAL ESTATE DEVELOPMENTS

1. Cancellation of Application

a. Prior to the start of installation as defined in Schedule Cal.P.U.C. No.
   A2.1.1, no charge.

b. Where construction of line extension facilities has been started prior
   to the cancellation, a charge is applicable which is equal to the costs
   incurred in the design and construction, less net salvage of facilities    (N)
   removed and/or credit for facilities for which there is another
   requirement.  Where partially cancelled (one or more services or
   facilities, but not all), charges for such cancelled service or
   facilities shall apply.  Charges are determined as set forth in 4.
   following.[2]

2.  Change or Modification of an Application

a. Where a request for an alteration in an existing application for line
   extension facilities requires a new design, or a movement or physical
   alteration of facilities or equipment after the start of installation, a
   charge is applicable which is equal to the cost incurred in the design     (N)
   and construction, less net salvage of facilities removed and/or credit     (N)
   for facilities for which there is another requirement.  Where partially
   modified, charges for such modified service or facilities shall apply as
   stated above.  Charges are determined as set forth in 4. following.[2]

3.  Deferment of an Application[1]

a. An application for line extension facilities may be deferred for one or
   more periods, totaling in all not more than twelve (12) months beyond      (T)
   the service date last established prior to the start of installation,
   after which time it shall be completed or considered as cancelled and
   treated in accordance with 1.b. preceding.                                 (T)

NOTE 1: An extension of time beyond the twelve (12) month period requested by
        the applicant may be allowed at the discretion of the Utility in
        writing.
NOTE 2: Includes Income Tax gross-up amount, as listed in Schedule Cal.P.U.C.
        No. A2.1.3,D.

Continued

Advice Letter No. 26458                Issued by                 Date Filed: Mar. 21, 2005

Decision No.                         Rhonda Johnson              Effective: May 1, 2005

                                   Executive Director            Resolution No.

Pacific Bell
San Francisco, California

SCHEDULE CAL.P.U.C. NO. A2.
Original Sheet 100.2

NETWORK AND EXCHANGE SERVICES
A2.   GENERAL REGULATIONS

2.1  RULES (Cont'd)
2.1.15  RULE NO. 15 - LINE EXTENSIONS (Cont'd)                                    (N)
  D.  APPLICATION CANCELLED MODIFIED OR DEFERRED BY AN APPLICANT FOR LINE
      EXTENSIONS TO AND WITHIN NEW SUBDIVISIONS AND REAL ESTATE DEVELOPMENTS
      (Cont'd)

   4. Determination of Charges

      a. In determining the charge for 1., 2. and 3. preceding, each application
         of cancelled, modified or deferred service is treated as discontinued as
         of the date on which facilities were to have been placed in service.

      b. Such charges apply provided the applicant received written notice (signed
         by the applicant and Utility) at the time the request for such
         facilities was taken stating that charges would apply should the
         applicant request the cancellation, modification or deferment of the
         application for such facilities.

      c. Installation of line extension facilities is considered to have started
         as defined by "Start of Installation" in Schedule Cal.P.U.C. No. A2.1.1.

      d. Non-recoverable costs of engineering, labor, material, equipment and
         other related expenses incurred by the Utility as a result of the work
         performed will apply.  If an advance payment has been collected and
         held, it will be refunded subject to the applicable charges noted above. (N)

Continued

Advice Letter No. 15104          Issued by          Date Filed:  June. 2, 1986

Decision No.                    D. C. Shull          Effective:  Jul. 03, 1986

                    Executive Director - State Regulatory     Resolution No. T11048

EXHIBIT B

2

Nevada Bell                                    2nd Revised    Page No. 1
645 E. Plumb Lane, Reno, Nevada
Tariff P.S.C.N. No.  A4.            Cancelling 1st Revised    Page No. 1

## A4.  CONSTRUCTION CHARGES AND OTHER SPECIAL CHARGES

4.1  GENERAL

A.  DESCRIPTION

   Line extension charges within the suburban area of all exchanges apply in       (C)
   connection with the installation of or changes between all classes, types
   and grades of service, except farmer line and toll station service when .
   established by means of an extension to the Utility's plant consisting of
   underground cable or wire or pole construction and including extensions by
   means of poles to be owned by the Utility jointly with others and by means
   of contacts or contact space on poles of others.  All line extensions will
   be owned and maintained by the Utility.

B.  RATES AND CHARGES

   Extensions of plant necessary to provide telephone service:

                                                          Charge

   First 1,000 feet or less, per applicant[1]            no charge

   All additional footage[2]                            Based on Cost

   NOTE 1:  See Tariff P.S.C.N. A4.2 Regulations 3.

   NOTE 2:  See Tariff P.S.C.N. A4.2 Regulations 4 through 13.

Issued:  NOV 9 1987              Issued by
                              R. K. Van Allen
Effective:                       President

Advice No.  1490

Nevada Bell                                          1st Revised     Page No. 2
645 E. Plumb Lane, Reno, Nevada
Tariff P.S.C.N. No.   A4.           Cancelling   Original     Page No. 2

A4.  CONSTRUCTION CHARGES AND OTHER SPECIAL CHARGES

4.2  CONSTRUCTION ON PUBLIC HIGHWAYS OR OTHER EASEMENTS

A.  REGULATIONS

1. Other than in new residential subdivisions, if the applicant so elects, he
   may set the required poles or provide means suitable to the Utility for
   placing of underground cable or wire in excess of the distance for which
   there is no charge in accordance with the construction standards of the
   Utility, in lieu of the charges applicable, but in all instances the
   ownership of facilities shall be entirely vested in the Utility.  The type
   of construction, poles or underground, will be determined by the Utility.

2. Measurement of Distances

   For purposes of this tariff, all distance measurements are route distances
   measured from the Utility's nearest useable facilities to the terminal
   from which the applicant is served.  All routing and type of line
   extension shall be determined by the Utility, over the shortest practical
   route, subject to the availability of right-of-way.

3. Free Distance Allowances

   Each applicant shall be allowed 1,000 feet of free line extension to a
   premises, regardless of the number of lines or service subscribed to at
   that premises.  Where an applicant requests service at a different
   premises in the same area, a free line extension allowance will be
   applicable to each premises served.

4. Collective Application and Grouping of Applicants

   When construction is required to serve a new applicant, a survey is made
   of all prospects who might be served from the new construction or an
   extension thereof and who might benefit by being included in the project.
   Allowances are made only for those prospects making bona fide applications
   for service.

5. Apportionment of Charges

   Applicants are divided into two groups.  The first group includes all
   applicants whose collective allowance equals or exceeds the construction
   required to serve them.  No charge is made to such applicants.  The second
   group includes all remaining applicants on the project.  The overall
   charge for the project is divided equally among all applicants in the
   second group.

Issued:  March 13, 1985              Issued by
                                     R. K. Van Allen
Effective:  March 18, 1985           President

Advice No. 1381

FILING ACCEPTED
EFFECTIVE

MAR 1 8 1985

PUBLIC SERVICE COMMISSION
OF NEVADA

Nevada Bell                                      1st Revised     Page No. 3
645 E. Plumb Lane, Reno, Nevada
Tariff P.S.C.N. No.  A4.          Cancelling   Original     Page No. 3

A4.   CONSTRUCTION CHARGES AND OTHER SPECIAL CHARGES

4.2  CONSTRUCTION ON PUBLIC HIGHWAYS OR OTHER EASEMENTS (Cont'd)
A.   REGULATIONS (Cont'd)

   Exception:  No applicant is required to pay a higher charge than he would
              if the project were established for him alone.  Any difference
              between this charge and the average charge for the group is
              absorbed by the Utility.

6. Payment of Charges

   All line extension charges are payable in advance.  Charges shall be based
   on costs for construction of the supporting structure i.e. the required
   poles in the case of aerial facilities and/or trenching and backfill for
   placing underground cable or wire.  Such costs shall include labor,
   engineering, right-of-way, contracting, etc. in excess of the free
   distance allowance.

   When an extension to plant involves the use of joint poles previously
   acquired by the Utility in anticipation of an order for service and on
   which no exchange service wire or cable has been placed, the estimated
   construction costs on which charges to the applicant are computed shall
   not include the costs (original or current) to acquire the joint poles.

7. Charges to Subsequent Applicants

   When a request for service is received from a new applicant who can be
   served from a completed project, within five years from the date service
   was initially established for such project, the original charges for the
   entire project are reapportioned to include the new applicant.  The new
   applicant shall pay his proportional share of the reapportioned line
   extension charge as computed under A. Regulations 1. through 6. preceding
   and Tariff P.S.C.N. A4.1.

   Where additional construction is required for an applicant to be served
   from a project less than five years old, the charge for the project is
   recomputed as above providing such recomputation does not increase the
   charges to those customers served from the existing project.  Otherwise,
   the applicant shall be responsible only for the construction to serve his
   location.

   The minimum charge to the new applicant shall be that for the new
   construction required to serve his location.

Issued:  March 13, 1985              Issued by
                                     R. K. Van Allen
Effective:  March 18, 1985           President

Advice No. 1381

FILING ACCEPTED
EFFECTIVE

MAR 1 8 1985

PUBLIC SERVICE COMMISSION
OF NEVADA

Nevada Bell                                          1st Revised     Page No. 4
645 E. Plumb Lane, Reno, Nevada
Tariff P.S.C.N. No.  A4.            Cancelling   Original      Page No. 4

A4.  CONSTRUCTION CHARGES AND OTHER SPECIAL CHARGES

4.2  CONSTRUCTION ON PUBLIC HIGHWAYS OR OTHER EASEMENTS (Cont'd)
A.  REGULATIONS (Cont'd)

8. Refunds of Charges to Existing Subscribers When Additional Applicants are
   Connected

   When a project is recomputed as described in Regulation 7. above, existing
   subscribers will be refunded the difference between the original charges
   and the recomputed charges.  Recomputation of charges due to the addition
   of new applicants is made on the premise that there have been no
   disconnects.

   When applicant participation is involved, as provided in 1. above, such
   participation shall, for the purpose of determining refunds or charges, be
   computed under Tariff P.S.C.N. A4.1 Rates B.

9. Disconnects

   When one or more subscribers on a project disconnect, no refund is made of
   the line extension charge.  Charges to remaining subscribers are not
   affected by disconnects.

10. Reuse of Facilities

    When a subscriber disconnects service or moves off the project and service
    is established for a new applicant at the same location, any adjustment in
    charges is a matter for negotiation between the original subscriber and
    the new applicant.

11. Temporary or Speculative Business

    Line extension to provide service to an applicant engaged in temporary or
    speculative business, will be made on the condition that applicant pays to
    the Utility the total cost of the construction and removal of the line
    necessary in furnishing the service less the salvage value of the
    materials used.

12. Minimum Time Period

    Agreements, covering periods of not to exceed five years of telephone
    service, may be required by the Utility as a condition precedent to the
    establishment of the service when line extensions are necessary.

Issued:  March 13, 1985              Issued by
                                     R. K. Van Allen
Effective:  March 18, 1985           President

Advice No. 1381

FILING ACCEPTED
EFFECTIVE

MAR 1 8 1985

PUBLIC SERVICE COMMISSION
OF NEVADA

Nevada Bell
645 E. Plumb Lane, Reno, Nevada
Tariff P.S.C.N. No.  A4.

4th Revised        Page No. 5

Cancelling 3rd Revised      Page No. 5

A4.  CONSTRUCTION CHARGES AND OTHER SPECIAL CHARGES

4.2  CONSTRUCTION ON PUBLIC HIGHWAYS OR OTHER EASEMENTS (Cont'd)
A.  REGULATIONS (Cont'd)

13. Excessive Costs

When the revenue to be derived from the service to be served by a
particular line extension is not, in the opinion of the Utility,
sufficient to warrant the Utility assuming the costs of providing the
necessary construction, the applicant or applicants may be required to pay
all or a portion of such costs in lieu of the line extension charges set
forth in this schedule, the amount depending upon the circumstances in
each case.  Arrangements, other than those provided for in the foregoing
schedule, may also be made when a line extension involves submarine cable,
underground crossing of railroads, highways, or power lines, or long river
crossings or other unusual or disproportionately large construction
expenditures as compared with the usual type of plant construction.

14. Replacement of Aerial Facilities with Underground Facilities

a. The Utility will convert its aerial facilities in specified service
   districts established for the purpose of conversion, in accordance with
   the provisions set forth in Chapter 704 of Nevada Revised Statutes.

b. Upon the request of an individual applicant, aerial facilities may be
   replaced with underground facilities, providing the applicant requesting
   the change pays, in advance, a nonrefundable sum equal to the estimated
   cost of construction less the estimated net salvage value of the replaced
   aerial facilities.

c. The Utility may initiate the replacement of sections of its aerial
   facilities with underground facilities at Utility expense for structural
   design considerations or its operating convenience.

15. Potential customers in the areas in which rural improvement projects will    (N)
    be implemented as a result of the Commission's Order in Docket No. 91-2068
    may apply for and receive telephone service without the necessity of
    paying otherwise applicable line extension charges if such customer or
    customers' applications are received by the company at least 30 days prior
    to the date on which the company begins construction of the project to
    provide service to the specific rural improvement area in which the
    customer is requesting service.  Specific areas that have been identified
    and authorized for rural improvement pursuant to the Commission's decision
    in Docket No. 91-2068 are:  Nyala, Smokey Valley, Osgood toll region,
    Desert Valley toll region, Denio toll region, Currie, and Lages.           (N)

Issued: DEC 10 1991              Issued by
                                R. C. Blanz
Effective:                      President

Advice No. 1603

FILING ACCEPTED
EFFECTIVE

MAY 4 1992

Nevada Bell                                    2nd Revised     Page No. 6
645 E. Plumb Lane, Reno, Nevada
Tariff P.S.C.N. No.  A4.            Cancelling 1st Revised    Page No. 6

---

A4.  CONSTRUCTION CHARGES AND OTHER SPECIAL CHARGES

4.2  CONSTRUCTION ON PUBLIC HIGHWAYS OR OTHER EASEMENTS (Cont'd)
  A.  REGULATIONS (Cont'd)

   In addition, customers in the aforesaid areas who apply for service after     (N)
   the company commences construction to the area in which the customer is
   requesting service may also receive an extension of service without the
   necessity of paying applicable line extension charges if the extension of
   service to such customer can be accomplished without unduly interfering
   with the company's construction schedule or the extension of service to
   other customers within the area, and does not unreasonably increase the
   cost of providing service.  Any dispute regarding the implementation of
   this tariff provision may be referred to the Commission for resolution.      (N)

4.3  LINE EXTENSION AND SERVICE CONNECTION FACILITIES IN SUBURBAN AREAS

  A.  REGULATIONS

   The Utility shall not be obligated to provide trenching and backfilling
   for the service connection (drop) for new or additional service(s).  The
   Utility shall furnish wire or cable for the service connection (drop) from
   distribution facilities whether aerial or underground, at the Utility's
   expense.

   Aerial service connection facilities from aerial distribution facilities
   are furnished at the Utility's expense.  Aerial service connection
   facilities from underground distribution facilities are not provided
   unless an applicant specifically requests such an arrangement.  See Tariff
   P.S.C.N. A4.5 for special service arrangements.

---

Issued:  DEC 10 1991            Issued by
                                R. C. Blanz
Effective:                      President

Advice No.  1603

FILING ACCEPTED
EFFECTIVE

MAY 4 1992

PUBLIC SERVICE COMMISSION
OF NEVADA

Nevada Bell
645 East Plumb Lane, Reno, Nevada
Tariff P.U.C.N. No. A4.

2nd Revised Page No. 7

Canceling 1st Revised Page No. 7

A4.   CONSTRUCTION CHARGES AND OTHER SPECIAL CHARGES

4.4  UNUSUAL INSTALLATION

4.4.1  EXTENSION FOR NEW REAL ESTATE ADDITIONS                    (T)

 A.  REGULATIONS

  1. Extensions of Facilities to New Residential Subdivisions          (C)

   a. The Developer shall advance to the Utility in cash 50% of the      (D) (C)
      cost of that part of the extension of telephone facilities, which
      is more than 100 feet from the boundary of the subdivision.  The
      Utility will refund this advance in the manner provided by Nevada
      Administrative Code (NAC) 704A.550 "Refunds of advances."

      The extension means the transmission path between the customer's
      premise and the exchange carrier's main distribution frame or other
      designated frame or panel in a wire center which serves the
      customer.  The main distribution frame means the distribution frame
      in a wire center that is used to interconnect loop cable pairs and
      line and trunk equipment terminals on a switching system.  The
      developer's advance will include the cost of such connections as
      may be necessary to terminate the line extension on the main
      distribution frame.

                                                                     (C)

                                                                     (D)

  2. Extensions of facilities within New Residential Subdivisions      (C)
     subject to NAC 704A

     Extensions of telephone facilities within new residential          (C)
     subdivisions and within 100 feet of their boundaries that are
     required to be made underground by local ordinance, by the rules
     and regulations of a local governmental body, or by mutual          (D)
     agreement between the Utility and the real estate developer,
     shall be made in accordance with NAC 704A.350 to NAC 704A.520,
     inclusive.                                                          (C)

  3. Extensions of Facilities within New Residential Subdivisions not    (C)
     subject to NAC 704A

     A developer of new residential subdivisions other than those set
     forth in A4.4.1A.2 above may advance to the Utility in cash 50%
     of the estimated cost of the extensions of telephone facilities
     within the subdivisions and within 100 feet of their boundaries
     in accordance with NAC 704A.350 to NAC 704A.570, inclusive.  Any
     such advance shall be refunded by the Utility in accordance with
     the conditions set forth in NAC 704A.550 "Refunds of advances."    (D) (C)

---

Issued:  October 27, 1999           Issued By
Effective:                          L. K. Watts
Advice No.:  1819                   President

FILING ACCEPTED
EFFECTIVE

NOV - 4 1999

PUBLIC UTILITIES COMMISSION
OF NEVADA

Nevada Bell
645 E. Plumb Lane, Reno, Nevada
Tariff P.S.C.N. No.  A4.

1st Revised    Page No. 8

Cancelling    Original    Page No. 8

A4.  CONSTRUCTION CHARGES AND OTHER SPECIAL CHARGES

4.5  SPECIAL SERVICE ARRANGEMENTS

A.  REGULATIONS

Aerial service connection facilities from aerial distribution facilities
are furnished at the Utility's expense.  Aerial service connection
facilities from underground distribution facilities are not provided
unless an applicant specifically requests such an arrangement.  Such an
arrangement must be feasible and permissible, in which case applicant will
be required to pay in advance a nonrefundable amount equal to the
estimated total cost of arranging the distribution facilities to
accommodate an aerial service connection.

Issued:  March 13, 1985

Effective:  March 18, 1985

Advice No. 1381

Issued by
R. K. Van Allen
President

FILING ACCEPTED
EFFECTIVE

MAR 1 8 1985

PUBLIC SERVICE COMMISSION
OF NEVADA