1    William Markham, State Bar No. 132970
MALDONADO & MARKHAM, LLP
2    402 West Broadway, 24th Floor
San Diego, CA 92101
3    Telephone: (619) 221-4400
Facsimile: (619) 224-3974
4    E-mail: wm@maldonadomarkham.com

5    William A. Kershaw, State Bar No. 057486
Lyle W. Cook, State Bar No. 148914
6    KERSHAW, CUTTER, & RATINOFF LLP
401 Watt Avenue
7    Sacramento, California 95864
Telephone: (916) 448-9800
8    Facsimile: (916) 669-4499
E-mail: wkershaw@kcrlegal.com

9

*Attorneys For Plaintiffs,*
10    LA COLLINA DAL LAGO, L.P., and
BERNAU DEVELOPMENT CORPORATION

11

12                 UNITED STATES DISTRICT COURT

13               NORTHERN DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| 15   LA COLLINA DAL LAGO, L.P.; BERNAU DEVELOPMENT CORPORATION; and all similarly situated legal persons, | Case No.: C 08-02451 SI |
| 16 | |
| 17           Plaintiffs, | |
| 18       vs. | **PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS'** |
| 19   PACIFIC BELL TELEPHONE COMPANY; NEVADA BELL TELEPHONE COMPANY; AT&T SERVICES, INC.; and OLDCASTLE PRECAST, INC., | **COMPLAINT; STATEMENT OF NON-OPPOSITION RE STANDING; AND REQUEST FOR LEAVE TO AMEND** |
| 20 | |
| 21           Defendants. | Date:  September 22, 2008 |
| 22 | Time:  9:00 a.m. |
| 23 | Place:  Courtroom 10, 19th Floor |
| 24 | Honorable Susan Illston |

25

26

27

28

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.    ARGUMENT ........................................................................................................... 5

    A. Legal Standard On Motion For Failure To State A Claim For Relief ......................... 5

    B. Plaintiffs Have Stated A Claim For "Unlawful" and "Unfair" and "Fraudulent" Conduct Under California Business and Professions Code Section 17200 ("UCL").... 6

        1.  Plaintiffs' Allegations, if True, State a Claim Under the UCL.................... 6

        2.  The Claim For "Unlawful" Conduct Should Not Be Dismissed ................ 9

        3.  The Claim For  "Unfair" Conduct Should Not Be Dismissed ................... 13

        4.  The Claim For "Fraudulent" Conduct Under the UCL Should Not Be Dismissed ................................................................................................ 15

    C.    Plaintiffs Have Stated A Claim For Unjust Enrichment ........................................ 16

    D.    The Complaint Should Not Be Dismissed On Primary Jurisdiction Grounds ....... 17

        1.  AT&T Has Waived The Right To A CPUC Referral By Seeking A Dispositive Ruling From This Court On Its Motion To Dismiss.............. 17

        2.  AT&T's Motion Should Be Denied Because The Issue Of Referral Must Be Resolved In Plaintiffs Favor In The Context Of A 12(b)(6) Motion To Dismiss ................................................................................................. 18

        3.  A Referral To The PUC On Primary Jurisdiction Grounds Is Not Justified Where The Matters Fall Within The Traditional Competence Of The District Courts And Where The Litigation Can Proceed More Efficiently In District Court ......................................................................................... 18

        4.  A Dismissal, Rather Than A Stay, Is Improper Where A Referral Is On Limited Issues ...................................................................................... 22

    E.    The Challenge To Standing Can Be Cured By Amendment ................................. 22

    F.    Merits Based Challenges Should Be Deferred Until After A First Amended Complaint Is Filed That Establishes Standing ...................................................... 23

III.    CONCLUSION .................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

Page(s)

*AT&T Co. v. Central Office Tel., Inc.*
524 U.S. 214 (1998) ..................................................................................................... 16

*Baltimore & Ohio Chicago Terminal R. Co. v. Wisconsin Cent. Ltd.*
154 F.3d 404 (7th Cir. 1998) ..................................................................................... 2, 17

*Bell Atlantic Corp. v. Twombly*
127 S.Ct. 1955 (2007) ..................................................................................................... 5

*Brown v. MCI WorldCom Network Services, Inc.*
277 F.3d 1166 (9th Cir. 2002) ................................................................................ *passim*

*Cauchi v. Brown*
51 F.Supp.2d 1014 (E.D. Cal. 1999) ............................................................................ 5

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
20 Cal. 4th 163 (1999) ................................................................................................... 6

*City of Cotati v. Cashman*
29 Cal.4th 69 (2002) ..................................................................................................... 10

*Cost Management Services, Inc. v. Washington Natural Gas Co.*
99 F.3d 937 (9th Cir. 1996) ................................................................................ 2, 18, 20

*CSX Transportation Company v. Novolog Bucks County*
502 F.3d 247 (3rd Cir. 2007) ...................................................................................... 17

*DCD Programs Ltd. v. Leighton*
833 F.2d 183 (9th Cir. 1987) ...................................................................................... 22

*Digital Communications Network, Inc. v. AT&T Wireless Services*
63 F.Supp.2d 1194 (C.D. Cal. 1999) .......................................................................... 21

*Doe v. U.S.*
58 F.3d 494 (9th Cir. 1995) ..................................................................................... 5, 23

*Falk v. General Motors Corp.*
496 F.Supp.2d 1088 (2007) ........................................................................................... 6

*Farley Transp. Co. v. Santa fe Trail Transp. Co.*
778 F.2d 1365, 1370 (9th Cir. 1985) .......................................................................... 19

*Farmers Ins. Exchange v. Superior Court*
2 Cal.4th 377 (1992) .................................................................................................... 19

*First Nationwide Savings v. Perry*
11 Cal.App.4th 1657 (1992) ........................................................................................ 16

*Gemisys Corp. v. Phoenix American, Inc.*
186 F.R.D. 551 (N.D. Cal. 1999) .................................................................................. 6

ii

*Gilligan v. Jamco Development Corp.*
  108 F.3d 246 (9th Cir. 1997)...........................................................................5

*Green v. Mt. Diablo Hosp. Dist.*
  207 Cal.App.3d 63 (1989)..................................................................4, 15, 17

*Gross Common Carrier, Inc. v. Baxter Healthcare Corp.*
  51 F.3d 703 (7th Cir. 1995)...........................................................................17

*In re Asyst Technologies, Inc. Derivative Litigation*, Slip Copy
  2008 WL 2169021 at *11 (N.D. Cal. 2008).................................................16

*Joseph v. J.J. MacIntyre companies, L.L.C.*
  238 F.Supp.2d 1158 (N.D. Cal. 2002)............................................................6

*Korea Supply Co. v. Lockheed Martin Corp.*
  29 Cal.4th 1134 (2003)................................................................................6, 7

*Lance Camper Mfg. Corp. v. Republic Indem. Co. of America*
  44 Cal.App.4th 194 (1996)........................................................................4, 16

*Lavie v. Procter & Gamble Co.*
  105 Cal.App.4th 496 (2003)...........................................................................7

*Lectrodryer v. SeoulBank*
  77 Cal. App.4th 723 (2000)...........................................................................16

*Los Angeles County Bar Ass'n v. Eu*
  979 F.2d 697 (9th Cir. 1992).....................................................................4, 23

*Madison v. Graham*
  316 F. 3d 867 (9th Cir. 2002)..........................................................................5

*Mayes v. Leipziger*
  729 F.2d 605 (9th Cir. 1984).........................................................................23

*Melchoir v. Newline prods. Inc.*
  106 Cal.App.4th 779 (2003)...........................................................................16

*Milne Truck Lines, Inc. v. Makita U.S.A., Inc.*
  970 F.2d 564 (9th Cir. 1992)..........................................................3, 18, 19, 20

*Pareto v. F.D.I.C.*
  139 F.3d 696 (9th Cir. 1998)...............................................................4, 5, 13

*Paulsen v. CNF, Inc.*
  391 F.Supp.2d 804 (N.D. Cal. 2005) ...............................................................5

*Rhoades v. Avon Products, Inc.*
  504 F.3d 1151 (9th Cir. 2007)................................................................13, 20

*Sacks v. Office of Foreign Assets Control*
  466 F.3d 764 (9th Cir. 2006)....................................................................4, 23

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*
    806 F.2d 1393 (9th Cir. 1986) ............................................................ 5, 22, 23

*Shapiro v. Paradise Valley Unified School District No. 69*
    152 F.3d 1159 (9th Cir. 1998) ................................................................... 22

*Smith v. State farm Mutual Automobile, Ins. Co.*
    93 Cal.App.4th 700 (2001) ........................................................................... 6

*Smith v. Wells Fargo Bank*
    135 Cal.App.4th 1463 (2005) ....................................................................... 6

*Southern California Edison Co. v. Public Utilities Commission*
    85 Cal.App.4th 1086 (2000) ....................................................................... 19

*Twain Harte Homeowners Assn. v. County of Tuolumne*
    138 Cal.App.3d 664 (1982) ........................................................................ 11

*United States v. Culliton*
    328 F.3d 1074 (9th Cir. 2003) ................................................................... 20

*U.S. v. Henri*
    828 F.2d 526 (9th Cir. 1987) ..................................................................... 22

*U.S. v. General Dynamics Corp.*
    828 F.2d at 1363 n. 13 ............................................................................... 20

*U.S. v. Redwood City*
    640 F.2d 963 (9th Cir. 1981) ....................................................................... 5

*United States v. Yellow Freight Sys., Inc.*
    762 F.2d 737 (9th Cir. 1985) ..................................................................... 19

*Whitmore v. Arkansas*
    495 U.S. 149 (1990) ............................................................................... 4, 23

**FEDERAL STATUTES**

Federal Rules of Civil Procedure
    Rule 12(b)(6) ...................................................................................... *passim*
    Rule 15 .............................................................................................. *passim*

**STATE STATUTES**

Business & Professions Code
    Section 17200 .................................................................................... *passim*
    Section 17500 ......................................................................................... 6

**OTHER**

Schedule Cal. P.U.C. A2.1.15.C.1.a. .................................................... 1, 9, 20

I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant telephone companies ("AT&T") and Defendant Oldcastle Precast, Inc. ("Oldcastle") have brought separate motions that, in combination, seek to dismiss all of Plaintiffs' claims. The Oldcastle motion and the AT&T motion both argue that Plaintiffs lack standing because they did not purchase precast vaults from Oldcastle or develop property in Nevada. Plaintiffs do not oppose the motions to dismiss certain claims *without prejudice* on this ground. Plaintiffs' request leave to amend their complaint for the first time to cure the lack of standing as to these claims by adding plaintiffs that purchased vaults from Oldcastle and developed property in Nevada.[1] The other pleading challenges to the complaint are without merit and should be denied.

The main thrust of AT&T's motion to dismiss on the merits is that it has done nothing wrong. This argument is first made when AT&T seeks to dismiss the claim of unlawful conduct under California Business and Professions Code sections 17200 et seq. ("UCL"). AT&T asks the Court to interpret the California Tariff requiring AT&T to install underground line extensions in residential developments "at its expense" as allowing AT&T to shift "its expense" to the developer class.[2] AT&T wrongly reasons that its unqualified obligation to install its own network infrastructure at its own expense does not apply where AT&T forces developers to install the infrastructure. Similarly, even though AT&T acknowledges that its tariff obligation for line extensions in commercial developments requires it to "reimburse the applicant [developers] at [AT&T's] current cost for that type of conduit," and even though the complaint alleges that AT&T systematically failed to satisfy this requirement as to the developer class, AT&T seeks a dismissal on the pleadings on the ground that "[t]he tariffs provide no support for

---

[1] The claims challenged on standing grounds are the claims against Oldcastle (all claims but for the second claim) and the antitrust claims and the Nevada unfair practices act claim against AT&T (the third through seventh claims). No standing issue is raised by AT&T as to the first and second claims against it. These claims should not, therefore, be dismissed

[2] The CPUC Tariff at issue is known as Rule 15. Rule 15 governs underground line extensions. The subsection containing the "at its expense" language is found in Schedule Cal.P.U.C. No. A2.1.15.C.1.a. Rule 15 and the applicable Nevada Tariff are attached as exhibits to AT&T's Request for Judicial Notice.

this claim."[3]  AT&T's arguments on the merits misread the applicable tariffs and ignore the allegations of the complaint. AT&T's unsupported protestations that it did nothing wrong do not demonstrate a failure on Plaintiffs' part to state valid claims and do not support a dismissal under Rule 12(b)(6).

After seeking to obtain a dismissal on the merits, AT&T then reverses field and argues that the Court cannot decide the issues (that AT&T asks it to decide) because "primary jurisdiction"[4] rests with the California Public Utilities Commission ("CPUC") or its Nevada counterpart. (Motion at 2:2-5; 11:3-13:6.) AT&T apparently believes there is no impediment to interpreting the tariff in its favor on a dispositive motion to dismiss, but "if there were any doubt on that score" then "this Court should not adjudicate the claim, but should instead dismiss the claim pursuant to the doctrine of primary jurisdiction." (Motion at 2:2-5; 11:3-5.) No authority is cited to support this one-way street, where the Court is allowed to rule in AT&T's favor at AT&T's request, but must otherwise accept AT&T's turnabout theory that it cannot adjudicate the matter at all. Instead, courts have found that resort to "primary jurisdiction," which is not a jurisdictional doctrine despite its name, can be waived where a party to a civil suit litigates its claims or defenses in a non-regulatory forum. (*See* Infra at pp. 17-18.) Because AT&T has insistently sought to adjudicate the issues, by asking the Court to interpret the tariffs in its favor, AT&T has waived resort to administrative agencies on primary jurisdiction grounds.

Even if AT&T had not waived resort to the CPUC, the Ninth Circuit has held that any "threshold decision" that might otherwise justify referral to the administrative agency must be resolved in plaintiffs' favor on a motion to dismiss. *Cost Management Services, Inc. v. Washington Natural Gas Co.*, 99 F.3d 937, 949 (9th Cir. 1996). Under these circumstances, AT&T's motion suffers from a fatal defect and the primary jurisdiction doctrine is inapplicable.

---

[3] Notice of Motion and Motion to Dismiss Plaintiffs' Complaint by Pacific Bell Telephone Company, Nevada Bell Telephone Company, and AT&T Services, Inc. filed June 20, 2008 ("Motion") at 9:3.

[4] As will be explained further, although the label includes the word "jurisdiction," it does not raise a jurisdictional doctrine and, instead, permits a discretionary deferral to an administrative agency on threshold issues. *See, e.g., Baltimore & Ohio Chicago Terminal R. Co. v. Wisconsin Cent. Ltd.*, 154 F.3d 404, 411 (7th Cir. 1998).

-2-

*Id.*

Even if AT&T were able to overcome its own waiver and the procedural defects in its motion, AT&T's primary jurisdiction argument still could not survive the general rule in the Ninth Circuit that "[t]he construction of a tariff, including the threshold question of ambiguity, ordinarily presents a question of law for the court to resolve." *Milne Truck Lines, Inc. v. Makita U.S.A., Inc.*, 970 F.2d 564, 567 (9th Cir. 1992) (citations omitted). It is well within the traditional competence of the courts to interpret regulations, including tariffs. In fact, it is this routine exercise of traditional district court competence that AT&T invokes by its motion to dismiss. Nothing in that motion demonstrates that an administrative agency, rather than this district court, can or should decide the issues raised by Plaintiffs' class action complaint.

Finally, AT&T's motion to *dismiss* on "primary jurisdiction" grounds is overreaching because even if the Court agreed that some issues should be referred to the PUC for a threshold decision, that ruling would not dispose of the case and would not justify the requested dismissal that AT&T seeks under Rule 12(b)(6). Instead, a referral would be made as to certain threshold issues and the Court would then issue a temporary stay. Accordingly, AT&T's noticed motion, which seeks a dismissal, should not be granted because the relief it seeks is improper.

AT&T's approach to challenging the pleadings does not address the analytical conundrums it creates.[5] Once these are resolved, the remaining issues can be easily decided in Plaintiffs favor by applying the usual rules governing a motion to dismiss. To an extraordinary degree AT&T challenges the pleadings by rewriting them or by begging the questions that the allegations present. AT&T argues that nothing requires AT&T to reimburse a developer's costs… and that it has done "nothing 'unfair' or 'fraudulent' within the meaning of California statute…" and that it has not acted in a way that is "likely to deceive the public." (Motion at 2:1-11.) Throughout its motion AT&T repeatedly protests its innocence or wrongly pretends that

---

[5] By this Plaintiffs mean that AT&T seeks a decision on the merits on issues it also claims must first be decided by an administrative agency while at the same time arguing that no decision is proper as to some claims (by the CPUC or this Court) because Plaintiffs lack standing. This is coupled with what amounts to pure arguments on the merits of the kind that would ordinarily be decided by a trial. So what the Court has before it is a strange admixture of opening and closing arguments to a jury in a motion to dismiss on the pleadings where AT&T seeks multiple rulings on the merits while claiming the Court cannot decide the issues.

1    the allegations confess its innocence.  But that is not what the evidence will eventually show and

2    it is certainly not what has been pled.  AT&T's motion should be denied (except as to standing)

3    because it does not accept the allegations of the complaint as true.  *See, e.g., Pareto v. F.D.I.C.,*

4    139 F.3d 696, 699 (9th Cir. 1998).

5        AT&T's failure to accept the allegations as true is repeated throughout its motion to

6    dismiss.  For example, AT&T's challenge to the unjust enrichment claim is based on its

7    contention that it's trench agreements with developers defeats any possible claim for unjust

8    enrichment.    AT&T's argument ignores the allegations in the complaint that the trench

9    agreements are illegal contracts.  (*See* Complaint at ¶¶ 62-68, 94.)  As a matter of law, illegal

10   contracts are invalid and void.[6]  It is, in fact, just this kind of absence of a valid and enforceable

11   contract that creates the legal vacuum that is traditionally filled by an equitable claim of unjust

12   enrichment.

13       As to the challenge on standing grounds, both motions argue that Plaintiffs lack standing

14   because they did not undertake development in Nevada or purchase AT&T specified precast

15   vaults from Oldcastle.  If Defendants are right about standing (and Plaintiffs do not oppose the

16   motion on those grounds), then there is no case or controversy as to these claims that would

17   allow them to be decided against Plaintiffs.  "[S]tanding is a threshold question which we must

18   resolve before proceeding to the merits."  *Sacks v. Office of Foreign Assets Control,* 466 F.3d

19   764, 771 (9th Cir. 2006), quoting *Los Angeles County Bar Ass'n v. Eu,* 979 F.2d 697, 700 (9th

20   Cir. 1992).  It is well established that courts cannot reach the merits of a case unless plaintiffs

21   establish standing to sue.  *Whitmore v. Arkansas,* 495 U.S. 149, 154, 110 S. CT 1717, 1722

22   (1990).  Defendants cannot seek dismissal on merits based on grounds that would have a *res*

23   *judicata* affect until the standing, which they claim is lacking, is established.

24       Plaintiffs believe that the appropriate order under these circumstances is to grant the

---

25   [6] "Contracts that are contrary to express statutes or to the policy of express statutes… are illegal
26   contracts…. [a]ny such illegality voids the entire contract."  *Green v. Mt. Diablo Hosp. Dist.,* 207
     Cal.App.3d 63, 73 (1989) (citations omitted).    Even more specifically, contracts contrary to
27   applicable tariffs are unenforceable.  *Brown v. MCI WorldCom Network Services, Inc.,* 277 F.3d
     1166, 1170 (9th Cir. 2002).  A plaintiff alleging that the express contract is void may proceed
28   with its quasi-contract claim of unjust enrichment.  *Lance Camper Mfg. Corp. v. Republic Indem.
     Co. of America,* 44 Cal.App.4th 194, 203 (1996) (citations omitted).

-4-

unopposed motion to dismiss as to the claims challenged on standing grounds. The dismissal should be without prejudice to file a First Amended Complaint within 60 days. Rule 15 of the Federal Rules of Civil Procedure provides that "a party may amend its pleading once as a matter of course" before being served with a responsive pleading. Fed. R. Civ. P. 15(a)(1)(A). A motion to dismiss is not a responsive pleading and Plaintiffs are, therefore, allowed to amend their complaint as a matter of right. *See Doe v. U.S.*, 58 F.3d 494, 496-497 (9th Cir. 1995); *Schreiber Distributing v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Defendants' motions to dismiss on all other grounds should be denied. Where standing is not established, Defendants cannot challenge the pleadings on the merits. Where standing is established, the complaint alleges valid claims and should not be dismissed.

## II.     ARGUMENT

### A.     Legal Standard On Motion For Failure To State A Claim For Relief.

The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). For this reason, a 12(b)(6) dismissal is proper only in "extraordinary" cases. *U.S. v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981); *Cauchi v. Brown*, 51 F.Supp.2d 1014, 1016 (E.D. Cal. 1999). The defect must appear on the face of the complaint or upon matters properly subject to judicial notice. *Paulsen v. CNF, Inc.*, 391 F.Supp.2d 804, 807 (N.D. Cal. 2005) (citations omitted). Material factual allegations are assumed to be true and the alleged facts and all reasonable inferences to be drawn from them are construed in the light most favorable to plaintiffs. *See Pareto*, 139 F.3d at 699; *Madison v. Graham*, 316 F.3d 867, 869 (9th Cir. 2002). A complaint attacked by a motion to dismiss does not need detailed factual allegations, but must do more than offer "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable" and that a recovery is very remote and unlikely. *Id.* at 1965.

**B.    Plaintiffs Have Stated A Claim For "Unlawful" and "Unfair" and "Fraudulent" Conduct Under California Business and Professions Code Section 17200 ("UCL").**

### 1. Plaintiffs' Allegations, if True, State a Claim Under the UCL.

Section 17200 of the California Business and Professions Code defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [Bus. and Profession Code Section 17500]." Cal. Bus. & Prof. § 17200. The purpose of the UCL includes the protection of consumers in the commercial market for goods and services. Unfair competition is defined in the disjunctive and may be established by satisfying any one of three tests for establishing that a defendant's conduct violates the UCL, *i.e.*, that the conduct is "unlawful," "unfair" or "fraudulent." *See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163 (1999); *Joseph v. J.J. MacIntyre companies, L.L.C.*, 238 F.Supp.2d 1158, 1171 n.7 (N.D. Cal. 2002).

Unlawful Conduct:  The UCL "borrows" violations from other laws by making them independently actionable as unfair competitive practices. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143 (2003). Virtually any law, whether federal, state, or local can serve as predicate for a claim of unlawful conduct under the UCL. *Smith v. Wells Fargo Bank*, 135 Cal.App.4th 1463, 1480 (2005); *Gemisys Corp. v. Phoenix American, Inc.*, 186 F.R.D. 551, 564 (N.D. Cal. 1999).

Unfair Conduct:  The "unfair" standard is intentionally broad allowing courts maximum discretion to prohibit new schemes to defraud. *See Smith v. State farm Mutual Automobile, Ins. Co.*, 93 Cal.App.4th 700, 718-719 (2001) (citations omitted). The test of whether a business practice is unfair involves an examination of its impact on the alleged victim balanced against the reasons, justifications and motives of the alleged wrongdoer. *Id.*  A business practice is unfair when the practice offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Id.*

Fraudulent Conduct:  The test of whether a business practice is fraudulent is whether the practice, the defendant's conduct, is likely to deceive the public. *See, e.g., Falk v. General*

-6-

*Motors Corp.*, 496 F.Supp.2d 1088, 1098 (2007) (citations omitted). For purposes of determining whether the conduct is "likely to deceive the public" plaintiffs are not required to show that all members of the public were deceived. Rather courts utilize the "reasonable consumer" standard. *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 507-508 (2003).

Restitution:    Restitution is available under the UCL where plaintiffs are deprived of money or property by means of defendant's unfair competition. *See Korea Supply Co.*, 29 Cal.4th at 1148.

The following allegations of the complaint, which must be accepted as true for purposes of deciding AT&T's motion to dismiss, state valid claims under the UCL for unlawful, unfair, and fraudulent conduct.

(1)    AT&T is a provider of land-line telecommunication services in California. AT&T owns the underground infrastructure it extends to new residential and commercial subdivisions. AT&T's underground infrastructure is an integral part of its most valuable capital asset – its land-line network. (*See* Complaint ¶¶ 33, 37, 40.)

(2)    The telephone cable is usually installed in underground trenches where it is either "direct-buried" or encased in conduit materials which may be supported by precast concrete vaults and/or polymer vaults. (*See* Complaint ¶ 33, 37.)

(3)    In most of California, AT&T acts as the only provider of a land-line telephone network and property developers deem a connection to the regional land-line telephone communications network to be a commercial necessity or legal requirement. (*See* Complaint ¶¶ 34,35, 36.)

(4)    In California, AT&T must pay for the expense of underground line extensions as specifically directed in Rule 15 – a CPUC tariff that is legally binding on AT&T. (*See* Complaint ¶¶ 38, 39, 40, 41.)

(5)    AT&T generally does not install new underground connections itself or directly hire specialty contractors to perform the work. Rather, AT&T forces developers to do the work in accordance with AT&T specifications. (*See*

-7-

1   Complaint ¶¶ 43,44, 45, 46 ,47 ,48 ,49, 50.)

2   (6)    AT&T, despite its obligations under Rule 15, fails to reimburse developers the

3   amount that is due. (*See* Complaint ¶¶ 48, 51.)

4   (7)    AT&T under-reimburses developers by using a number of ploys, including

5   forced-purchase resales where developers must bear the cost of construction

6   and then turn the improvements over to AT&T while being reimbursed at less

7   than costs.  AT&T also employs other improper pricing methodologies that

8   have the effect of under-reimbursing developers for materials and trenching.

9   (*See* Complaint ¶¶ 52, 53, 54, 55, 56, 57.)

10  (8)    AT&T coerces the property developers to bear the costs of AT&T's

11  infrastructure, without full reimbursement, by its knowing failure to perform

12  the work itself within a timeframe that would allow developers to choose to

13  have AT&T do the work at AT&T's expense.  (*See* Complaint ¶¶ 58, 59, 60,

14  61, 73, 74, 75, 76, 77, 78, 79, 80, 81.)

15  (9)    AT&T enters into illegal contracts when it directs developers to install its

16  network infrastructure in accordance with AT&T specifications. (*See*

17  Complaint ¶¶ 62, 63, 64, 65, 66, 67, 68.)

18  (10)   AT&T does not fully disclose and obfuscates its reimbursement obligations

19  when it directs developers to construct it's underground line extensions. (*See*

20  Complaint ¶¶ 69, 70.)

21  (11)   AT&T's conduct is unlawful under the UCL because the alleged conduct

22  violates the regulatory requirements for repayment under Rule 15, which is the

23  applicable tariff governing the installation of AT&T's underground line

24  extensions in California. (*See* Complaint ¶¶ 86, 38,39, 40 41.)

25  (12)   AT&T's conduct is unfair within the meaning of the UCL because it caused

26  significant harm to Plaintiffs and class members and was not counterbalanced

27  by legitimate benefit to Defendants.  AT&T forced a monetary contribution to

28  the construction of its infrastructure that was not owed by developers and that

-8-

1    offends established declared public policy and that was immoral, unethical,

2    oppressive or unscrupulous. (*See* Complaint ¶ 87.)

3    (13)    AT&T's conduct was fraudulent under the UCL because the relevant public,

4    Plaintiffs and the class of proper developers, were likely to be deceived by

5    AT&T's presentation of reimbursement agreements that purported to be

6    consistent with AT&T's legal obligations and that obfuscated the measures

7    being used to calculate reimbursement. (*See* Complaint ¶¶ 88, 69, 70.)

8    (14)    AT&T's conduct resulted in Plaintiffs and the developer class paying money

9    to construct improvements that were then taken over and owned by AT&T.

10    The money paid by Plaintiffs and developers should have been paid or

11    reimbursed by AT&T and should be restored to Plaintiffs to remedy AT&T's

12    violations of the UCL. (*See* Complaint ¶¶ 89, 90.)

13    **2.    The Claim For "Unlawful" Conduct Should Not Be Dismissed.**

14    AT&T concedes that Plaintiffs allege unlawful conduct arising out of its failure to

15    reimburse them for the identified costs of installing AT&T's infrastructure as required under

16    California and Nevada tariffs. (Motion at 7:19-22.)  AT&T does not contest that these tariffs are

17    laws within the contemplation of the "unlawful" prong of Section 17200.[7]  AT&T does not

18    contest (nor could it on a pleading motion) the factual allegations that Plaintiffs and the developer

19    class have been under-reimbursed for the expense of installing the infrastructure that is the subject

20    of the tariffs.  The entirety of AT&T motion to dismiss the claim of unlawful conduct under the

21    UCL rests, therefore, on the proposition that "[t]he tariffs provide no support for this claim."

22    (Motion at 9:3.)

23    This argument collapses upon examination of the tariffs, which provide powerful support

24    for the claimed violations.  In the case of residential developments, AT&T concedes that "AT&T

25    commits to construction of line extensions 'at its expense,' with AT&T paying a 'pro-rata' share

26    of the cost of the trenches that are jointly occupied" and correctly cites to Schedule Cal. P.U.C.

27

28    [7] Nor could it.  AT&T admits that "[o]nce effective, a tariff is binding and has the force of law."
(Motion at 4:22-24, fn. 1.)

-9-

A2.1.15.C.1.a.  This is precisely the legal obligation that AT&T is alleged to have violated with respect to residential line extensions.  (*See* Complaint ¶¶ 38, 39, 40, 41.)  AT&T's motion is perplexing because properly understood it does not challenge the pleadings (or even the applicable tariffs), while nonetheless purporting to do so.

AT&T's sleight of hand in this regard is found in its extraordinary interpretation of its obligation to construct line extensions "at its expense."  It reads this plain language as meaning "at its expense *or at someone else's expense*."  Of course, the alternative clause that is added in italics is something that AT&T makes up.  The made up clause  "at someone else's expense" completely defeats the ordinary sense of the actual text, which reads "at its expense."  AT&T's position in this litigation assumes that the tariff governing the construction of AT&T's lines extensions does not apply 95% of the time when AT&T forces developers to undertake the work.  Absurd constructions of this kind are not permitted under the usual rules of construction. *See City of Cotati v. Cashman*, 29 Cal.4th 69, 77 (2002).

For residential underground line extensions Rule 15 plainly states: "The Utility will construct an underground extension at its expense."  (No. 2.1.15.C.1.a.)  Rule 15 also mandates that: "Trenches will be occupied jointly, where economy dictates, upon payment by the Utility of its pro-rata cost thereof."   AT&T seeks to read these and other unequivocal obligations completely out of Rule 15 whenever AT&T accomplishes the *mandated* construction at its expense by an arrangement with developers rather than through some more direct effort by AT&T. Stated differently, AT&T thinks it has found a loophole in its tariff obligation to bear the expense of construction and pro-rata cost of joint trenches whenever that expense or payment is first forced upon someone else.  Nowhere in the governing regulation is there a limitation on AT&T's obligation to bear the expense of construction that turns on the manner in which the construction is performed or upon the exigency of developer mediated payments.  AT&T's reading of the tariff would have the obligations its contains apply to only a small fraction of the line extensions even though it is obviously intended to cover all of AT&T's underground line extensions to new development in California.  In effect, AT&T wrongly seeks to treat the key

1    provisions of the tariff as inapplicable surplusage 95% of the time.[8]    *See Twain Harte*

2    *Homeowners Assn. v. County of Tuolumne*, 138 Cal.App.3d 664, 698-699 (1982).

3        The allegation of the complaint, and the factual reality for developers, is that they have no

4    choice except to perform the work of installing AT&T's infrastructure. (*See* Complaint ¶¶ 58, 59,

5    60, 61, 73, 74, 75, 76, 77, 78, 79, 80, 81.) This is how AT&T has decided to construct its network

6    line extensions the vast majority of the time.    Nothing in the rule exempts AT&T from its

7    obligation to bear the expense of its infrastructure under these majority circumstances.  To the

8    contrary, the obligation is stated in unqualified and mandatory terms: "The Utility *will* construct

9    an underground extension at its expense." (No. 2.1.15.C.1.a.) (emphasis added)

10       AT&T also wrongly argues that "Plaintiffs do not claim that AT&T has ever refused to

11   construct underground line extensions as required by the tariff…" (Motion at 4:15-16.)  Given

12   that the plain language of the tariff requires line extensions to be constructed at AT&T's expense,

13   and given the allegation AT&T has refused to pay the expense of construction, Plaintiffs certainly

14   do claim that "AT&T has… refused to construct underground line extensions as required by

15   tariff." AT&T deliberately misunderstands the complaint when it seeks to transform it refusal to

16   "accommodate developers' schedules" (*Id.* at 4:17) into an admission that it constructs

17   underground line extensions as required by tariff.    While it is true that AT&T refuses to

18   accommodate developers' schedules, and by doing so knowingly forces developers to undertake

19   the construction of line extensions, there would be no claim of wrongdoing if AT&T did not also

20   fail to bear the expense of this construction as required by the tariff.    Again and again in its

21   motion to dismiss AT&T seeks to convert plainly stated allegations of wrongdoing into a

22   nonexistent concession that AT&T has done nothing wrong.

23       This is further reflected in AT&T's argument that that "[n]othing in the tariffs prohibits

24

25   ---
     [8] A central premise of AT&T's defense in this case is "[t]he tariff does not expressly address what
26   AT&T's obligations are in the case where a developer constructs facilities that AT&T then
     occupies." (Motion at 4:19-21; 6:4-6; 7:22-23.)    AT&T cannot reasonably explain why this is
27   not addressed by the mandate that it will bear the expense, nor can it reasonably explain why the
     exception it imagines should be understood as swallowing the rule.    In any event, this is a
28   common predominating question of regulatory construction that should be decided by summary
     adjudication after the developer class has been certified, not by AT&T's motion to dismiss.

-11-

such arrangements."[9]  By "arrangements" AT&T must be understood as arguing that there is no prohibition to forcing developers to bear the expense of constructing AT&T's network infrastructure.  But this is expressly prohibited by the tariff because the tariff requires AT&T, *not developers*, to pay the expense of the designated infrastructure.[10]  The plain meaning of the regulation is that AT&T's residential network extensions will be done at AT&T's expense. There is no exception based on the means and methods employed by AT&T to do the work.  It does not matter under the regulation whether AT&T's employees do the work, whether AT&T hires specialty contractors to do the work, or whether AT&T directs developers to do the work.  AT&T would have the Court interpret the regulation, at the pleading stage, as allowing AT&T to shift to developers (in almost every case) an expense burden *that unequivocally falls upon AT&T.*

In addition, AT&T's own historical conduct is inconsistent with the interpretation AT&T now proposes to give to the controlling regulation.  AT&T's interpretation would allow it to avoid entirely the obligation to install the designated infrastructure at its expense.  If, as AT&T would have it, it need not pay for line extensions when it can force the developer to do it "because they may find it cheaper and more convenient to construct facilities on their own rather than wait on AT&T," then AT&T has no reimbursement obligation whatsoever under these circumstances.  It follows from this that AT&T's *conduct* in partially reimbursing developers is inconsistent with the *interpretation* of the tariff it now advances for litigation purposes.[11]   AT&T's carefully orchestrated scheme to under-reimburse developers, as alleged in the complaint, is inconsistent with its "no obligation" interpretation of the "at its expense" language in the tariff governing residential subdivision line extensions.

---

[9] AT&T repeatedly ignores the allegations and seeks to "sugar coat" them by claiming that the developers voluntarily suffer a loss when they supposedly install AT&T's infrastructure for their "benefit and convenience."  The developers are not suffering the loss for their benefit and convenience; they are suffering the loss because it is imposed on them by AT&T; they have no choice.

[10] As a matter of logic, if AT&T must bear the expense, then developers cannot be forced to bear the expense.

[11] AT&T is in some sense arguing that "at its expense" means "partially at its expense" when developers are forced to do the work.  This reading of the phrase "at its expense" is as implausible as reading the obligation out of Rule 15 altogether.

-12-

1    Remarkably, AT&T challenges the pleadings even though its own witnesses on the subject

2    have confirmed Plaintiffs understanding of the meaning of the tariff as alleged in the complaint.[12]

3    AT&T finds itself in the position of urging not only that the allegations of the complaint are false,

4    but also that the testimony of its 30(b)(6) witness is false.  The law requires that the allegations of

5    the complaint be accepted as true on a Rule 12(b)(6) motion and at this stage AT&T's contention

6    that the allegations are false is not relevant.  *See, e.g., Rhoades v. Avon Products, Inc.*, 504 F.3d

7    1151, 1160 (9th Cir. 2007).  AT&T's motion cannot succeed where it depends upon assuming the

8    allegations of the complaint to be false, rather than true.  For the reasons stated, there is no basis

9    for granting AT&T's motion to dismiss Plaintiffs' claim of "unlawful" conduct under the UCL.

10    **3.  The Claim For "Unfair" Conduct Should Not Be Dismissed.**

11    AT&T also argues that it's failure to reimburse developers for the costs of installing

12    AT&T's infrastructure cannot support a claim of unfair conduct under the UCL.  The allegations

13    of the complaint overwhelmingly reveal unfair conduct.  AT&T cannot succeed on a motion to

14    dismiss that does nothing more than argue that the allegations are untrue.  *See, e.g., Pareto*, 139

15    F.3d at 699.

16    Plaintiffs have alleged unfair business practices that satisfy the articulated standards under

17    the UCL.  Plaintiffs have alleged that Defendants' conduct is unfair because it causes significant

18    harm to Plaintiffs and the class without being counterbalanced by any legitimate benefit to AT&T

19    and because it offends established public policy and is immoral, unethical, oppressive or

20    unscrupulous.  (*See* Complaint at ¶ 87.)  It is AT&T, not developers who profit from AT&T's

21    infrastructure.  AT&T owns the infrastructure as a capital asset and receives a return on this asset

22    by billing customers for telephone line services.  By the conduct alleged as unfair AT&T receives

23    a forced monetary contribution or subsidy for the costs of its own capital improvements.  The

24    allegations of the complaint go far beyond labels and conclusions.

25    AT&T's motion attempts to restate the allegations by pretending there is nothing unfair in

26    AT&T negotiating with developers and arriving at a result that "does not provide them [the

27

28    [12] This testimony is not relevant to the pleading motion AT&T has filed, but will be directly at issue in any later motion for summary judgment.

-13-

1    developers] with everything they want." (Motion at 13:25-27.)    This is not what has been

2    alleged. As alleged in the complaint, developers don't negotiate with AT&T in any real sense of

3    the word and developers don't chose to get less than "everything they want." Instead, AT&T by

4    the raw exercise of a power it holds over the developers gets the developers to pay for AT&T's

5    infrastructure by means of forced illegal contracts that are contrary to the tariffs. The law does

6    not permit negotiated results contrary to AT&T's obligations under the governing tariffs. *See*

7    *Brown,* 277 F.3d at 1170. This result, where one party is forced to pay for the benefits received

8    by another, is paradigmatically unfair.

9        AT&T repeatedly argues in its defense that developers elect to self-install for their own

10    benefit. (Motion at 4:17-19, 10:25-11:2.) This is true, but only in the sense that coerced conduct

11    is always perceived as a lesser evil producing a relative benefit. Coercion, in fact, depends on the

12    incentive it creates to avoid a greater threatened harm. In the most extreme case the insistence

13    upon "your money or your life" provides a benefit of immeasurable value – a person's life. But

14    the existence of a relative benefit argues for rather than against coercion. It does AT&T no good

15    to, in effect, observe that developers as rationale economic actors will naturally suffer a loss

16    (under-reimbursement) to avoid a greater loss (the costs of tearing up streets and the other

17    attendant costs of AT&T refusal to timely construct its line extensions). AT&T does not contest

18    its power to force developers to subsidize its infrastructure by refusing to install infrastructure

19    except on AT&T's deliberately unworkable schedule, nor could it contest this pled fact on a

20    pleading motion.

21        AT&T also argues that its conduct is not unfair under the UCL because "[s]uch an inquiry

22    into the substantive fairness of a valid contract – and plaintiffs do not claim the contracts at issue

23    here are void – is barred." (Motion at 14:3-5.) AT&T's argument reflects an obvious

24    misunderstanding of Plaintiffs' complaint. Plaintiffs' complaint includes multiple allegations

25    attacking the legality of AT&T's trench agreements. (Complaint at ¶¶ 62-68, 94.) It is black

26    letter law that an illegal contract is not valid and is (or can be declared) void. "Contracts that are

27    contrary to express statutes or to the policy of express statutes… are illegal contracts… [a]ny such

28

-14-

illegality voids the entire contract."[13]    *Green*, 207 Cal.App.3d at 73.   The law specifically prohibits AT&T from contracting around its tariff obligations.   *Brown*, 277 F.3d at 1170. AT&T's motion cannot survive the actual pleadings it challenges.

### 4.   The Claim For "Fraudulent" Conduct Under the UCL Should Not Be Dismissed.

AT&T concedes that "conduct is 'fraudulent' within the meaning of Section 17200" when facts are alleged "sufficient to show that "members of the public are likely to be deceived." Here, section 17200 fraud is alleged in the Complaint at paragraph 88, which states:

> Defendants' conduct was fraudulent under the UCL because the relevant public, here the class or property developers, was likely to be deceived by AT&T's presentation of reimbursement agreements that purported to be consistent with AT&T's reimbursement obligations, but were not.   Class members were also likely to be deceived by Defendants' pattern and practice of presenting its costs as a true measure for reimbursement when those costs were not genuine market costs or reasonable costs under any definition.

AT&T first challenges the pleadings on the unsupported factual ground that Plaintiffs have mischaracterized the tariffs because "there is nothing inconsistent between the proposed agreements and AT&T's regulatory obligations." (Motion at 14:17-19.)   The factual and textual bootstrapping here is, first, to wrongly presume that the tariffs don't require AT&T to bear the expense of its infrastructure (in direct contradiction to the text) and, second, to contest the core under-reimbursing allegations of the complaint. Like much of AT&T's misplaced pleading arguments, it simply asserts, contrary to the allegations of the complaint, that AT&T did nothing wrong.

AT&T also argues that its conduct is so much on the surface and open to public view that it eliminates any likelihood of deception.   That is not what has been pled.   Instead, the complaint alleges that AT&T does not explain its tariff obligations to developers.   (Complaint at ¶ 61.) Plaintiffs also allege that AT&T deliberately obfuscates its obligations. (Complaint at ¶¶ 69-70.)

---

[13] If AT&T's only challenge on this ground amounts to saying that Plaintiffs should have more explicitly alleged that the "illegal" contracts are void, that is implied as a matter of law.  If what is true as a matter of law needs to be more specifically alleged, that can easily cured by amendment.

-15-

1    Finally, AT&T relies on *AT&T Co. v. Central Office Tel., Inc.*, 524 U.S. 214, 222 (1998)

2    to argue that one cannot rely on a representation of a utility that deviates from its filed tariff.

3    (Motion at 15:2-4.)  The filed rate doctrine, which deals with the service rates charged by a utility

4    to its customers, does not immunize AT&T from the claim that its conduct is a fraudulent

5    business practice under the UCL. *See Brown*, 277 F.3d at 1171 [the filed rate doctrine does not

6    shield or stave off claims against a carrier based on the tariff itself] (citations omitted).

7           **C.    Plaintiffs Have Stated A Claim For Unjust Enrichment.**

8           The elements for a claim of unjust enrichment are: "receipt of a benefit and unjust

9    retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal.App.4th

10   723, 726 (2000), citing *First Nationwide Savings v. Perry*, 11 Cal.App.4th 1657, 1662-1663

11   (1992); *see also In re Asyst Technologies, Inc. Derivative Litigation*, Slip Copy, 2008 WL

12   2169021 at *11 (N.D. Cal. 2008).   Satisfying the elements for unjust enrichment supports the

13   claim of restitution for the amount of the unjust enrichment. *See In re Asyst Technologies, Inc.*

14   *Derivative Litigation*, 2008 WL 2169021 at *11, citing *Melchoir v. Newline prods. Inc.*, 106

15   Cal.App.4th 779, 793 (2003).

16          The allegations of the complaint recited *supra* at pages 7-9 also apply to the claim for

17   unjust enrichment.  In fact, both the UCL and the claim for unjust enrichment are equitable claims

18   that permit recovery of monies that confer a benefit on one party and that would unfairly or

19   unjustly enrich that party if not restored.   The plainly stated wrong in the complaint is that

20   Plaintiffs and the developer class were forced to pay for AT&T's infrastructure and that AT&T

21   would be unjustly enriched if it received the full benefit of these forced installations without

22   restoring the monies paid.

23          AT&T's motion to dismiss does not contend that Plaintiffs have failed to state a valid

24   claim for relief for unjust enrichment.  Instead, AT&T argues that a valid contract rules out the

25   equitable claim for relief.  This argument simply ignores what has been alleged.  Plaintiffs allege

26   that the trench agreements are illegal contracts.

27          A plaintiff alleging that the express contract is void may proceed with its quasi-contract

28   claim of unjust enrichment.    *See Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44

-16-

Cal.App.4th 194, 203 (1996). "Contracts that are contrary to express statutes or to the policy of express statutes, … are illegal contracts. [citation omitted] Any such illegality voids the entire contract." *Green*, 207 Cal.App.3d at 73 (citations omitted). More specifically, contracts contrary to a tariff are illegal, invalid and unenforceable. *Brown, Inc.*, 277 F.3d at 1170.

Plaintiffs claim for unjust enrichment specifically alleges that AT&T has made use of illegal trench agreements. (Complaint at ¶ 94.) In earlier allegations, which were incorporated into the claim for unjust enrichment, Plaintiffs alleged that the trench agreements were illegal contracts (Complaint at ¶¶ 62-68.) "that violate Rule 15, the Nevada Tariff, federal antitrust statues, various California statutes, and the public policy of both California and Nevada." (Complaint at ¶ 68.) Because the allegations of the complaint specifically reject the existence of an express binding contract, AT&T's motion to dismiss the unjust enrichment claim on that ground should be denied.

**D.    The Complaint Should Not Be Dismissed On Primary Jurisdiction Grounds.**

### 1.    AT&T Has Waived The Right To A CPUC Referral By Seeking A Dispositive Ruling From This Court On Its Motion To Dismiss.

Courts recognize that the doctrine of "primary jurisdiction" is not jurisdictional and, therefore, can be waived by litigating issues "that the doctrine would otherwise assign to the administrative agency." *Baltimore & Ohio Chicago Terminal R. Co. v. Wisconsin Cent. Ltd.*, 154 F.3d 404, 411 (7th Cir. 1998). "Unlike objections to subject matter jurisdiction, which can be raised at any point, primary jurisdiction arguments can be waived." *CSX Transportation Company v. Novolog Bucks County*, 502 F.3d 247, 253 (3rd Cir. 2007) (citations omitted). Resort to the doctrine of primary jurisdiction can be waived or forfeited by reason of actions taken in the district courts. *Gross Common Carrier, Inc. v. Baxter Healthcare Corp.*, 51 F.3d 703, 706 (7th Cir. 1995) ["In light of the positions taken in the lower court, the parties have waived or forfeited any concerns that we may have had about primary jurisdiction."]

Waiver should be found here because AT&T has requested that this Court conclusively determine, in its favor, the same issues that it says should otherwise be assigned to an administrative agency. AT&T cannot have it both ways. It is utterly inconsistent to assert both

-17-

1   that the Court can construe the tariff and that it cannot construe the tariff.  It does AT&T no good

2   to argue that the inconsistency is avoided by permitting the Court to construe the tariff in its favor,

3   while prohibiting a construction that favors Plaintiffs.  This only serves to highlight the self-

4   serving aspect of the inconsistency.  Because AT&T has sought a construction of the tariff in its

5   favor in a dispositive motion on the merits the Court should find that AT&T has waived its right

6   to urge that the Court cannot interpret the tariff and must, instead, refer the issue to the CPUC.

7              **2.  AT&T's Motion Should Be Denied Because The Issue Of Referral**
8                  **Must Be Resolved In Plaintiffs Favor In The Context Of A 12(b)(6)**
                   **Motion To Dismiss.**

9         The Ninth Circuit has specifically addressed the issue of whether the primary jurisdiction

10  doctrine can be successfully asserted on a motion to dismiss under Rule 12(b)(6).  In *Cost*

11  *Management Services, Inc. v. Washington Natural Gas Company* the Ninth Circuit first described

12  the operation of the primary jurisdiction doctrine as follows:

13              When there is a basis for judicial action, independent of agency
14              proceedings, courts may route *the threshold decision* as to certain issues to
                the agency charged with primary responsibility for governmental
15              supervision or control of the particular industry or activity involved.  The
                doctrine applies when protection of the integrity of a regulatory scheme
16              dictates preliminary resort to the agency which administers the scheme.

17  *Cost Management Services, Inc. v. Washington Natural Gas Company*, 99 F.3d 937, 949 (9th Cir.

18  1996).

19        The court then reasoned that [b]ecause this case arises in the context of a motion to

20  dismiss under Rule 12(b)(6)," the plaintiff's allegations that the defendant violated the tariff at

21  issue must be accepted as true.  *Id.* at 949.  This meant that the "threshold decision" that would be

22  subject to referral under the primary jurisdiction doctrine "must necessarily be resolved in favor

23  of [plaintiff]."  *Id.*  Under these circumstances, the court held that "the primary jurisdiction

24  doctrine is simply inapplicable here."  *Id.*

25              **3.  A Referral To The PUC On Primary Jurisdiction Grounds Is Not**
26                  **Justified Where The Matters Fall Within The Traditional Competence**
                   **Of The District Courts And Where The Litigation Can Proceed More**
27                  **Efficiently In District Court.**

28        AT&T's motion argues that it has not violated the applicable tariff and that the language

-18-

1    of the tariffs is sufficiently clear to justify a ruling in its favor on a 12(b)(6) motion to dismiss.

2    Plaintiffs agree that construction of the tariffs are within the traditional competence of the Court.

3    The same matters of construction that AT&T urges should first be decided here should also be

4    finally decided here.  In the Ninth Circuit "[t]he construction of a tariff, including the threshold

5    question of ambiguity, ordinarily presents a question of law for the court to resolve." *Milne Truck*

6    *Lines, Inc. v. Makita U.S.A., Inc.*, 970 F.2d 564, 567 (9th Cir. 1992) (citations omitted).

7    California law is no different. *See Farmers Ins. Exchange v. Superior Court*, 2 Cal.4th 377, 388

8    (1992) ["But what construction shall be given to a railroad tariff presents ordinarily a question of

9    law which does not differ in character from those presented when the construction of any other

10   document is in dispute." (citation omitted)].  "The interpretation of a regulation, like the

11   interpretation of a statute, is a question of law...."  *Southern California Edison Co. v. Public*

12   *Utilities Commission*, 85 Cal.App.4th 1086, 1096 (2000) (citations omitted).  In making its

13   motion on primary jurisdiction grounds, AT&T fails to recognize that the primary jurisdiction

14   doctrine represents a narrow exception to the general rule whereby courts routinely interpret and

15   enforce tariffs as they do other statutes and regulations.

16          More particularly, the doctrine of primary jurisdiction does not apply "if the tariff's

17   language is used in its ordinary sense." *Milne,* 970 F.2d at 567, quoting *Farley Transp. Co. v.*

18   *Santa fe Trail Transp. Co.*, 778 F.2d 1365, 1370 (9th Cir. 1985) citing *United States v. Yellow*

19   *Freight Sys., Inc.*, 762 F.2d 737, 740 (9th Cir. 1985).   The rules of statutory construction, which

20   apply equally to regulations, recognize that the usual and literal meaning of the statute will

21   ordinarily govern. *See Southern California Edison Co. v. Public Utilities Commission*, 85

22   Cal.App.4th 1086, 1103 (2000) (citations omitted).  AT&T has not pointed to any allegation in

23   the complaint to suggest that the tariff language relied on has not been used in its ordinary sense.

24   To the contrary, the California regulations governing line extensions are stated in plain and simple

25   terms.

26          For example, in California for residential line extensions in new subdivisions, "[t]he

27   Utility will construct an underground line extension at its expense. Trenches will be occupied

28   jointly, where economy dictates, upon payment by the Utility of its pro-rata cost thereof."

-19-

Schedule Cal.P.U.C. No. A2.1.15.C.1.a.   This is precisely the kind of mandatory language, using the term "will" that may be enforced in the courts.  *See Southern California Edison Co.*, 85 Cal.App. 4th at 1103.  Where the issue is one of interpretation and enforcement it falls within the traditional competence of the courts.

AT&T has not made any argument *on the pleadings* to shown that language at issue is used in a peculiar or technical sense or that construction requires extrinsic evidence of the kind that would transform the inquiry into a factual one that requires the PUC's exercise of discretion in technical matters. *See Milne*, 970 F.2d at 567.   To the contrary, AT&T has come to this Court seeking a definitive interpretation of the tariff based on the terms of the tariff and the allegations of the complaint. AT&T must be understood as contending, in its motion, that the ordinary sense of the words in the tariff are sufficiently clear and unambiguous to justify a dismissal.  AT&T urges this result without resort to a factual inquiry of any kind, technical or otherwise and in this AT&T is correct.  Nothing in the language of the tariff suggests that the words "at its expense" have a technical meaning.  Under these circumstances, there is no exception to the general rule that "construction of a tariff ... presents a question of law for the court to resolve." *Id.*

The Ninth Circuit's more recent decisions have also "emphasized that because 'the primary jurisdiction doctrine is in effect, a power-allocating mechanism, a court *must not* employ the doctrine *unless* the particular division of power *was intended by Congress*."   *Cost Management Services, Inc.*, 99 F.3d at 949, n.12, quoting with emphasis, *U.S. v. General Dynamics Corp.*, 828 F.2d 1356, 1363 n.13 (9th Cir. 1987); *See also, United States v. Culliton*, 328 F.3d 1074, 1082 (9th Cir. 2003).   AT&T has not shown that this Court's power to decide Plaintiffs' equitable claim for restitution under the UCL or for unjust enrichment under common law or for violations state and federal antitrust law has been allocated to the CPUC.   AT&T has not even shown that the CPUC would entertain, or is reasonably and efficiently able to decide, any of the issues now before this Court. *See, e.g., Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1165  (9th Cir. 2007) ["The deciding factor should be efficiency..."].  Even if there were some issues upon which the regulatory agency could usefully speak, "primary jurisdiction is not implicated simply because a case presents a question, over which the [regulatory agency] could

-20-

have jurisdiction, regarding the interpretation of a single tariff." *Brown*, 277 F.3d at 1172. Court's are not precluded "from interpreting the provisions of a tariff and enforcing that tariff." *Id.* 1171-72. AT&T is wrong when it claims that "Plaintiffs do not rely on the plain terms of the tariff" in support of the claimed unlawful conduct. (*See* Motion at 12:2) The allegations of the complaint could not be clearer on this point.

AT&T also wrongly argues that a question of reasonableness, of the kind found by some courts to justify referral, is presented by the complaint. (Motion at 12:20-13:6.) PwC misunderstands the difference between a challenge to the reasonableness of a tariff, or challenge to a tariff that explicitly contains reasonableness as a standard, and the need to confine damages (or restitution) to a reasonable amount. Here, Plaintiffs do not allege that the tariff is unreasonable or unenforceable, but seek to enforce its plain meaning by alleging unlawful conduct under the UCL. Nor do Plaintiffs rely on a reasonableness standard embedded in a tariff that would require resort to the administrative agency.[14] Instead, Plaintiffs seek enforcement of the tariff in accordance with the ordinary sense of the words that have been used to express mandatory obligations.

Plaintiffs agree, and have alleged, that any damages or restitution for violation of the tariffs are limited to those that reasonably compensate them for their harm. "Reasonable" compensation is part of the usual measure of damages. When Plaintiffs allege, for example, that "AT&T's failure to give reasonable reimbursement to developers…in a systematic manner to the detriment of the class," Plaintiffs are invoking a measure of damages or of restitution that includes reasonableness. (*See* Complaint at ¶ 85.) This test for the reasonableness of damages falls within the traditional competence of courts and juries and does not invoke the kind of "reasonableness" inquiry that may sometimes justify referral to an administrative agency. AT&T has not shown that the need for a reasonable measure of damages or restitution amounts to a challenge to the reasonableness of the alleged tariffs.

---

[14] One of the cases relied on by AT&T is *Digital Communications Network, Inc. v. AT&T Wireless Services*, 63 F.Supp.2d 1194 (C.D. Cal. 1999), but there the court made it clear that "the issue to be decided incorporates a standard of reasonableness in addition to statutory interpretation." *Id.* at 1200. Here, the issue presented is one of statutory interpretation and the regulation does not incorporate a standard of reasonableness.

-21-

### 4. A Dismissal, Rather Than A Stay, Is Improper Where A Referral Is On Limited Issues.

AT&T has moved for a dismissal. The law in the Ninth Circuit does not permit the requested relief. *See, e.g., Shapiro v. Paradise Valley Unified School Dist. No. 69,* 152 F.3d 1159 (9th Cir. 1998). Instead, where the doctrine of primary jurisdiction applies, jurisdiction should be retained by a stay of proceedings, not relinquished by a dismissal. *U.S. v. Henri,* 828 F.2d 526, 528 (9th Cir. 1987) (citation omitted). A district court exceeds its authority when it dismisses the action under these circumstances. *Id.* at 528-529.

### E.    The Challenge To Standing Can Be Cured By Amendment.

Defendants' motions to dismiss due to a lack of standing is directed at the claims against Oldcastle and the antitrust claims and Nevada claims against AT&T. Stated most simply, the argument is that the two named Plaintiffs did not develop subdivisions in Nevada and did not, as part of their California developments, purchase an AT&T-compatible vaults (the market product) from Oldcastle (the alleged antitrust co-conspirator). The identified defect in standing can be cured by amending the complaint to add a plaintiff or plaintiffs who developed subdivisions in California and Nevada and purchased AT&T compatible vaults from Oldcastle in California and Nevada.[15]

Rule 15 of the Federal Rules of Civil Procedure expressly states that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). The "liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." *DCD Programs Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987). On a motion to dismiss, a dismissal with prejudice is warranted only if no allegations consistent with the challenged pleadings could possibly cure the deficiency. *See Schreiber,* 806 F.2d at 1401.

Rule 15 of the Federal Rules of Civil Procedure further provides that "a party may amend its pleading once as a matter of course" before being served with a responsive pleading. Fed. R. Civ. P. 15(a)(1)(A). A motion to dismiss is not a responsive pleading and where it is the original

---

[15] The Oldcastle motion also argues that the distinction between commercial and residential development would require plaintiffs who did both to establish standing. This issue, which Plaintiffs do not concede, can be mooted by amendment adding plaintiffs who did both residential and commercial developments.

-22-

complaint that has been challenged, as here, the Ninth Circuit allows plaintiffs to amend once as a matter of right. *Doe*, 58 F.3d at 496-497; *Schreiber*, 806 F.2d at 1401. It has long been the rule in the Ninth Circuit that an order denying leave to amend at this stage is improper. *Id.*, *see also Mayes v. Leipziger*, 729 F.2d 605, 607 (9th Cir. 1984) (citing and quoting earlier cases).

Defendants have challenged Plaintiffs' original complaint by a motion to dismiss before serving responsive pleadings. The standing defects identified by Defendants can be cured by amendment. Plaintiffs therefore request that they be given leave to file a First Amended Complaint, as a matter of right, within 60 days. Alternatively, Plaintiffs request leave to amend based on the liberal rules for amendment where allegations consistent with the challenged pleadings will cure the deficiency. *See Schreiber*, 806 F.2d at 1401. It is patently possible to cure the claimed defect in standing by adding named plaintiffs who purchased AT&T specified vaults from Oldcastle in California and Nevada for use in residential and commercial developments.

## F.    Merits Based Challenges Should Be Deferred Until After A First Amended Complaint Is Filed That Establishes Standing.

Because standing has not been established as to the claims that should be dismissed without prejudice and with leave to amend, it is premature to decide issues on the merits, as to those claims, at this stage of the litigation. The law is clear. "[S]tanding is a threshold question which must be resolved before proceeding to the merits." *Sacks*, 466 F.3d at 771, quoting *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 700 (9th Cir. 1992). The Court cannot reach the merits of the case unless Plaintiffs establish standing to sue. *Whitmore*, 495 U.S. at 154. Under these circumstances, consistent with the requirements of Rule 15 of the Federal Rules of Civil Procedure, Plaintiffs should be given leave to amend and claims should not be decided on the merits until standing has been established.

For these same reasons, Oldcastle's motion to strike class allegations should be denied. The challenge to typicality is premature and should await a First Amended Complaint and a motion to certify the class.

III.    **CONCLUSION**

Plaintiffs respectfully request that the motion to dismiss the First and Second Causes of Action against AT&T be denied.  Plaintiffs do not oppose, on standing grounds, the dismissal of the other causes of action that have been pled.  Plaintiffs request that they be granted leave to amend to establish standing for these other causes of action and believe that leave to file a First Amended Complaint should be granted as a matter of right.

Dated:  September 1, 2008.                    KERSHAW, CUTTER & RATINOFF

By:  _Lyle W. Cook_
                    Lyle W. Cook
                    William A. Kershaw
                    401 Watt Avenue
                    Sacramento, California 95864
                    Telephone: (916) 448-9800
                    Facsimile:  (916) 669-4499
                    E-mail: wkershaw@kcrlegal.com

                    William Markham
                    MALDONADO & MARKHAM, LLP
                    402 West Broadway, 24th Floor
                    San Diego, CA 92101
                    Telephone: (619) 221-4400
                    Facsimile: (619) 224-3974
                    E-mail: wm@maldonadomarkham.com

                    *Attorneys For Plaintiffs,*
                    LA COLLINA DAL LAGO, L.P., and
                    BERNAU DEVELOPMENT CORPORATION

-24-

# PROOF OF SERVICE

I, Vicki Burnsworth, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 401 Watt Avenue, Sacramento, California 95864. On September 1, 2008, I served the within documents:

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT; STATEMENT OF NON-OPPOSITION RE STANDING; AND REQUEST FOR LEAVE TO AMEND**

**[PROPOSED] ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT AND GRANTING LEAVE TO AMEND**

☐   by transmitting via facsimile from (916) 669-4499 the above listed document(s) without error to the fax number(s) set forth below on this date before 5:30 p.m.

☐   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California addressed as set forth below.

☐   by placing the document(s) listed above in a sealed *Federal Express* envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a *Federal Express* agent for delivery.

X   by **pdf/emailing** the document(s) listed above to the person(s) at the email address(s) set forth below.

Janine L. Scancarelli
FOLGER LEVIN & KAHN
jscancarelli@flk.com

Aaron M. Panner
KELLOGG, HUBER, HANSEN, TODD, EVANS& FIGEL
apanner@khhte.com

Raymond P. Bolanos
AT&T SERVICES, INC. LEGAL DEPT.
rb2659@att.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

1    I declare under penalty of perjury under the laws of the State of California that the
2    above is true and correct.
3        Executed on September 1, 2008, at Sacramento, California.
4
5                                        Vicki Burnsworth
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  William Markham, State Bar No. 132970
   MALDONADO & MARKHAM, LLP
2  402 West Broadway, 24th Floor
   San Diego, CA 92101
3  Telephone: (619) 221-4400
   Facsimile: (619) 224-3974
4  E-mail: wm@maldonadomarkham.com

5  William A. Kershaw, State Bar No. 057486
   Lyle W. Cook, State Bar No. 148914
6  KERSHAW, CUTTER, & RATINOFF LLP
   401 Watt Avenue
7  Sacramento, California 95864
   Telephone: (916) 448-9800
8  Facsimile:  (916) 669-4499
   E-mail: wkershaw@kcrlegal.com

9
   *Attorneys For Plaintiffs,*
10 LA COLLINA DAL LAGO, L.P., and
   BERNAU DEVELOPMENT CORPORATION

11

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14

15 | LA COLLINA DAL LAGO, L.P.; BERNAU    | Case No.: C 08-02451 SI
   | DEVELOPMENT CORPORATION; and all    |
16 | similarly situated legal persons,   |

17              Plaintiffs,              | **[PROPOSED] ORDER GRANTING IN
                                         | PART AND DENYING IN PART
18        vs.                            | DEFENDANTS' MOTIONS TO DISMISS
                                         | PLAINTIFFS' COMPLAINT AND
19 PACIFIC BELL TELEPHONE COMPANY;       | GRANTING LEAVE TO AMEND
   NEVADA BELL TELEPHONE COMPANY;        |
20 AT&T SERVICES, INC.; and OLDCASTLE    |
   PRECAST, INC.,                        |
21                                       | Date:  September 22, 2008
           Defendants.                   | Time:  9:00 a.m.
22                                       | Place:  Courtroom 10, 19th Floor
23                                       |
                                         | Honorable Susan Illston

24        The Motions to Dismiss the Complaint of Plaintiffs La Collinas dal Lago, L.P. and Bernau

25 Development Corporation (collectively, "Plaintiffs") brought by Defendant Oldcastle Precast,

26 Inc., ("Oldcastle") and Defendants Pacific Bell Telephone Company, Nevada Bell Telephone

27 Company, and AT&T Services, Inc. (collectively, "AT&T") was heard on September 22, 2008 at

28

1   9:00 a.m.   After full consideration of the points and authorities and all supporting documents

2   submitted by counsel, as well as the oral argument by counsel, for good cause shown:

3   **IT IS HEREBY ORDERED** that the Motion to Dismiss the First and Second Causes of

4   Action against AT&T is denied.  AT&T's request for dismissal on primary jurisdiction grounds is

5   also denied.  Oldcastle's motion to strike class allegations is denied.  The Motions to Dismiss the

6   other causes of action against AT&T and all causes of action against Oldcastle are not opposed by

7   Plaintiffs on standing grounds and are granted without prejudice.  Plaintiffs are granted leave to

8   file a First Amended Complaint no later than 60 days from the date of this Order.

9   **IT IS SO ORDERED.**

10

11  Dated: _____.

12                                          _____
                                            SUSAN ILLSTON
13                                          United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-